IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIKE KLOPPEL and ADAM WILSON on behalf of himself and all other similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>SEARS HOLDING CORPORATION, SEARS ROEBUCK & COMPANY and HOMEDELIVERYLINK, INC.<br><br>    Defendants. | Case No.: 6:17-cv-06296-FPG |

<u>HOMEDELIVERYLINK, INC.'s ("HDL") MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS</u>

Andrew J. Butcher, Esq.
(*pro hac vice*)
Scopelitis, Garvin, Light,
Hanson & Feary
30 W. Monroe Street, Suite 600
Chicago, IL 60603
312-255-7200

Rodney O. Personius, Esq.
Personius Melber LLP
2100 Main Place Tower
Buffalo, NY  14202
(716)  855-1050 x101

*Attorneys for Defendant, HomeDeliveryLink, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.  ARGUMENT SUMMARY ........................................................................................ 1

II. ARGUMENT ............................................................................................................. 3

    A.    Motion to Dismiss Standard ................................................................... 3

    B.    The FAAAA preempts Plaintiffs' claims predicated on the Transportation Industry Act ................................................................... 3

    C.    The existence of the Independent Contractor Agreement precludes Plaintiffs from pursuing their unjust enrichment claim .......................................................................... 6

III. CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

Cases

*Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) ................................. 5

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) ........................................... 4, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 3

*Camp v. TNT Logistics Corp.*, 553 F.3d 502, 508 (7th Cir. 2009) ................................ 3

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ..................... 1

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) .............................................................. 1

*Deerskin Trading Post, Inc. v. UPS*, 972 F. Supp. 665, 672–73 (N.D. Ga. 1997) ……...6

*Frey v. Bekins Van Lines, Inc.*, 802 F. Supp. 2d 438, 442 (E.D.N.Y. 2011) …………...6

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998)……….6

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005) ............................................................................................................ 7

*Morales v. Trans World Airlines*, 504 U.S. 374 (1992) ............................................ 2, 4

*Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422 (2014) ..................................................... 6

*RLI Ins. Co. v. All Star Transp. Inc.*, 608 F.3d 848, 848 (D.C. Cir. 2010) ………………4

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ....................................................... 1, 3

*Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364 (2008) ................... 2, 3, 5

*S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544 (7th Cir. 2012) . 8

*Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429 (1st Cir. 2016) .......... 5, 8

Statutes

49 U.S.C. § 14501(c) ............................................................................................... 2, 3, 4

N.Y. Lab. Law § 193 ....................................................................................................... 1

N.Y. Lab. Law § 198-b ........................................................................................... 1

N.Y. Lab. Law §195 ............................................................................................... 1

N.Y. Lab. Law §862 ......................................................................................... 2,4,5

Regulations

48 C.F.R. § 247.301-70.......................................................................................... 1

Other Authorities

2013 NY Assemb. 8451 .......................................................................................... 4

I.  INTRODUCTION

HDL is a third-party logistics company providing supply-chain management services to customers that rely on HDL to coordinate the efficient movement of goods.[1] For Innovel Solutions, Inc.—HDL's customer whose operation is at issue in the Amended Complaint—HDL coordinates the movement of goods through a network of independent-contractor truck owners. *See* Am. Compl. ¶¶ 12–14; *see also* Sears' Mem. in Supp. of Mot. to Dismiss at 3 n.1, ECF No. 13 (identifying Innovel Solutions as the party contracting with HDL). Plaintiffs are two of the truck owners who agreed to transport Innovel Solutions' goods and signed an Independent Contractor Agreement on behalf of their respective companies—Kloppel Deliveries (Plaintiff Kloppel) and ECC Movers (Plaintiff Wilson)—to provide delivery services.[2]

Plaintiffs' Amended Complaint requests recovery under (1) New York's unlawful wage deduction law, N.Y. Lab. Law § 193 (McKinney 2012); (2) New York's illegal kickback of wages law, N.Y. Lab. Law § 198-b (McKinney 2017); (3) New York's record-keeping requirement, N.Y. Lab. Law §195 (McKinney 2014); and (4) an unjust enrichment theory. None of Plaintiffs' claims arise out of an alleged breach of the private undertaking between their respective companies and HDL. Instead, each is

---

[1] "Third-party logistics" does not have a universal definition, but is generally understood to include "the management of transportation, demand forecasting, information management, industry marketplace, warehousing, and distribution." 48 C.F.R. § 247.301-70 (defining "third-party logistics providers" in the context of Transportation Supply Contracts for purposes of the Federal Acquisition Regulations System).

[2] A copy of each Independent Contractor Agreement is attached as Exhibits 1 and 2. Because the Amended Complaint refers to and incorporates each Independent Contractor Agreement in its factual allegations, the Agreements may be considered in the context of this motion to dismiss under Rule 12(b)(6). Am. Comp., ¶¶ 13, 16(l), 17, 19, 20, 29; *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)) ("For purposes of a motion to dismiss, [the Second Circuit has] deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.").

predicated on the application of a New York state statute that disregards the terms under which market participants agreed to transport property and presumes that "[a]ny person performing commercial goods transportation services for a commercial goods transportation contractor" is an employee. N.Y. Lab. Law § 862-b (McKinney 2014) ("Transportation Industry Act"); Am. Compl. ¶¶ 45, 47–48, 50, 53.

As discussed in Section II(B), the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c), expressly preempts states from enacting or enforcing any law "related to a price, route or service of any motor carrier [or] broker with respect to the transportation of property." Legislation such as the Transportation Industry Act, directed specifically towards how motor carriers and brokers provide their transportation services, falls squarely within what the FAAAA forbids. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ('State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are [FAAAA] preempted."); *see also Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (holding FAAAA preempted Maine law "aim[ed] directly at the carriage of goods, a commercial field where carriage by commercial motor vehicles plays a major role.").[3] Because each of the Plaintiffs' claims are pled as predicated on the Transportation Industry Act's application, all four claims must in turn be dismissed.

Finally, as discussed in Section II(C), the existence of the Independent Contractor Agreement that governs the relationship between Plaintiffs' respective businesses and HDL provides an alternative basis for dismissal of the unjust enrichment claim because New York law does not permit recovery for unjust

---

[3] The *Morales* decision was decided under the Airline Deregulation Act or "ADA", which Congress borrowed the preemption language from in drafting the FAAAA. *Rowe*, 552 U.S. at 368. Consistent with its text and history, the Supreme Court has instructed that, in interpreting the FAAAA's preemption language, courts should follow decisions interpreting similar language in the ADA. *Id.* at 371.

enrichment if the parties have a valid, enforceable contract that governs the same subject matter.

## II. ARGUMENT

### A. Motion to Dismiss Standard

Under Rule 12(b)(6), the Court must dismiss a complaint that fails to state a claim for which relief could be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a Rule 12(b)(6) motion, the Court may rely on materials, such as the Agreements here, that are incorporated in the Complaint. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)

### B. The FAAAA preempts Plaintiffs' claims predicated on the Transportation Industry Act

Through passage of the FAAAA in 1994, Congress intended to liberate participants in the trucking industry from state interference with the manner in which they transport property. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008). This deregulation of the trucking industry would allow the free-market to dictate transportation service terms that "reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality." *Id.* at 371 (internal quotations omitted). The resultant market freedom generates multiple different transportation outcomes. Among those are businesses, like Innovel Solutions, that elect to outsource management of their supply chain to third-party logistics companies, such as HDL. *See, e.g., Camp v. TNT Logistics Corp.*, 553 F.3d 502, 508 (7th Cir. 2009) (identifying the "main focus" of the defendant "third-party logistics company" as being "the timely and efficient procurement of" goods).

To achieve its deregulatory goal, Congress expressly preempted states from enacting or enforcing any law "related to a price, route or service of any motor carrier [or] broker with respect to the transportation of property." 49 U.S.C. § 14501(c). The Supreme Court has explained that "the ban on enacting or enforcing any law 'relating to rates, routes, or services' is most sensibly read . . . to mean States may not seek to impose its own public policies or theories of competition or regulation on the *operations of*" a broker or motor carrier. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995) (emphasis added).

State laws that "relate to a price, route, or service" of trucking industry participants like motor carriers or brokers are FAAAA-preempted. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are FAAAA preempted."). Through the enactment of the Transportation Industry Act, the New York legislature created a law specifically directed at how services are performed by any "commercial goods transportation contractor," which encompasses federally-regulated motor carriers and brokers. N.Y. Lab. Law § 862-a(1) (McKinney 2014) (defining "[c]ommercial goods transportation contractor" as "any sole proprietor, partnership, firm, corporation, limited liability company, association or other legal entity that compensates a driver who possesses a state-issued driver's license, transports goods in the state of New York and operates a commercial motor vehicle . . . ."); *see also* N.Y. Assemb. 8451, 2013 Leg., 237th Sess. (2013 N.Y.) (stating that the purpose of the Transportation Industry Act was to "ensure the proper classification of employees in the trucking industry").[4]

---

[4] A copy of this Assembly Bill Committee Report is attached as Exhibit 3. That both motor carriers and brokers are considered part of the broader "trucking industry" cannot be disputed. *E.g., RLI Ins. Co. v. All Star Transp. Inc.*, 608 F.3d 848, 848 (D.C. Cir. 2010) (explaining that "[t]he trucking industry consists of three main players: (i) shippers, who typically are manufacturers sending goods to retailers or others; (ii) truckers, who transport

"[W]hether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business." *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 438 (1st Cir. 2016). The Transportation Industry Act does precisely what the FAAAA forbids by interfering with this workforce decision. *Id.*; *see also Rowe*, 552 U.S. at 371 (holding FAAAA preempted Maine law "aim[ed] directly at the carriage of goods, a commercial field where carriage by commercial motor vehicles plays a major role."); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (holding New York law "relate[d] to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision").

Moreover, the Transportation Industry Act's interference with motor carriers and broker operations could not be more clear from the statutory text: it explicitly references motor carrier and broker services fourteen times.[5] Regardless of New

---

the goods; and (iii) brokers, who act as intermediaries between shippers and truckers. When a shipper needs to send goods, it hires a broker.").

[5] The fourteen references to services, with emphasis added in the quotations, are: N.Y. Lab. Law § 862-b(1) (McKinney 2014) (identifying who the legislation applies to as "any person performing commercial goods transportation <u>services</u> for a commercial goods transportation contractor" and dictating how "payment for such <u>services</u>" occurs); *Id.* § 862-b(1)(b) ("the <u>services</u> must be performed outside the usual course of business for which the <u>service</u> is performed"); *Id.* § 862-b(1)(c) ("the individual is customarily engaged in an independently established trade, occupation, profession, or business that is similar to the <u>service</u> at issue"); *Id.* § 862-b(2)(a) (" the business entity is performing the <u>service</u> free from the direction or control over the means and manner of providing the <u>service</u>, subject only to the right of the commercial goods transportation contractor for whom the <u>service</u> is provided to specify the desired result or federal rule or regulation"); *Id.* § 862-b(2)(e) ("the business entity may make its <u>services</u> available to the general public . . . on a continuing basis"); *Id.* § 862-b(2)(f) (" the business entity provides <u>services</u> reported on a Federal Income Tax form 1099 . . ."); *Id.* § 862-b(2)(g) ("the business entity performs <u>services</u> for the commercial goods transportation contractor pursuant to a written contract . . ."); *Id.* § 862-b(2)(h) ("when the <u>services</u> being provided require a license or permit, the business entity pays for the license or permit in the business entity's name . . . ."); *Id.* § 862-b(2)(k) ("the business entity has the right to perform similar <u>services</u> for others on whatever basis and whenever it chooses"); *Id.* § 862-b(5) ("When a business entity meets the definition of a separate business entity pursuant to subdivision two of this section, the separate business entity will be considered a [an independent contractor] performing <u>services</u>").

York's intention or reasons for doing so, the FAAAA will not permit it "to impose its own public policies . . . on the operations of" a broker or motor carrier through state law directed specifically at the transportation services those companies provide. *American Airlines, Inc. v. Wolens*, 513 U.S. at 229 n.5.

The unjust enrichment claim incorporates the Transportation Industry Act and in turn is preempted as well. Am. Compl. ¶ 53; *see also Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422,1431 (2014) (holding FAAAA's "deregulatory aim can be undermined just as surely by a state common law rule as it can be a state statute or regulation."). But, the unjust enrichment claim also falls comfortably within the FAAAA's preemptive scope given the relief sought requires discarding the independent contractor relationship and financial terms for the services provided as set forth in each Independent Contractor Agreement at issue. *See Frey v. Bekins Van Lines, Inc.*, 802 F. Supp. 2d 438, 442 (E.D.N.Y. 2011); *see also Deerskin Trading Post, Inc. v. UPS*, 972 F. Supp. 665, 672–73 (N.D. Ga. 1997) (holding FAAAA preempts an unjust enrichment claim because "Plaintiff's claims relate to prices charged by Defendant for various services and thus . . . impose state laws, standards, and policies external to any agreement between Plaintiff and Defendant on Defendant's conduct relating to its pricing practices.").

The FAAAA preempts all four of Plaintiffs' claims against HDL, and dismissal of all of those claims and HDL from the lawsuit is therefore required.

### C. The existence of the Independent Contractor Agreement precludes Plaintiffs from pursuing their unjust enrichment claim

Alternatively, Plaintiffs' unjust enrichment claim should be dismissed on the basis that recovery on an unjust enrichment theory is unavailable when, as here, the parties' relationship is founded on a contract and Plaintiffs have failed to allege that

the contract is invalid. *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir. 1998).

In evaluating New York law, courts in the Second Circuit consistently hold that an unjust enrichment claim cannot survive a motion to dismiss if a contract between the parties covers the subject matter of the dispute. *Id.*; *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."). Plaintiffs contend HDL's alleged improper classification of independent contractors along with the failure to reimburse independent contractors for work-related expenditures unjustly enriched HDL. Am. Compl. ¶¶ 53–57. These allegations expressly relate to and are at odds with the terms and conditions of the parties' contractual relationship. Independent Contractor Agreement ¶ 6 (Expenses)("Contractor shall provide its own vehicle and shall pay all costs attendant with its operation and maintenance."); ¶ 10 (Independent Contractor Relationship) ("The parties have created an independent contractor relationship and neither party . . . will be considered the partners, servants, agents, employees, or joint venturers of or with the other."); *id.* at p. 7 (Exhibit A – Contractor Compensation Schedule).

Moreover, Plaintiffs' allegations affirm the existence of an enforceable contract applicable to the services that they performed for HDL, rendering their claims for unjust enrichment unsustainable. *See* Compl. ¶ 16 ("HDL required delivery drivers with which it contracts to have or lease a truck"), ¶ 18 ("HDL also requires delivery drivers with which it contracts to obtain insurance"), ¶ 19 ("HDL retained the right to terminate the contract with its delivery drivers without cause."). Since Plaintiffs have alleged that their contract governed the terms and conditions of their relationship with HDL, as a matter of law, they cannot state a claim for unjust

enrichment. Therefore, Count IV of the Amended Complaint must be dismissed with prejudice for failure to state a claim.

## III.   CONCLUSION

Attempts to alter the manner in which a motor carrier provides its services "is inconsistent with the [FAAAA's] deregulatory purpose, since it imposes one system for those that the market might develop." *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 552 (7th Cir. 2012). "The decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business." *Schwann*, 813 F.3d. at 438. The FAAAA precludes states from interfering with that decision; "[s]uch an application of state law poses a serious potential impediment to the achievement of the FAAAA's objectives because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them." *Id.* New York's Transportation Industry Act does just that, as does Plaintiffs' request to substitute state law for each Independent Contractor Agreement's terms. Dismissal of all four claims asserted against HDL is required.

The unjust enrichment claim alternatively must be dismissed because a contract between the parties covering the subject matter of this dispute exists, which precludes recovery on an unjust enrichment theory.

Respectfully submitted,

**/s/ Rodney O. Personius**
Rodney O. Personius, Esq.
Personius Melber LLP
2100 Main Place Tower
Buffalo, NY  14202
(716)  855-1050 x101
rop@personiusmelber.com

<pre>
                                  Andrew J. Butcher, Esq.
                                  (*pro hac vice*)
                                  Scopelitis, Garvin, Light,
                                  Hanson & Feary
                                  30 W. Monroe Street, Suite 600
                                  Chicago, IL 60603
                                  312-255-7200
                                  abutcher@scopelitis.com



TO:   Samuel Alba, Esq.
      FRIEDMAN & RANZENHOFER, P.C.
      74 Main Street
      P.O. Box 31
      Akron, NY  14001
      (716)  542-5444

      Ravi Sattiraju, Esq.
      Anthony S. Almeida, Esq.
      THE SATTIRAJU LAW FIRM, P.C.
      116 Village Boulevard, Suite 200
      Princeton, NJ  08540
      (609)  799-1266

      Harold L. Lichten, Esq.
      Shannon Liss-Riordan, Esq.
      Benjamin J. Weber, Esq.
      LICHTEN & LISS-RIORDAN, P.C.
      720 Boylston Street, Suite 2000
      Boston, MA  02116
      (617)  994-5800

      Brendan T. Killeen, Esq.
      Michael J. Puma, Esq.
      Morgan, Lewis & Bockius LLP
      101 Park Avenue
      37TH Floor
      New York, NY 10178-0060
      (212)-309-6001
</pre>

# CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2017, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Samuel Alba, Esq.<br>FRIEDMAN & RANZENHOFER, P.C.<br>74 Main Street<br>P.O. Box 31<br>Akron, NY 14001<br>(716) 542-5444 | Shannon Liss-Riordan, Esq.<br>Benjamin J. Weber, Esq.<br>LICHTEN & LISS-RIORDAN, P.C.<br>720 Boylston Street, Suite 2000<br>Boston, MA 02116<br>(617) 994-5800 |
| Ravi Sattiraju, Esq.<br>Anthony S. Almeida, Esq.<br>THE SATTIRAJU LAW FIRM, P.C.<br>116 Village Boulevard, Suite 200<br>Princeton, NJ 08540<br>(609) 799-1266 | Brendan T. Killeen, Esq.<br>Michael J. Puma, Esq.<br>Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>37TH Floor<br>New York, NY 10178-0060<br>(212)-309-6001 |
| Harold L. Lichten, Esq. | |

                                        **/s/ Rodney O. Personius**
                                        Rodney O. Personius, Esq.
                                        PERSONIUS MELBER LLP
                                        *Local Counsel for Defendant*
                                         HOMEDELIVERYLINK, Inc.
                                          2100 Main Place Tower
                                        Buffalo, NY 14202
                                        (716) 855-1050
                                        rop@personiusmelber.com