UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MIKE KLOPPEL and
WILSON ADAMS,

                          Plaintiffs,

                                                        Case # 17-CV-6296-FPG

v.

                                                        DECISION AND ORDER

SEARS HOLDINGS CORPORATION,
SEARS ROEBUCK & COMPANY, and
HOMEDELIVERYLINK, INC.,

                          Defendants.

## INTRODUCTION

In this putative class action, Plaintiffs Mike Kloppel and Wilson Adams allege that Defendants HomeDeliveryLink, Inc. ("HDL"), Sears Holdings Corporation, and Sears, Roebuck and Co. (together, "Sears") misclassified them as independent contractors rather than employees and took illegal deductions from their pay while they performed delivery services for Defendants in New York State.

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF. Nos. 12, 20. Additionally, Plaintiffs move to strike part of Defendant HDL's reply brief. For the reasons stated below, Sears' Motion to Dismiss is GRANTED in full and HomeDeliveryLink's Motion to Dismiss is DENIED in part and GRANTED in part. Plaintiffs' Motion to Strike is DENIED in full.

**BACKGROUND**[1]

Plaintiffs, along with other similarly situated individuals they seek to represent, delivered Sears merchandise to customers' homes throughout New York State. Plaintiffs contracted with Defendant HDL, a third party logistics provider, rather than directly with Defendant Sears. Plaintiffs allege that Defendant HDL treated them as independent contractors even though they were rightfully employees under New York law. They further allege that Defendant HDL unlawfully deducted "certain expenses directly from the compensation it [paid to Plaintiffs], including when HDL determine[d], in its sole discretion, that a delivery ha[d] been made in a manner it deem[ed] to be unsatisfactory (e.g., damaged goods, damage to customer property)." ECF No. 9 at 7. HDL "would also deduct other expenses from the compensation it pa[id] such as the cost of truck rental and fuel," and "the costs of workers' compensation insurance and general liability insurance from the compensation it paid to" Plaintiffs. *Id.* Finally, Plaintiffs allege that "Defendants failed to furnish Plaintiff[s] . . . with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances, deductions taken, and net wages paid." *Id.*

**DISCUSSION**

**I.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[1] The following allegations are taken from Plaintiffs' Amended Complaint (ECF No. 10) and are accepted as true to evaluate Defendants' motions to dismiss.

as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. Defendant HDL's Motion to Dismiss

### A. The Fair Play Act

Plaintiffs argue that under the New York State Commercial Goods Transportation Industry Fair Play Act ("Fair Play Act"), N.Y. Lab. Law § 862-b, they were rightfully employees and not, as Defendant HDL labeled them, independent contractors. HDL's wage deductions and failure to provide wage statements therefore violated several New York labor laws.

The Fair Play Act, which became effective in New York on April 10, 2014, requires an employer to classify "[a]ny person performing commercial goods transportation services for a commercial goods transportation contractor . . . as an employee," and not as an independent contractor. N.Y. Lab. Law § 862-b(1). There is an exception to this presumption if the employer demonstrates that the worker: 1) is free from control and direction over the performance of his work; 2) performs work that is outside the usual course of business or is outside all of the employer's places of business, unless the employer contracts with third parties to place employees; and 3) is in an independently established trade, occupation, profession, or business. N.Y. Lab. Law § 862-b(1)(a-c). If the employer can demonstrate that a worker satisfies all three conditions, it may treat him as an independent contractor instead of as an employee. Consequently, the worker will not enjoy N.Y. Lab. Law §§ 198-b and 193's protections from wage deductions because those

laws only apply to employees. For the same reason, the worker is not entitled to a wage statement under N.Y. Lab. Law § 195.

Even if an employer cannot satisfy the above three-prong test, the Fair Play Act provides an additional test through which an employer may establish that a worker is an independent contractor: the "separate business entity" test. N.Y. Lab. Law § 862-b(2)(a-k). If the employer can establish that the worker meets all eleven factors of the separate business entity test, including that the worker or "business entity" owns or leases the "capital goods and gains the profits and bears the losses of the business entity" and "has the right to perform similar services for others on whatever basis and whenever it chooses," the employer may deem the business entity an independent contractor. *Id.* Again, N.Y. Lab. Law §§ 198-b, 193, and 195 would not protect the business entity.

B. **Preemption**

Defendant HDL argues that the Federal Aviation Administration Authorization Act ("FAAAA") expressly preempts the Fair Play Act. Plaintiffs argue in response that the FAAAA's preemption clause does not cover the Fair Play Act.

A defendant must plead and prove the affirmative defense of federal preemption. *See Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit."). The court may resolve the issue of preemption on a motion to dismiss if the facts necessary to determine the issue clearly appear on the face of the complaint. Fed. R. Civ. P. 12(b)(6). The defendant need not present empirical evidence for the court to find preemption, but the defendant should demonstrate the real and logical effects of the state statute from which the court may find that the statute is preempted. *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 20 (1st Cir. 2014); *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1055 (7th Cir. 2016).

### 1. Background and Language of the FAAAA

In 1980, Congress deregulated the trucking industry to promote competition, and in 1994, it passed the FAAA to avoid "a patchwork of state-service determining laws." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 367, 373 (2008). Congress's "overarching goal" for passing the FAAAA was to help "ensure transportation rates, routes and services" reflected "maximum reliance on competitive market forces," thereby stimulating "efficiency, innovation, and low prices*." Id*. at 371.

The FAAAA's preemption clause, which borrows language from the Airline Deregulation Act of 1978 ("ADA"), reads: "[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." *Id.* at 368 (quoting 49 U.S.C. § 14501(c)(1)). The Supreme Court has defined the phrase "related to" in the ADA as "having a connection with or reference to." *Morales v. TWA*, 504 U.S. 374, 384 (1992). In *Rowe*, the Court clarified that its interpretation of the language in the ADA's preemption clause applied to the identical language of the FAAAA's preemption clause. *See Rowe* 552 U.S. at 370 (2008). Putting it all together, the Court in *Rowe* determined that the FAAAA preempts state "'enforcement *actions having a connection with, or reference to*,' carrier 'rates, routes, or services . . .'" *Id.* (quoting *Morales*, 504 U.S. at 384). The connection need not be direct: preemption "may occur even if a state law's effect on rates, routes or services is only indirect." *Id.*

The Supreme Court's interpretation of the FAAAA's preemption clause is broad but not limitless: in *Morales*, the Court recognized that the FAAA preempts only those laws that have an at least "significant effect" on fares, routes and services. *Morales*, 504 U.S. at 390. The FAA does not preempt state laws "that affect [fares, routes, or services] in only a 'tenuous, remote or peripheral . . . manner." *Id.* Examples of such state laws include zoning regulations and gambling

prohibitions. *See Rowe*, 552 U.S. at 371; *Dan's City Used Cars*, *Inc. v. Pelkey*, 569 U.S. 251, 264 (2013). The Supreme Court has not encountered a case involving FAAAA preemption of state labor laws, but two Circuit Courts have ruled on cases similar to the one at bar and reached opposite conclusions.

## 2. The First Circuit's FAAAA Preemption Analysis

In *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 438 (1st Cir. 2016), the First Circuit held that the FAAAA preempted a three-prong Massachusetts independent contractor test. The disputed Massachusetts test mandated that any worker who did not provide services "outside the usual course of the business of the employer" be treated as an employee and not an independent contractor. *Id.* at 433 (quoting Mass. Gen. Laws § 148B(a)(2)). The *Schwann* court noted that the disputed Massachusetts independent contractor test "stands as something of an anomaly because it makes any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes," whereas under federal labor law "and the law of many states, the relationship between the service performed and the usual course of the enterprise's business is simply one among many factors to be considered." *Id.*

Additionally, under Massachusetts law, once a worker is deemed an employee, the employer "must provide certain benefits to its employees, including various days off, . . . parental leave, . . . work-break benefits, . . . and a minimum wage . . ." *Id.* The *Schwann* court also found it significant that an employer could not contract around the Massachusetts independent contractor test. *Id.* ("The statute also bars the employer from excepting itself from this mandate by contract.")

The combined effect of the Massachusetts law's characteristics mandated that employers use their own employees rather than "procure the services of an independent contractor." *Id.* at 438. The First Circuit reasoned that this effect posed "a serious potential impediment to the

6

achievement of the FAAAA's objectives [of free competition and national uniformity] because a court, rather than the market participant, would ultimately determine what services that company provides and how it chooses to provide them." *Id.* The Massachusetts law would have prevented FedEx, the defendant in *Schwann*, from using independent contractors, which in turn would "have a significant impact on the actual routes [FedEx drivers] followed for the pick-up and delivery of packages." *Id.* at 439. The Massachusetts law therefore had "a connection with" FedEx's rates and services, placing it squarely within the target of the FAAAA's preemption clause.

### 3. Seventh Circuit's FAAAA Preemption Analysis

In *Costello v. BeavEx*, 810 F.3d 1045, 1050 (7th Cir. 2016), the Seventh Circuit found that the FAAAA did not preempt the Illinois Wage Payment and Collection Act ("IWPCA"), a state labor law. Although the Seventh Circuit used the same analysis[2] that the First Circuit used[3] in *Schwann*, the facts of the case and the narrower scope of the state labor law mandated a different result. *See id.* at 1056 ("Because the scope of the IWPCA is limited, its logical effect is necessarily more limited than the [Massachusetts] statute . . ."). The *BeavEx* court noted three specific distinctions between the IWPCA and the Massachusetts law at-issue in *Schwann*.

First, unlike in Massachusetts, deeming a worker an employee as opposed to an independent contractor does not require an employer to comply with a "slew of" other "state laws." *Id.* at 1056. Second, unlike in Massachusetts, employers in Illinois may contract around "the

---

[2] Unlike the *Schwann* court, the *BeavEx* court stressed that laws affecting "the way a carrier interacts with its customers falls squarely within the scope of FAAAA preemption," while laws "that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption." *BeavEx*, 810 F.3d at 1055. To support this proposition, the court cited *Morales*, 504 U.S. at 388 (preempting state-law claim because "it would give *consumers* a cause of action . . . for an airline's failure to provide a particular advertised price,") and *Rowe*, 552 U.S. at 372 (preempting a state law that determined "the services that motor carrier will provide" to their customers).

[3] The *Schwann* court acknowledged that its decision did not contradict the *BeavEx* decision because the Seventh Circuit "distinguished the Massachusetts statute . . . from the Illinois statute before it in holding that the latter was not preempted by the FAAAA." *Schwann*, 813 F.3d at 440 n.8.

7

IWPCA's prohibition on deductions from wages" so long as the employee has freely consented in writing. *Id.* at 1057. This allowance is significant because in *Northwest, Inc. v. Ginsberg*, the Supreme Court found that the ADA[4] did not preempt a state claim because the parties "were free to contract around those rules." 134 S. Ct. 1422, 1433 (2014). Citing *Northwest*, the *BeavEx* court stressed that the defendant employer was free to contract around the IWPCA's deduction prohibition and had not "demonstrated to [the] court that preventing it from deducting from its [employees'] wages or the transaction costs associated with acquiring consent to do so would have a significant impact related to its prices, routes, or services." *BeavEx*, 810 F.3d at 1056.

Third, while the defendant employer in *Schwann* demonstrated the impact of the Massachusetts law on its business model and services, the defendant in *BeavEx* did not offer "specific evidence of the effect of the IWPCA on its business model, instead preferring to rely on conclusory allegations that compliance with the IWCPA will require BeavEx to switch its entire business model from independent-contractor-based to employee-based." *Id*. The *BeavEx* court saw "no basis for concluding that the IWPCA would require that change given that the federal employment laws and other [Illinois] labor laws have different tests for employment status." *Id.*

For example, unlike in Massachusetts, an employer could deem a worker in Illinois an employee for the purposes of the IWPCA's wage deduction prohibition, but that worker would not necessarily be an "employee for purposes of the Illinois Minimum Wage Law," which uses a different test than the IWPCA to determine if an individual is an independent contractor. *Id.* at 1057. On the other hand, the First Circuit found in *Schwann* that "if an employer were compelled to treat its drivers as employees under that state law, the resulting constellation of employment regulations would 'largely foreclose' FedEx's preferred method of providing delivery services."

---

[4] As discussed earlier in this opinion, the ADA is analogous to the FAAAA. *See Rowe*, 552 U.S. at 370.

*See* Brief for the United States as Amicus Curiae at p. 19, *BeavEx, Inc. v. Costello*, 137 S. Ct. 2289 (2017) (No. 15-1305).

4. **Analysis: Effects of the Fair Play Act**

Defendant HDL has not provided the facts necessary for the Court to determine at this time that the FAAAA preempts Plaintiffs' claims. The crucial inquiry in *BeavEx* and *Schwann* was whether the relevant state laws forced the defendant employer to switch its business model from independent contractor-based to employee-based. Defendant HDL fails to allege—even in a conclusory manner like the *BeavEx* defendant—that the Fair Play Act would force it to switch its business model from independent contractor-based to employee-based. HDL merely cites *Schwann* for the proposition that whether "to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business." ECF No. 21 at 9 (quoting *Schwann*, 813 F.3d at 438). HDL does not acknowledge *BeavEx* or discuss the effects that the Fair Play Act would have on its routes, services, or rates.

The Fair Play Act appears to be a substantially narrower law than that at-issue in *Schwann*. Although the initial three-prong test for determining if a worker is an employee is similar[5] to the test in Massachusetts, an employer can still treat a worker as an independent contractor even if the worker fails the three-prong test, provided the employer can demonstrate that the worker is a "separate business entity" under the law's 11-factor test. N.Y.Lab. Law § 862-b(2). Additionally, unlike in Massachusetts, employers in New York can contract around the law prohibiting wage

---

[5] Both the Fair Play Act and the Massachusetts law in *Schwann* dictate that a worker must perform a service outside the usual course of the employer's business to be labeled an independent contractor. *Compare* Mass. Gen. Laws § 148B(a) ("an individual performing any service . . . shall be considered to be an employee . . . unless . . . the service is performed outside the usual course of the business of the employer . . .) *with* N.Y. Lab. Law § 862-b(1)(b) (requiring that the worker's "service . . . be performed outside the usual course of business" for the worker to be an independent contractor).

9

deductions. N.Y.Lab. Law § 193(1)(b) ("No employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee.") While the Illinois law in *BeavEx* does not require that deductions be for the employee's benefit, New York law is more favorable to employers than the Massachusetts law in *Schwann*, which did not allow employers to contract around the wage deduction prohibition in any circumstances.

Finally, unlike the disputed law in *Schwann*, it is not evident that the Fair Play Act triggers an entire host of other regulations, including "various days off, . . . parental leave, . . . work-break benefits, . . . and a minimum wage." *Schwann*, 813 F.3d at 433. Although other facts may emerge during discovery, at this stage of the litigation there is no indication that the Fair Play Act would have a significant effect on HDL's rates, routes, or services. *See Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 84 (2d Cir. 1997) (acknowledging that there are some cases "where preemption cannot be easily determined from the pleadings.")

### 5. Analysis: The Fair Play Act's Reference to Services

While Defendant HDL has not demonstrated that the Fair Play Act has a significant effect on its rates, routes, or services, it argues that it need not do so when "the state law at issue 'expressly refers to [motor carrier] rates, routes or services.'" ECF No. 26 at 8 (quoting *EagleMed, LLC v. Cox,* 868 F.3d 893, 902 (10th Cir. 2017)). The FAAAA indeed preempts state laws that explicitly refer to rates, routes, or services regardless of the state law's *effect* on those three things, *see Morales*, 504 U.S. at 384, but the Fair Play Act is no such law.

That the Fair Play Act references rates, routes, or services "could not be more clear" to Defendant HDL because the law uses the word "services" 14 times.[6] ECF No. 21 at 9. HDL urges the Court to find the statute preempted merely because it uses the word "services." *Id.* But Second Circuit case law does not support HDL's unduly semantic and formalistic argument. In *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 220 (2nd Cir. 2008), the Second Circuit held that the ADA[7] preempted New York State's Passenger Bill of Rights ("PBR"), which required airlines to provide passengers who "have boarded an aircraft and are delayed more than three hours on the aircraft with . . . electric generation *service*[,] . . . waste removal *service* . . . for on-board restrooms[,] and" food and drinks. (emphasis added). The Second Circuit did not hold that the ADA preempted New York's PBR simply because it used the word "service." Instead, the court first decided whether the provision of electricity, refreshments, and restrooms constituted "services." *Id.* at 222. The court determined that "food, water, electricity, and restrooms" were services, but it ignored the fact that the PBR used the word "services" in making that determination.

Then, the court determined that the ultimate inquiry in determining whether a state law referred to "rates, routes or services" was whether the law "directly . . . regulate[d] carrier *services*." *Id.* at 223. (quoting *Rowe*, 552 U.S. at 476). The court found the PBR preempted because it directly regulated airline services such as refreshments and electricity—not simply because it used the word "services." *See id.*

The Fair Play Act, on the other hand, does not directly regulate HDL's services. The statute's use of the word "services" is incidental—the law's real targets are the *people* performing

---

[6] The Act's 14 references to services include: "any person performing commercial goods transportation services" and "the individual is customarily engaged in an independently established trade, occupation, profession or business that is similar to the service at issue . . ." N.Y. Lab. Law § 862-b.

[7] As discussed earlier in this opinion, the ADA is analogous to the FAAAA. *See Rowe*, 552 U.S. at 370.

11

those commercial goods transportation services, and not the services themselves. By contrast, in the cases HDL uses to support its argument that the Fair Play Act "refers to" services—including *Morales*, *Rowe*, and *EagleMed*—the preempted state statutes attempted to regulate rates, routes, or services directly. *See, e.g. Morales*, 504 U.S. at 388 (finding preempted a Texas statute that, among other things, gave consumers a cause of action for an airline's failure to provide a particular advertised fare); *EagleMed*, 868 F.3d at 904 (finding preempted Wyoming law's establishing fixed "maximum reimbursement rates for air-ambulance carriers"); *Rowe*, 552 U.S. at 992 (finding preempted a Maine law "regulating delivery service procedures"). The Fair Play Act, however, is a "labor law, which regulates the motor carrier *as an employer*, [and] is often too 'remote' to warrant FAAAA preemption." *BeavEx*, 810 F.3d at 1054.

For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs' N.Y. Lab. Law § 862-b claim is DENIED, but the Court may revisit the preemption issue in later stages of this litigation.

## III. Sears' Motion to Dismiss

Because Plaintiffs' Amended Complaint relates solely to Defendant HDL's conduct, and not to Defendant Sears' conduct, Plaintiffs have no claim for relief against Sears. Plaintiffs concede that "Sears is not alleged to have directly participated in [HDL's] alleged violations," but argue that Sears is liable for HDL's conduct as Plaintiffs' "joint employer" with HDL. ECF No. 23 at 7. Plaintiffs argue that, as their "joint employer," Sears is liable for their New York labor law claims. *Id.* at 8. The Court disagrees.

A "finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions." *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122-23 (E.D.N.Y. 2009). According to the

Plaintiffs' own complaint, HDL is the only defendant that improperly deducted from Plaintiffs' paychecks and withheld wage statements. Plaintiffs fail to allege that Sears knew of or participated in HDL's alleged illegal acts. Absent any such allegation, the Court cannot impute HDL's conduct to Sears. *See Sosa*, No. 12 Civ. 8926(NRB), 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013) (granting defendant's motion to dismiss a Title VII claim because "the conduct of one [joint] employer cannot necessarily be imputed to the other"). Accordingly, Defendant Sears' Motion to Dismiss Plaintiffs' labor law claims is GRANTED.

## IV. Plaintiffs' Unjust Enrichment Claim against Both Defendants

Plaintiffs raise an unjust enrichment claim against both Defendants based on the same underlying factual allegations as their labor law claims. Because the unjust enrichment claim is entirely duplicative,[8] it is DISMISSED as to both defendants. *See Nelson v. MillerCoors*, LLC, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) ("Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.").

## V. Plaintiffs' Motion to Strike

Plaintiffs move to strike one of the arguments in Defendant HDL's reply brief, stating that "HDL's argument that the only state laws not preempted by the FAAAA are expressly defined in the FAAAA's list of exceptions" was raised for the first time in HDL's reply brief. HDL made that argument, however, in reply to Plaintiffs' arguments in opposition to HDL's Motion to

---

[8] Although the Court allowed an unjust enrichment claim to move forward in a similar case, *Padovano v. FedEx Ground Packags Sys.*, 16-CV-17-FPG, 2016 WL 7056574, at *16 (W.D.N.Y. Dec. 5, 2016), the defendant there did not argue that the plaintiff's unjust enrichment claim entirely duplicated other claims. Since *Padovano*, other courts within the Second Circuit have clarified that alternative unjust enrichment claims should be dismissed if they are based on the same facts as other claims.

Dismiss. Because a reply brief responds to issues that the opposing party raised, HDL did not err. Plaintiffs' Motion to Strike is therefore DENIED.

## CONCLUSION

For the reasons stated above, Defendant HDL's Motion to Dismiss (ECF No. 20) is DENIED as to Plaintiffs' New York Labor Law claims, but GRANTED as to Plaintiffs' unjust enrichment claim. Defendant Sears' Motion to Dismiss (ECF No. 12) is GRANTED in full, and the case against Defendant Sears is DISMISSED. The Clerk of Court is directed to terminate Defendants Sears Holdings Corporation and Sears, Roebuck & Company as parties to this action. Plaintiffs' Motion to Strike (ECF No. 27) is DENIED.

IT IS SO ORDERED.

Dated: February 28, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court