UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MIKE KLOPPEL and
WILSON ADAMS,

       Plaintiffs,

v.

HOMEDELIVERYLINK, INC.,
       Defendant.

Case # 17-CV-6296-FPG

DECISION AND ORDER

## INTRODUCTION

  Plaintiffs Mike Kloppel and Adam Wilson ("Plaintiffs") filed this putative class action on May 9, 2017, alleging that Sears Holding Corporation and Sears, Roebuck & Company (collectively, "Sears") and Defendant HomeDeliveryLink ("HDL" or "Defendant") misclassified them as independent contractors and took deductions from their wages in violation of New York Labor Law ("NYLL"). *See* ECF No. 1. On July 7, 2017, Plaintiffs filed an amended complaint. ECF Nos. 9, 10.

  On February 28, 2018, the Court issued a Decision and Order granting Sears's motion to dismiss in full and granting in part and denying in part HDL's motion to dismiss the amended complaint. *See* ECF Nos. 12, 20, 31. HDL filed a motion for judgment on the pleadings, and, on November 18, 2019, the Court granted HDL's motion in part, dismissing Plaintiffs' claim under NYLL § 198-b for illegal kickback of wages. ECF No. 87. The only surviving claims are against HDL for (1) illegal deductions pursuant to NYLL § 193 and (2) record-keeping violations pursuant to NYLL § 195. *Id.*

  Plaintiffs now move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. ECF No. 98. HDL moves for summary judgment pursuant to Rule 56. ECF No. 109. The parties have fully briefed both motions.

1

For the reasons set forth below, Plaintiffs' motion for class certification is GRANTED and HDL's motion for summary judgment is DENIED.

## BACKGROUND

Plaintiffs, along with other similarly situated individuals they seek to represent, delivered merchandise to customers' homes throughout New York State. Innovel Solutions, Inc. ("Innovel") warehouses merchandise for retailers. HDL is a third-party logistics provider that operates as a "freight-forward broker" for Innovel. ECF No. 98-4 at 12.[1] Plaintiffs and putative class members are contract carrier drivers (collectively, "putative class members" or "contract carrier drivers") who, through business entities, contracted with HDL to deliver goods from Innovel. HDL's New York-based contract carrier drivers—the putative class—exclusively made deliveries of Innovel's merchandise. ECF No. 98-5 at 19-20.

In New York, HDL operates out of two facilities: one in Rochester and one in Syosset. ECF No. 98-4 at 5; ECF No. 98-7 at 4-5 . HDL also operated out of a facility in Buffalo until a year ago. ECF No. 98-4 at 5; ECF No. 98-5 at 61; ECF No. 98-7 at 4-5. Innovel operated each of these three facilities and the operating procedures were virtually identical in each. ECF No. 98-4 at 12; ECF No. 98-5 at 13; ECF No. 98-7 at 15, 20. HDL is required to follow Innovel's procedures and rules. ECF No. 98-8 at 11.

HDL's account executives were responsible for "hiring" contract carrier drivers. Each new contract carrier driver was required to complete a "CONTRACTOR/Driver Fact Sheet." ECF No. 98-5 at 8; ECF No. 98-7 at 6; ECF No. 98-8 at 6. This form was the same across all facilities. ECF No. 98-7 at 6; ECF No. 98-8 at 6. Thereafter, contract carrier drivers met with an HDL account executive, during which the account executive explained compensation, Innovel's uniform requirement,

---

[1] All cites are to the document number assigned to the exhibits by the Court's electronic case filing system. The Court also uses the pagination automatically generated by that system.

orientation, and proper customer service. ECF No. 98-5 at 8-9; ECF No. 98-7 at 6; ECF No. 98-8 at 6. HDL would conduct a criminal background check, motor vehicle record check, and drug and alcohol testing. ECF No. 98-19 at 14.

HDL required that all contract carrier drivers create a business entity through which to operate prior to working for HDL. ECF No. 98-4 at 17; ECF No. 98-5 at 9. HDL would assist prospective contract carrier drivers in forming a business entity. ECF No. 98-5 at 9; ECF No. 98-7 at 12. For all contract carrier drivers operating under their own business names, HDL required that those drivers complete an "Independent Contractor Agreement" ("ICA"), which was the same across New York. ECF No. 98-4 at 16; ECF No. 98-7 at 9; ECF No. 98-9. The account executives assisted contract carrier drivers in completing the ICAs. ECF No. 98-7 at 10; ECF No. 98-8 at 8. Once hired, HDL provided an "orientation period," during which the contract carrier drivers were trained on proper customer service. ECF No. 98-5 at 20-21.

Putative class members, the contract carrier drivers, were supervised and directed by HDL account executives in each of HDL's three facilities. ECF No. 98-5 at 19; ECF No. 98-7 at 14. These account executives testified that they treated the contract carrier drivers the same regardless of location, and attempted to apply HDL guidelines consistently across the facilities. ECF No. 98-5 at 19; ECF No. 98-7 at 16; ECF No. 98-8 at 16. Indeed, one of HDL's representatives indicated that HDL treated the contract carrier drivers "a hundred percent" the same. ECF No. 98-5 at 19. According to them, contract carrier drivers perform the same work regardless of their home facility. ECF. No. 98-5 at 19.

Each morning, HDL account executives observed the contract carrier drivers loading their trucks. ECF No. 98-5 at 6. The account executives also held morning meetings with the contract carrier drivers. ECF No. 98-4 at 17; ECF No. 98-5 at 15-16; ECF No. 98-7 at 16, 18. HDL account executives "facilitate[d]" Innovel's policy that contract carrier drivers wear uniforms—"navy blue

3

shirt, navy blue pants, black shoes." ECF No. 98-5 at 6, 9; *see* ECF No. 98-7 at 18-19; ECF No. 98-8 at 15. HDL monitored and provided feedback to drivers regarding their appearance. ECF No. 98-4 at 1867. The account executives also performed "ride alongs" or "ride-behinds" to evaluate the contract carrier drivers' performance. ECF No. 98-2 at 16; ECF No. 98-4 at 18; ECF No. 98-5 at 23; ECF No. 98-7 at 20; ECF No. 98-8 at 15.

The account executives determined which contract carrier drivers would work each day, ECF No. 98-5 at 24; ECF No. 98-8 at 15, and prepared the routes for the drivers. ECF No. 98-2 at 11. Innovel generated a manifest for each driver every day and HDL distributed these manifests to the drivers, ECF No. 98-5 at 14; ECF No. 98-7 at 15-16; ECF No. 98-8 at 11, who were required to make deliveries within a certain time window. ECF No. 98-5 at 14-15; ECF No. 98-7 at 22.

Drivers were required to download an app—the Descartes System—which allows customers to sign off on the receipt of their delivery. ECF No. 98-5 at 15; ECF No. 98-7 at 19. HDL account executives monitored the status of drivers' deliveries using the app. ECF No. 98-5 at 15; ECF No. 98-7 at 19, 22; ECF No. 98-8 at 14. Performance issues were monitored by Innovel but communicated to drivers by HDL. ECF No. 98-7 at 19. HDL would sometimes terminate contract carrier drivers. ECF No. 98-5 at 16.

HDL uses a "Settlement Statement" to itemize deductions from its contract carrier drivers' compensation. These forms, and HDL's policy regarding compensation deductions and Settlement Statements, were uniform for all HDL contract carrier drivers across New York facilities. ECF No. 98-5 at 19; ECF No. 98-7 at 12.

Plaintiffs allege that HDL treated them as independent contractors even though they were rightfully employees under New York law. They further allege that HDL unlawfully deducted "certain expenses directly from the compensation it [paid to Plaintiffs], including when HDL determine[d], in its sole discretion, that a delivery ha[d] been made in a manner it deem[ed] to be unsatisfactory (e.g.,

4

damaged goods, damage to customer property)." ECF No. 10 ¶ 31.  HDL "would also deduct other expenses from the compensation it pa[id] such as the cost of truck rental and fuel" and "the costs of workers' compensation insurance and general liability insurance."  *Id.* ¶¶ 32-33.  Finally, Plaintiffs allege that "Defendants failed to furnish Plaintiff[s] with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances, deductions taken, and net wages paid."  *Id.* ¶ 35.

## DISCUSSION

### I. Motion for Summary Judgment

HDL moves for summary judgment on the basis that there is no genuine issue of material fact as to whether HDL's payments to Plaintiffs constitute "wages" within the meaning of the NYLL.  For the following reasons, the Court disagrees.

#### A. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure states that "the court shall grant summary judgment" if the moving party "shows that there is no genuine dispute as to any material fact and that [it] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48

(1986) (emphasis in original).  "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248.  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source).

**B.    Analysis**

"Article 6 of the [NYLL] regulates the payment of wages by employers." *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 614 (2008).  To prevail on a claim under Article 6 of the NYLL, "a plaintiff must first demonstrate that he or she is an employee entitled to its protections." *Lauria v. Heffernan*, 607 F Supp. 2d 403, 407 (E.D.N.Y. 2009) (quoting another source).  Second, a plaintiff must demonstrate "that their wages were withheld in violation of one of the substantive provisions of the Labor Law." *Contrera v. Langer*, 314 F. Supp. 3d 562, 568 (S.D.N.Y. 2018) (quoting *Michalek v. Amplify Sports & Entm't LLC*, No. 11 Civ. 508(PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012)).  Article 6 defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."  N.Y. Lab. Law § 190.

HDL seeks summary judgment on the basis[2] that payments made to Plaintiffs are not "wages" within the meaning of the NYLL.  HDL acknowledges that whether payments are "wages" turns on whether the payee is an employee and whether the payments are made for services rendered.  ECF No.

---

[2] HDL resurrects several other arguments in support of their motion.  The Court has considered them and finds them without merit.

109-1. But HDL argues that, for purposes of granting its motion, the Court need not reach whether Plaintiffs are employees because there is no dispute of material fact that the payments were not made "for services rendered." HDL is incorrect.

HDL puts the proverbial cart before the horse. It completely sidesteps the first question that must be answered in this analysis, *i.e.*, whether Plaintiffs are "employees." There is good reason for answering that question first: earnings are "wages" only if paid to "employees." In its summary judgment motion, HDL does not even attempt to address whether Plaintiffs are employees of HDL.

But there is a more fatal flaw with HDL's argument: Plaintiffs admit that they are only seeking redress for earnings paid for the services they personally rendered. The crux of HDL's argument is that the payments made to Plaintiffs and their LLCs "were not solely based on the fruits of their respective owners' labor or service, but rather, on the productivity of numerous other individuals their companies each employed." ECF No. 109-1 at 17. Therefore, it says, because HDL's payments to Plaintiffs included money not attributable to their own labor, the entirety of the payments to them are not "wages" within the meaning of the NYLL and they therefore cannot recover from HDL.

Yet HDL acknowledges that Plaintiffs did "personally perform[]" some services. *Id.* To be sure, in their opposition papers, Plaintiffs repeatedly clarify that they "are not seeking to recoup damages for work they did not perform. The Plaintiffs, and all putative class members, are only seeking to recoup unlawful deductions from compensation paid to them for work <u>they personally performed</u>." ECF No. 119 at 11 (emphasis in original).

To the extent HDL argues that the Court should award summary judgment in its favor because it would be difficult or impossible to establish what earnings are attributable to the services Plaintiffs' personally rendered, HDL is mistaken. The amount of wages goes to possible damages. That wages may be difficult to calculate does not compel summary judgment. Just the opposite here: it demonstrates that there are issues of fact precluding summary judgment. *Medinol Ltd. v. Bos. Sci.*

*Corp.*, 346 F. Supp. 2d 575, 600 (S.D.N.Y. 2004) (factual issues regarding damages precluded summary judgment); *see International, S.A. v. Boyden World Corp.*, No. 90 Civ. 4091, 1993 WL 59399, at *7 (S.D.N.Y. Mar. 4, 1993) ("[I]f plaintiffs demonstrate a genuine issue of fact as to the existence of actual damages resulting from the breach of contract, then summary judgment . . . is inappropriate even if the precise amount or extent of the damages is still somewhat uncertain.").

Because there are still genuine issues of material fact regarding whether Plaintiffs are "employees" of HDL and whether and to what extent payments to them were "wages" within the meaning of the NYLL, HDL's motion for summary judgment is denied.

## II.     Motion for Class Certification under Rule 23

The Court next turns to Plaintiffs' motion to certify the following class, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All individuals designated as "contract carriers" by HDL, who performed truck driving delivery services out of specific facilities/warehouses located in Rochester, Syosset and Buffalo, New York, and delivered goods to customers located anywhere on the East Coast on behalf of HDL, at any time from May 8, 2011, through the date of final judgment in this action.

ECF No. 98-19 at 11. For the following reasons, Plaintiff's motion to certify the above class is granted.

### A.     Law

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Indeed, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "A district judge [must] assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as

the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). The Rule 23 inquiry may overlap with the merits of the underlying claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). When this occurs, courts are to consider the merits questions only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

The district court's class certification ruling is discretionary, meaning the Court "is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions." *Myers*, 624 F.3d at 547 (internal citations omitted) (emphasis in original).

Rule 23(a) sets out four threshold requirements for certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The first requirement, numerosity, demands that joinder of all class members be impracticable, in the sense that "joinder would needlessly complicate and hinder efficient resolution of the litigation." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *11 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 2473039 (June 7, 2013) (internal quotation marks omitted). "Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement." *Id.* (internal quotation marks omitted).

The Supreme Court has observed that the concept of commonality is easy to misunderstand since:

[a]ny competently crafted class complaint literally raises common "questions." . . . What matters to class certification . . . is not the raising of common "questions"—even

9

> in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 349-50. By contrast, where liability must be established through individualized proof, courts have declined to find commonality. *See, e.g.*, *Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37-38 (2d Cir. 2015) (summary order) (plaintiffs failed to establish commonality in case brought by unpaid interns alleging that they were "employees" under FLSA and NYLL, where question of each intern's employment status involved "highly individualized inquiry").

"In the context of wage-and-hour disputes, courts have found commonality satisfied where the claim is grounded in an employer's allegedly unlawful policy or practice." *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 99 (W.D.N.Y. 2019). "This is because, as *Dukes* instructs, the 'common contention' that an employer's unlawful policy or practice has caused the class's injuries is 'of such a nature that it is capable of classwide resolution.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).

"Typicality under Rule 23(a) requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Spencer*, 2013 WL 1040052, at *17 (internal quotation marks omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (quoting another source). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* at *18 (quoting another source).

The last requirement of Rule 23(a) is adequacy of representation. "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." *Id.* at *20 (internal quotation marks omitted). "[T]he issue of appropriate class counsel is guided by Rule 23(g)," which sets forth a number of factors the court must consider. *Id.*; *see also* Fed. R. Civ. P. 23(g)(1). As to class representatives, they "cannot satisfy the adequacy requirement if they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Spencer*, 2013 WL 1040052, at *20 (internal quotation marks omitted).

In addition, Plaintiffs may only maintain a class action by demonstrating, pursuant to Rule 23(b), that: (1) bringing the claims as separate actions would create a risk of inconsistent or adverse adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply to the class in general, making injunctive or declaratory relief appropriate for the class as a whole; or (3) common questions of fact or law predominate over any individual questions and a class action is a superior method of efficiently and fairly adjudicating the matter. Fed. R. Civ. P. 23(b)(1)-(3); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 50 (E.D.N.Y. 2019) (quotation omitted) (concluding that in addition to the requirements of Rule 23(a), plaintiffs "must also establish that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, pursuant to Rule 23(b)(3)"). Here, Plaintiffs rely on Rule 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers*, 624 F.3d at 547 (quoting another source). The requirement's purpose is to

11

"ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).  The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (internal citations omitted). "[T]he predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013).

> Regarding superiority, Rule 23(b)(3) provides a list of relevant factors:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Finally, in addition to the above requirements, the class must satisfy the "implied requirement of ascertainability." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2014) (quoting another source).  The "failure to meet any one of Rule 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000).

### B. Analysis

The Court concludes that Plaintiffs meet the above requirements for class certification pursuant to Rule 23.  Much of HDL's opposition papers are directed at the merits of the underlying claims, and many of those arguments have no bearing on the above requirements for class certification.  To the

extent HDL's arguments are not directed at the relevant inquiry here for class certification, the Court declines to consider them now.  *See Amgen Inc.*, 568 U.S. at 465-66 ("Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim," [*Dukes,* 564 U.S. at 350-51 (internal quotation marks omitted)], Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41 ("[A] district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.").

### i. Numerosity

Plaintiffs argue that the putative class consists of approximately 119 people and, therefore, joinder would would be impracticable.  HDL does not dispute that the numerosity element is met here.

### ii. Commonality

HDL's uniform policy of classifying contract carrier drivers as independent contractors and making allegedly unlawful deductions from their compensation can be established by common proof. *See* ECF No. 98-19 at 31.  Central to the misclassification analysis is whether putative class members are "employees" under the NYLL.  That question can be answered by applying the following tests.

Prior to 2014, a worker who alleged misclassification as an independent contractors was an employee covered by Article 6 if he or she: "(1) worked at his/her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013). After April 10, 2014, New York's Fair Play Act, requires an employer to classify "[a]ny person 'performing commercial goods transportation services for a commercial goods transportation contractor' . . . as an employee," and not as an independent contractor. N.Y. Lab.

Law § 862-b(1); *Padovano v. FedEx Ground Package Sys., Inc.*, No. 16-CV-17-FPG, 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) (quoting N.Y. Lab. Law § 862-b).

There is an exception to this presumption if the employer demonstrates that the worker: (1) is free from control and direction over the performance of his work; (2) performs work that is outside the usual course of business or is outside all of the employer's places of business, unless the employer contracts with third parties to place employees; and (3) is in an independently established trade, occupation, profession, or business. N.Y. Lab. Law § 862-b(1)(a)-(c). If the employer can demonstrate that a worker satisfies all three conditions, it may treat him or her as an independent contractor instead of as an employee.

HDL argues extensively that Plaintiffs do not or cannot establish that they or the putative class members meet these tests. But while HDL disputes that the putative class members were misclassified, it does not seem to seriously dispute that whether they were misclassified is a question answerable in a class-wide proceeding. Indeed, the facts before the Court indicate that that contract carrier drivers were all subject to the same policies and procedures regarding their work for HDL. In other words, the answer to the question of whether contract carrier drivers were misclassified as independent contractors—and whether unlawful deductions were taken from their pay—is capable of class-wide resolution.

HDL argues that some of the putative class members performed work outside of New York, calling into question "whether, and to what extent, the NYLL applies" to that work.[3] ECF No. 103 at 17. In other words, HDL argues, because the NYLL may not cover certain work performed by certain

---

[3] HDL does not specifically argue that the issues surrounding the extraterritorial application of the NYLL destroy the commonality requirement, or whether the issues go to some other Rule 23 element. The Court concludes that HDL's argument in this respect appears to mostly attack whether putative class members' claims could be resolved on a class-wide basis. Yet the same rationale for this conclusion applies to multiple requirements of the analysis, most specifically, to the predominance requirement. The Court finds that questions about the NYLL's extraterritorial application do not bar class certification, irrespective of how HDL frames the argument.

contract carrier drivers outside of New York, whether the contract carrier drivers were misclassified as independent contractors cannot be answered by common proof; the extent to which the NYLL applied to a contract carrier driver, and the hours he or she worked, would need to be answered on an individual basis.

The Court is not persuaded that questions regarding NYLL's extraterritorial application bar class certification here. To be sure "the NYLL is silent on its extraterritorial application." *Solouk v. European Copper Specialties, Inc.*, No. 14-cv-8954, 2019 WL 2181910, at *16 (S.D.N.Y. May 2, 2019) (quoting another source). "However, under New York law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it." *Rosales v. Low Bid, Inc.*, No. 17CV3183ADSSIL, 2018 WL 3468710, at *7 (E.D.N.Y. July 3, 2018), *report and recommendation adopted*, 2018 WL 3468697 (E.D.N.Y. July 18, 2018). "[C]ourts in this Circuit have held that it does not apply to work performed outside of New York State." *Id.*; *see Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486, 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016); *see also O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) ("Nothing in the [NYLL] suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers." (internal citation omitted)).

But "[n]one of these cases addresses the question here: does the NYLL embrace work done by a New York-based employee of a New York company who begins and ends his workday in New York but spends a substantial part of his workday transporting goods to out-of-state buyers?" *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-CV-6789 CBA LB, 2015 WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015). Some courts have suggested that the NYLL would not operate to bar such extraterritorial work. *See Salouk*, 2019 WL 2181910, at *17 ("Moreover, to the extent Plaintiffs' claimed travel to and from the Shop and the job site [outside of New York] was 'incident to' the labor

15

they performed at the job site [in New York], the presumption against the extraterritorial application of the NYLL would not operate to preclude their recovery for that time."); *Heng Guo Jin*, 2015 WL 5567073, at *9 (acknowledging that "a state's labor laws do not reach work done entirely and exclusively outside that state" but noting that the parties had not engaged in the appropriate analysis under *Padula v. Lilam Properties Corp.*, 84 N.Y.2d 519 (1994) to determine whether the NYLL applied to work plaintiff spent transporting goods to out-of-state buyers). *But see Drozd v. U.S.A. Concepts of New York Corp.*, No. 09-CV-5120 (RER), 2015 WL 13733713, at *11 (E.D.N.Y. Apr. 23, 2015) (concluding that plaintiffs who worked primarily in New Jersey but worked 10 days in New York "are not entitled to damages under the NYLL for hours worked in New Jersey").

The Court need not answer this merits question now. Suffice it to say that regardless of whether the NYLL applies to the putative class members' deliveries outside of New York, the question can be resolved on a class-wide basis: if all the other requirements are met, the NYLL will either apply to all of the deliveries the contract carrier drivers made or only those deliveries they made in New York. To be sure, if the NYLL only applies to deliveries made in New York, some individualized assessment will be required. But such an assessment is no different than damages calculation and does not preclude class certification. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[B]ecause commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement."). What is important for purposes of class certification is that the legal issue can be resolved across the entire class. Here, the issue of extraterritorial application of the NYLL can be resolved across the entire class.

### iii. Typicality

The claims of Plaintiffs will be typical—if not identical—to those of putative class members: misclassification as an independent contractor and unlawful deductions. Therefore, the typicality element is satisfied. HDL does not argue otherwise.

### iv. Adequacy of Representation

HDL does not seriously dispute that this element, too, is met. First, class counsel are experienced in labor and employment class action litigation and they have proven—in this case and in others before the courts—to be able to conduct the litigation before the Court. *See* ECF No. 98-19 at 33-34. Second, Plaintiffs and putative class members do not seem to have interest antagonistic to one another. They all suffered from the same harm and seek the same relief. None appears to have an interest that conflicts with those of the putative class members.

### v. Predominance and Superiority

Because the Court concluded that Plaintiffs have demonstrated by a preponderance of the evidence that the proposed class meets the requirements set out in Rule 23(a), the Court must determine whether the action satisfies one of the criteria of Rule 23(b). *See Dukes*, 564 U.S. at 345. Again, HDL does not appear to contest either requirement.

For wage-and-hour cases, courts assess predominance in a manner similar to commonality: the question is whether individualized inquiries regarding employees' work and pay will predominate over class-wide issues. For example, courts have found the element of predominance satisfied where the employer is alleged to have "a uniform policy or practice of denying overtime compensation" in violation of applicable law. *Spencer*, 2013 WL 1040052, at *25. This is so even if there are "factual variations in [employees'] hours worked or hourly rates," as those matters go "to the measure of damages." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 334 (S.D.N.Y. 2009); *see also Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).

But where the employer's liability hinges on issues that demand substantial individualized analysis of each employee's duties, hours, or compensation, predominance is not satisfied. *See, e.g.*, *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2015) (as to putative class action brought by unpaid interns, predominance not satisfied because "the question of an intern's employment status is a highly context-specific inquiry"); *Ellersick v. Monro Muffler Brake, Inc.*, No. 10-cv-6525, 2017 WL 1196474, at *6-7 (W.D.N.Y. Mar. 31, 2017) (where key issue in case was whether exemption to overtime requirement applied, individualized issues relating to the exemption—including each employee's duties, pay, and commissions—would predominate over class-wide questions).

Like the commonality requirement, Plaintiffs have satisfied the predominance and superiority requirements under Rule 23(b). HDL's liability hinges on whether it misclassified the putative class members as independent contractors. That question can be answered by using the two tests described above to, essentially, determine whether HDL had control over the putative class members such that they should be considered employees rather than independent contractors.

As explained above, answering this question does not require an individualized analysis of the relationship between HDL and each individual contract carrier driver. Rather, the evidence before the Court strongly suggests that, regardless of whether contract carrier drivers are employees, they were all treated similarly by HDL, and HDL made certain standardized deductions from all drivers' pay. *See In re FedEx Ground Package Sys.*, 237 F.R.D. 424, 453 (N.D. Ind. 2008). As explained above, questions regarding the extraterritorial application of the NYLL do not interfere with the predominance of class-wide issues. Indeed, that issue can be addressed on a class-wide basis. Therefore, common questions predominate.

With respect to superiority, Court concludes that a class action is the "superior to other available methods for failing and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

18

"Where, as here, all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior." *Spencer*, 2013 WL 1040052, at *27 (collecting cases). A class action is also the superior method because of the relatively small individual damages suffered in relation to the expense of individual litigation, the efficiency of resolving the NYLL deduction claims together, the dozens of putative class members, and the absence of any significant difficulties in managing the class action. *See id.*

### vi.  Ascertainability

The Second Circuit recognizes an "implied requirement of ascertainability" under Rule 23. *Brecher*, 806 F.3d at 24. The "touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quoting another source). "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25 (quoting another source).

HDL does not seem to dispute that the proposed class is ascertainable. To be sure, Plaintiffs have already identified the roughly 119 individuals who meet the class criteria. There is no indication that a mini-hearing would be required on the merits of each of these putative class members' cases.

## CONCLUSION

For the foregoing reasons, HDL's motion for summary judgment (ECF No. 109) is DENIED and Plaintiffs' motion to certify a class (ECF No. 98) is GRANTED.

The following class is certified pursuant to Rule 23 for the NYLL § 193 and NYLL § 195 causes of action in the First Amended Complaint (ECF No. 10):

> All individuals designated as "contract carriers" by HDL, who performed truck driving delivery services out of specific facilities/warehouses located in Rochester, Syosset and Buffalo, New York, and delivered goods to customers located anywhere on the East

Coast on behalf of HDL, at any time from May 8, 2011, through the date of final judgment in this action.

Plaintiffs Mike Kloppel and Adam Wilson are appointed as class representatives of the class.

Plaintiffs' counsel Samuel Alba of Friedman & Razenhofer, P.C., Harold Lichten of Licthen & Liss-Riordan, PC, and Ravi Sattiraju of Sattiraju & Tharney, LLP, are hereby appointed class counsel pursuant to Rule 23(g).

The parties shall confer and submit a jointly acceptable notice that is consistent with this Decision and Order and may be sent to subclass members. The parties shall submit a joint motion to the Court with the proposed notice by August 5, 2020. If the parties cannot come to an agreement, they shall submit competing proposed notices.

IT IS SO ORDERED.

Dated: June 3, 2020
   Rochester, New York

                _____
                HON. FRANK P. GERACI, JR.
                Chief Judge
                United States District Court