# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

MIKE KLOPPEL and ADAM WILSON, on behalf
of themselves and all other similarly situated
persons,

                Plaintiffs,

     v.

HOMEDELIVERYLINK, INC.,

                Defendant.

No. 6:17-cv-06296-FPG-JWF

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs and the class members they represent performed delivery services exclusively for HomeDeliveryLink ("HDL") on a full-time basis out of Sears facilities in Buffalo, Rochester, and Syosset, New York. This Court has already certified this case as a class action.[1] ECF No. 121. Now plaintiffs move for partial summary judgement on the question of whether under the New York Fair Play Act they are employees of HDL. Plaintiffs assert that because they are employees as defined by the New York State Commercial Goods Transportation Industry Fair Play Act ("Fair Play Act"), N.Y.L.L. §§ 862, *et seq.*, and New York common law, the deductions taken from their pay violated section 193 of the New York Labor Law. First Am. Compl. at Count 1.

---

[1]      Since then, Plaintiffs have provided HDL with a revised their definition of the class to include: "All individuals who contracted with HDL to perform delivery services out of specific facilities/warehouses located in Rochester, Syosset and Buffalo, New York to customers located anywhere on the East Coast on behalf of HDL, who drove their vehicle for HDL for at least four consecutive weeks at any time from May 8, 2011, through the date of final judgment in this action, and including only periods where the individual personally performed deliveries on a full-time basis."

As this Court has held, "[w]hether a person is deemed an individual contractor or an employee under New York Labor Law . . . does not depend on how the parties have labeled themselves." Kloppel v. HomeDeliveryLink, Inc., 2020 WL 38895, at *3 (W.D.N.Y. Jan. 3, 2020) (quoting Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *5 (W.D.N.Y. Dec. 5, 2016) ("it is not significant how the parties defined the employment relationship or how the worker identified herself on tax forms"). Rather, it is evident from the record submitted in support of this motion, as well as with Plaintiffs' motion for class certification, that Plaintiffs' class must be classified as employees under the New York Labor Law. Thus, this Court should now enter partial summary judgment in favor of the Plaintiffs on their status as employees under the Fair Play Act), N.Y.LL. § 862-b and under the common law right to control test.[2]

Simply stated, Plaintiffs in this case, during the time that they delivered Sears goods for HDL, performed deliveries pursuant to extensive and detailed instructions HDL required them to follow, performed deliveries exclusively for HDL's customers on a full-time basis, wore uniforms required by HDL, could only perform deliveries using personnel approved by HDL, and were not permitted to perform any deliveries for other companies while working for HDL, HDL cannot meet its burden of satisfying all of the prongs which the Fair Play Act requires delivery companies to meet to overcome the presumption that their delivery drivers are, indeed, employees.   Accordingly, based on the undisputed record, and many other decisions granting

---

[2]    Private causes of action for violations of the New York Labor Law are subject to a six (6) year statute of limitations. N.Y. Labor Law § 198(3). Plaintiffs' initial Class Action Complaint and Jury Trial Demand pleading was filed with the Court on May 8, 2017. (ECF No. 1). From May 8, 2011 through April 10, 2014, New York's "common law" test shall apply. For the period from April 10, 2014, through to and continuing to the present, the New York Fair Play Act shall apply.

summary judgment to plaintiffs under similar facts, Plaintiffs request that this Court hold as a matter of law that Plaintiffs were employees under the New York Labor Law, reserving the issue of damages for trial.

Under the Fair Play Act, a delivery driver is presumed to be an employee unless his pay is reported on a Federal Tax Form 1099 and the putative employer can satisfy either the ABC Test or the Separate Business Entity Test.  N.Y.L.L. § 862-b.  Pursuant to the ABC Test, an employer must show:

> (a) the individual is free from control and direction in performing the job, both under his or her contract and in fact;
> (b) the service must be performed outside the usual course of business for which the service is performed; and
> (c) the individual is customarily engaged in an independently established trade, occupation, profession, or business that is similar to the service at issue.

N.Y.L.L. § 862-b.

Numerous courts have held that delivery drivers are employees under the ABC test even though they were labeled by their employers as independent contractors, formed their own business entities, and paid their own expenses.[3]  This includes DaSilva v. Border Transfer of MA where the United States District Court for the District of Massachusetts held that the defendant,

---

[3]     See, e.g., Hargrove v. Sleepy's, No. 3:10-cv-01138-PGS-LHG (D.N.J. Oct. 25, 2016) (holding that delivery drivers were employees under all three prongs of the ABC test) (Transcript of Opinion attached as Ex. A); Same Day Exp., Inc. v. New Jersey Dep't of Labor & Workforce Dev., 2007 WL 1627310, at *4 (N.J. Super. Ct. App. Div. June 7, 2007) (affirming finding that delivery drivers were employees under New Jersey unemployment law's ABC even though "petitioner demonstrated that it regarded and treated the drivers as independent contractors," that the drivers owned their own cars, and that they all paid for their own gas and insurance); Costello v. BeavEx Inc., 303 F.R.D. 295, 311 (N.D. Ill. 2014) (plaintiff delivery drivers were employees as a matter of law under Illinois "ABC" test); W. Ports Transp., Inc. v. Employment Sec. Dep't of State of Wash., 110 Wash. App. 440, 453, 41 P.3d 510, 517 (2002) (holing that truck driver was an employee under Washington unemployment law's ABC test even though he contracted with company through a business entity, owned his own truck, paid for his own truck repairs, fuel and insurance, chose his own routes and could have hired a substitute driver).

which was a delivery company that entered into a contract for the delivery of Sears merchandise that was nearly identical to the one between HDL and Sears, employed its delivery drivers under Prongs A the Massachusetts ABC test (Prong B of the Massachusetts ABC test was held to be preempted when applied to trucking companies).  DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, *12-13 (D. Mass. 2019) (holding that defendant retained right to control pursuant to contracts requiring drivers to wear a uniform, perform deliveries in a certain kind of trucks, by requiring drivers to obtain certain types of insurance, and where the company had the right to approve helpers).  Moreover, Plaintiffs would be considered employees under the narrower right to control test applicable prior in some other states.[4]

---

[4]      See also Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66, 81 (Kan. 2014) (FedEx Ground drivers were employees under Kansas right to control test); Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033 (9th Cir. 2014) (delivery drivers were employees of FedEx Ground under Oregon's right-to-control test); Ruiz v. Affinity Logistics Corp., 754 F.3d 1093 (9th Cir. 2014)(reversing district court and finding delivery drivers were employees under California law); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014)(same); Narayan v. EGL, Inc., 616 F.3d 895 (9th Cir. 2010)(reversing district court's order granting carrier's motion that drivers were independent contractors and remanding for determination);  Flores v. Velocity Express, LLC, 250 F. Supp. 3d 468, 481 (N.D. Cal. 2017) (holding that defendant retained right to control work performed by delivery drivers under California law); Bowerman v. Field Asset Services, Inc., 242 F. Supp. 3d 910, 941 (N.D. Cal. 2017) (finding that delivery drivers were employees under California's right-to-control test); Collinge v. IntelliQuick Delivery, Inc., 2015 WL 1299369 (D. Ariz. Mar. 23, 2015) (holding that defendant retained right to control work performed by delivery drivers); Villalpando v. Exel Direct Inc., 2015 WL 5179486, at *51 (N.D. Cal. Sept. 3, 2015) (finding delivery drivers were employees as a matter of law under right-to-control test); Taylor v. Shippers Transp. Express, Inc., 2014 WL 7499046  (C.D. Cal. Sep. 30, 2014) (finding delivery drivers were employees as a matter of law); Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1 (2007) (same);; Driscoll v. Worcester Telegram and Gazette, 72 Mass. App. Ct. 709, 714-18 (2008) (affirming employee status under control prong where newspaper delivery drivers could be discharged based on customer complaints and drivers could not set the rates paid by the customers); Stover Delivery Sys., Inc. v. Div. of Employment Sec., 11 S.W.3d 685, 698 (Mo. Ct. App. 1999) (holding that courier drivers were employees under the right to control test); Merick Trucking, Inc. v. Missouri Dept. of Lab. and Indus. Rel., Div. of Empl. Sec., 933 S.W.2d 938, 942 (Mo. App. W. Dist. 1996) (truck drivers were employees under right-to-control test); Frank C. Klein & Co., Inc. v. Colorado Compen. Ins. Auth., 859 P.2d 323, 329 (Colo. App. 1993) (on appeal,

The Fair Play Act allows an employer who cannot satisfy the ABC to avoid liability if it can satisfy all 11 factors of a "separate business entity test." N.Y.L.L. § 862-b(2)(a-k). As with the ABC test, HDL cannot satisfy this test because it fails on many of the 11 factors. For example, HDL must show that Plaintiffs worked free from direction or control, which is plainly not the case here given HDL close control and supervision of deliveries. Moreover, HDL cannot show that Plaintiffs were able to perform deliveries for outside businesses whenever they choose or made their services available to the general public. HDL made outside work impossible as it required Plaintiffs to work for HDL full-time, prohibited Plaintiffs from co-loading other merchandise onto their trucks, and where Plaintiffs simply did not advertise their services to the general public.

This Court, therefore, should now grant summary judgment on employment status in favor of Plaintiffs.

## II.    FACTUAL BACKGROUND

Plaintiffs have fully set forth the relevant undisputed facts in their accompanying Statement of Material Facts. To briefly summarize, however, Sears has operated facilities in Buffalo, Rochester, and Syosset, New York from which it delivers Sears appliances and other items to customers in New York. SOF, ¶ 5-6. Sears contracts with HDL, a "last mile" delivery company, to perform deliveries out of Sears' New York facilities. SOF, ¶ 1-3. In turn, HDL hires delivery drivers that it classifies as independent contractors to perform the deliveries. SOL, ¶ 16-26. To manage the deliveries before by the contractors, HDL employs Account Executives, who closely monitor the contractors, provide them with their daily delivery routes, and ensure that they are following all of the rules and procedures HDL agrees to in its contract with Sears

---

finding that truck drivers were employees under right-to-control test); Rugh v. Keystone-Lawrence Transfer & Storage Co., 179 A.2d 242, 248 (Pa. Super. 1962) (same).

for the performance of deliveries.  SOF, ¶ 10-15.  Indeed, HDL has agreed to "provide and

direct, supervise and otherwise control all drivers and helpers" who perform deliveries of Sears

merchandise.  SOF, ¶ 83.

HDL requires all of the contractors to sign identical Independent Contractor Agreements

("ICAs") that require the contractors to "conform to the procedures, practices, and requirements

of" Sears.  SOF, ¶ 26.  Pursuant to those requirements, among other things, the contractors must

report to the Sears facility by a designated time each morning, attend daily stand-up meetings,

perform deliveries assigned to them on a daily delivery manifest, call customers before making

deliveries, tell customers that they are from Sears, wear Sears uniforms, and perform deliveries

and product installations pursuant to Sears' detailed instructions.  SOF, ¶¶ 32-36, 39, 49, 60-61,

70, 91.

Moreover, HDL requires that all secondary drivers and helpers utilized by a contractor be

approved by HDL.  SOF, ¶ 83-86.  Not only may HDL prohibit the use of a secondary or helper

that fails a background check, it may prohibit them from performing Sears deliveries even if they

pass the background check.  SOF, ¶ 88.

In addition, HDL requires contractors to obtain insurance, including general liability,

umbrella, auto liability, cargo insurance, and worker's compensation at rates determined by HDL

and to list HDL and Sears as "additional insured" on the contractor's insurance policies.  SOF, ¶

62-67.

Contractors must perform the deliveries assigned to them as listed on the manifest,

including performing the deliveries in the order they are assigned within time windows

determined by HDL.  SOL, ¶ 49-53.  Contractors must log the start and end of each delivery.

SOF, ¶ 55.  HDL keeps track of each drivers' progress throughout the day and calls the driver if

they are running late.  SOF, ¶ 56-58.  Moreover, HDL maintains customer ratings for each driver and disciplines drivers whose scores fall below a designated level.  SOF, ¶ 41-42.

Finally, contractors were not permitted to have any other store's merchandise in their trucks while making deliveries of Sears merchandise.  SOF, ¶ 72-73.  Indeed, Sears prohibits HDL from permitted any contractor to "co-load" his truck with another store's merchandise while making deliveries.  Id.  Thus, since the class members work for HDL full-time, they cannot perform deliveries for anyone else and, for that reason, class members rely entirely on HDL for their incomes.  SOF, ¶ 74-78.

HDL further requires each of the contractors to form a corporate entity and to contract with HDL through that entity.  SOF, ¶ 23.  If a contractor comes to HDL without a corporate entity, HDL Account Executives will form the entity on behalf of the contractor.  SOF, ¶ 24-25.  Furthermore, HDL makes several recurring types of deductions from the pay of the contractors, including deductions for background checks, uniforms, performance deposits, unfinished deliveries, and damage claims related to damage to the merchandise being delivered and damage to the customers' property.  SOF, ¶ 92-93.

## III.    ARGUMENT

### A.    Standard of Review

Summary judgement is appropriate pursuant to Fed. R. Civ. P. 56(c) when, "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Factual disputes that are irrelevant or unnecessary will not be counted." Id.  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

 **B.** **Plaintiffs Are Entitled to Summary Judgment on the Question of Their Employment Status Under the Fair Play Act.**

 From April 10, 2014 to the present, the Plaintiffs and the class members' employment status is determined under the New York Fair Play Act, N.Y. Labor Law § 862-b (the "Fair Play Act"). Padovano v. FedEx Ground Package System, Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) ("The Fair Play Act … became effective in New York on April 10, 2014"). The Fair Play Act "creates a presumption that any person 'performing commercial goods transportation services for a commercial goods transportation contractor' is an employee of that contractor, unless one of two exceptions applies." Id. (quoting N.Y. Labor Law § 862-b).

 There is an exception to this presumption if the employer demonstrates that the worker: 1) is free from control and direction over the performance of his work; 2) performs work that is outside the usual course of business or is outside all of the employer's places of business, unless the employer contracts with third parties to place employees; and 3) is in an independently established trade, occupation, profession, or business. N.Y. Lab. Law § 862-b(1)(a-c). This is the so-called ABC test.  As this Court previously held in granting class certification, the ABC test is conjunctive, thus, an employer must satisfy "all three conditions" to be able to classify a worker "as an independent contractor instead of as an employee." Kloppel v. Sears Holdings Corp., No. 2018 WL 1089682, at *2 (W.D.N.Y. Feb. 28, 2018), report and recommendation adopted, No. 17-CV-6296-FPG, 2019 WL 1226017 (W.D.N.Y. Mar. 15, 2019).

Due to the prevalence of delivery companies that misclassify delivery drivers, there are now an abundance of court decisions holding that so-called contractors such as Plaintiffs, who personally perform deliveries on a full-time basis, are actually employees under Prongs A, B, and C.  See, e.g., DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, *1 (holding that contractors who delivered Sears merchandise through a delivery company were employees of the delivery company under Massachusetts A and C test); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) (same); Hargrove v. Sleepy's LLC, 2016 WL 8258865, at *1 (D.N.J. Oct. 26, 2016) (holding that delivery drivers were employees under all three prongs of the ABC test); Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act, 2012 WL 5205557 (Conn. Super. Ct. Oct. 3, 2012) (truck driver did not have independently established businesses under Connecticut "ABC" test); W. Ports Transp., Inc. v. Employment Sec. Dep't of State of Wash., 110 Wash. App. 440, 453, 41 P.3d 510, 517 (2002) (affirming finding that delivery driver was an employee under Washington unemployment law's ABC test).[5]  As demonstrated below, HDL cannot satisfy any of the prongs of the ABC test, much less satisfy all three.

---

[5]      There is an abundance of cases from other jurisdictions that further demonstrate that delivery drivers like Plaintiffs, are "employees" for purposes of various wage laws. See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 195 (S.D.N.Y. 2003) (holding that delivery workers were employees of Duane Reade pharmacy under the FLSA); Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66 (Kan. 2014) (FedEx drivers held to be employees under Kansas law); Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033 (9th Cir. 2014) (same under Oregon law); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014) (same under California law); In re FedEx Ground Package Sys., Inc., Employ. Prac. Litig., 758 F. Supp. 2d 638 (N.D. Ind. 2010) (FedEx's New Hampshire drivers were employees based on their lack of "entrepreneurial opportunities", and Kentucky drivers were employees based on FedEx's control over its drivers and their routes).

1.       **HDL Cannot Show That Plaintiffs Worked Outside Its Usual Course of Business.**

Prong B of the Fair Play Act requires the employer to show that the services provided were "performed outside the usual course of business for which the service is performed." N.Y.LL. § 862-b(1)(b).  HDL cannot satisfy this prong as it is, simply, a "last mile" delivery company that has contracted with Sears to "perform home delivery" of Sears merchandise.  SOF, ¶ 1-3.

When examining whether an activity is within a company's "usual course of business," courts look to whether a worker performs services that are necessary to the business of the employer or services that are merely incidental.  See Carpetland U.S.A. Inc., v. The Ill. Dep't of Emp't Sec., 201 Ill.2d 351, 386 (2002) (citing 56 Ill. Adm. Code § 2732.200(f)(1).  A useful "test" to determine whether a group of workers are properly "employees" performing work within a company's usual course is business is to imagine whether the company's business would continue to function if, on any given day, all of the workers in question disappeared.  See Rainbow Development LLC, 2005 WL 3543770 at *3 (Mass. Super. Nov. 17, 2005) (finding that "[t]he workers are engaged in the exact business [the defendant] is engaged in," and "[w]ithout the services of the workers, [the defendant] would cease to operate.").

There can be no doubt that the performance of deliveries for Sears is an integral part of HDL's business.  Indeed, Sears refers to HDL in its contract as the "Delivery Company" and requires HDL to "provide and direct, supervise and otherwise control all driver and helpers" that delivery Sears products.  SOF, ¶ 84.  In addition, HDL employs full-time account managers who work out of offices at Sears' warehouses whose primary job is the hiring and supervision of delivery drivers.  SOF, ¶ 10-12.  In every similar case, the court have held that "last mile" delivery companies such as HDL perform deliveries in their "usual course of business."  See

Gray v. FedEx Ground Package Sys., Inc., 799 F.3d 995, 1002 (8th Cir. 2015) ("FedEx's

business is delivering packages, and there would be no business without operators like plaintiffs.

This factor undisputedly favors employee status."); Craig, 335 P.3d at 86 ("FedEx's business is

to take a package from one person or entity and deliver it to another person or entity; it does not

manufacture or sell any product or perform any other service. . . . In short, the plaintiff drivers

are integrated into FedEx's business to the highest degree possible, and this factor weighs

heavily in favor of an employer/employee relationship.")..  In a similar case interpreting the

nearly identical Prong B applicable under Massachusetts law, the court held that another delivery

company(3PD) performed deliveries within its usual course of business."  Martins v. 3PD, Inc.,

2013 WL 1320454, at *14 (D. Mass. Mar. 28, 2013).  The Martins court rejected 3PD's

argument that the deliveries were not in its usual course of business because 3PD was merely a

"freight forwarder" managing the work of licensed motor carriers.  Id. at *15.  Instead, the court

held that "3PD cannot persuasively argue that it did not provide delivery services because those

services were provided by third parties when the question at issue is whether those third parties

were employees of 3PD."  Id.  Moreover, a delivery logistics company cannot evade Prong B

merely by "separate[ing] ... executive and managerial functions" which is insufficient to "take

the service provided by workers outside the course of a business."  Id. (citation and quotation

marks omitted).  "The fact remains that "without the services of the workers, [Defendant] would

cease to operate."  Id. (quoting Rainbow Development, 2005 WL 3543770, at *3.   Similarly,

New York courts have applied Prong B of the Fair Play Act in an unemployment benefits case to

hold that a company that provided delivery drivers to motor carrier performed deliveries within

its usual course of business, holding that "[t]he fact that FLS is not a motor carrier itself is of no

moment, as it is the nature of the services provided—rather than the lack of its own trucking

fleet—that is determinative." Matter of Doster, 187 A.D.3d 1255, 1258, 132 N.Y.S.3d 176

(2020), leave to appeal dismissed, 37 N.Y.3d 936, 170 N.E.3d 452 (2021).

The same can be said here, since without Plaintiffs and the class members, HDL would

not be able to fulfill its central obligation to Sears – to delivery Sears merchandise – and would

simply cease to operate.   See Martins, 2013 WL 1320454, at *14 ; Sec'y of Labor v. Lauritzen,

835 F.2d 1529, 1537-38 (7th Cir. 1987) ("It does not take much of a record to demonstrate that

picking the pickles is a necessary and integral part of the pickle business….").  The deliveries

performed by HDL contractors, therefore, were performed within HDL's "usual course of

business."

> ### 2.    Under Prong C, HDL Cannot Show that Plaintiffs Customarily Engaged in an Independently Established Business.

To meet its burden on Prong C, HDL must show that Plaintiffs and the class members

"customarily engaged in an independently established trade, occupation, profession, or business

that is similar to the service at issue."  N.Y.L.L. § 862-b(1)(c).  When applying an identical

Prong C under New Jersey law, the courts have required defendants to demonstrate that the

delivery drivers were conducting business with the public and were capable of making deliveries

for other companies while they worked for the defendant.  Philadelphia Newspapers, Inc. v. Bd.

of Review, 397 N.J. Super. 309, 323, 937 A.2d 318, 327 (App. Div. 2007) (quoting Gilchrist, 48

N.J.Super. at 158). ("[T]he employee must be engaged in such independently established activity

at the time of rendering the service involved.") (emphasis added).  Moreover, courts have refused

to find the existence of an independent business where, despite having the freedom to make

deliveries for other companies, the drivers worked solely for the putative employer.  N. Jersey

Media Grp., Inc. v. Bd. of Review, 2014 WL 3537947, at *4 (N.J. Super. Ct. App. Div. July 18,

2014) (newspaper delivery worker worked solely for media company during relevant time

period).  In other words, delivery drivers cannot merely be able to work independently in theory, but rather, at the time they worked for the defendant, they must "be actively supplying the same kind of services to third persons in order to be considered independent contractors."[6]  Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act, 2012 WL 5205557, at *6 (Conn. Super. Ct. Oct. 3, 2012) (emphasis added) (interpreting Prong C under Connecticut law).  See also Veterans Messenger Serv., Inc. v. Jordan, 393 Ill. App. 3d 715, 722 (2009) (delivery company failed to meet Prong Three because it presented no evidence that its "couriers could operate their delivery services without the solicitation of customers by [the company] or another similarly situated 'delivery brokerage service.'").  Moreover, an independent business "must enjoy a 'degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.'"  AFM Messenger Serv., Inc. v. Dep't of Emp. Sec., 763 N.E.2d 272, 285 (Ill. 2001) (reviewing Prong C of Illinois ABC test).

HDL plainly cannot satisfy Prong C.  During the time that Plaintiffs and the class members contracted with HDL, they worked exclusively for HDL and had no outside income. SOF, ¶ 72-83.  Plaintiffs and the class members worked for HDL full time, which made it impossible to work independently of HDL.  SOF, ¶ 77.  Perhaps most importantly, HDL prohibited Plaintiffs and the class members from co-loading any outside goods while they made deliveries for HDL.  SOF, ¶ 72-73.  Furthermore, HDL required Plaintiffs to wear uniforms indicating that they worked for Sears and prohibited Plaintiffs from wearing uniforms displaying

---

[6]      Courts in Massachusetts have applied Prong C in the same manner in finding that contractors who had no other "clientele" at the time they worked for the defendant, were not operating independent businesses.  Coverall N. Am., Inc. v. Com'r of Div. of Unemployment Assistance, 447 Mass. 852, 858 (2006) (flatly rejecting an employer's argument that Prong 3 merely presents a "capability" test that considers "what an individual is capable of doing as opposed to what an individual actually did").

their own logos.  SOF, ¶ 32-35.  Moreover, pursuant to the ICA, Plaintiffs were not permitted to solicit any business or compete with HDL for up to a year after their contracts were terminated. SOF, ¶¶ 76.  HDL even went so far as to prohibit its contractors from performing deliveries for outside businesses on the contractors' off days.  SOF, ¶ 74.  HDL "cannot have it both ways: that is, [it] cannot claim that [delivery drivers] are independent contractors, who would traditionally be free to use their skills wherever they please, and simultaneously prevent them from working for other [delivery companies]."  Harris v. Skokie Maid & Cleaning Serv., Ltd., 2013 WL 3506149, at *9 (N.D. Ill. July 11, 2013).

Moreover, other courts have held that merely because drivers form corporate entities does not support a finding that they operated independent businesses under Prong C.  See, e.g., Echavarria v. Williams Sonoma, Inc., 2016 WL 1047225, at *6 (D.N.J. Mar. 16, 2016) (company may be an employer under the NJWHL or NJWPL "even absent direct remuneration"); Carrow v. Fedex Ground Package Sys., Inc., 2017 WL 1217119, at *6 (D.N.J. Mar. 30, 2017) (FedEx drivers have New Jersey wage claims even where they contracted through their own corporate entities).  Another court held, even though he was incorporated, a driver did not operate an independent business where he "was incorporated only because this was a necessary pre-condition to working for the company" and where the corporate entity "was economically dependent on the Company for all its revenues, and, for practical purposes, was not 'in business' as defendants suggest."  Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 325–26 (S.D.N.Y. 2001).

Here, HDL required contractors to form a corporate entity prior to contracting with HDL and if the contractor did not have an entity, HDL personnel helped them form one.  SOF, ¶¶ 23-

25.  In fact, many of the class members did not have a corporate entity prior to working for HDL.

SOF, ¶ 25.  HDL, therefore, cannot satisfy Prong C.

### 3.    HDL Exercised Overwhelming Control Over Plaintiffs' Work.

HDL cannot satisfy Prong A.  Pursuant to Prong A, HDL must show that Plaintiffs were "free from control and direction in performing the job, both under his or her contract and in fact."  N.Y.L.L. § 862-b(1)(a).  Since Prong A is conjunctive, HDL must show both that the drivers worked from control as a matter of contract and as a matter of fact.

There is overwhelming evidence that HDL exercises substantial control pursuant to the both the terms of its standard ICA and in fact.  The contractors are required to perform deliveries in the manner required by Sears and HDL.  SOF, ¶ 26.  The ICA further requires contractors to display Sears logos on their trucks if asked.  SOL, ¶ 80.  Contractors are also required to obtain insurance at levels dictated by HDL and Sears and list HDL and Sears as "additional insured" on their policies.  SOF, ¶ 62.  Moreover, the ICA prohibits contractors from soliciting any business from Sears that would compete with HDL or attempt to take away or hire any of HDL's other contractors to perform deliveries for any other companies.  SOF, ¶ 76.

Moreover, HDL requires all contractors to form a corporate entity to work for HDL.

SOF, ¶ 23.  HDL assigns routes directly to each driver and the drivers can neither refuse the route nor change it based on their own preferences.  SOF, ¶ 50-51.  HDL requires contractors to perform deliveries in the order they are assigned and within time windows assigned by HDL.

SOL, ¶ 52.  Indeed, HDL's contract with Sears requires HDL to ensure that contractors meet Sears' "strict demands for timely delivery" and that the driver "must run all delivery routes exactly as specified on the manifest."  SOF, ¶ 53.  To ensure this, HDL keeps track of each drivers' progress throughout the day and also tracks each drivers' performance through its

customer ratings.  SOF, ¶ 58.  In addition, HDL requires the contractors to attend morning stand-up meetings to discuss problems with deliveries on a near-daily basis.  SOF, ¶ 39.

HDL further provides the contractors with detailed delivery and installation instructions. SOF, ¶ 70.  This includes instructions for the delivery and installation of refrigerators, gas ranges, electric ranges, washing machines, gas dryers, electric dryers, dishwashers, TVs, and furniture.  Id.

In addition, HDL must approve any helper or secondary driver used by a contractor and had, in fact prohibited contractors from using certain helpers and secondary drivers even though they passed a background check.  SOF, ¶. 84-89.  Based on similar facts, including two cases involving companies like HDL who provided delivery drivers for Sears, nearly every other court has found that delivery drivers were employees under the right to control test.[7]  See, e.g., DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, *12-13 (D. Mass. 2019) (holding that defendant retained right to control work of Sears delivery drivers pursuant to contracts

---

[7]    See also Hargrove v. Sleepy's, No. 10-1038 (Oct. 26, 2016 D.N.J.) (holding Sleepy's retained right to control work of its delivery drivers under New Jersey ABC test) (attached as Ex. A); Ruiz v. Affinity Logistics Corp., 754 F.3d 1093 (9th Cir. 2014)(reversing district court and finding delivery drivers were employees under California law); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014)(same); Narayan v. EGL, Inc., 616 F.3d 895 (9th Cir. 2010)(reversing district court's order granting carrier's motion that drivers were independent contractors and remanding for determination); Flores v. Velocity Express, LLC, 250 F. Supp. 3d 468, 481 (N.D. Cal. 2017) (holding that defendant retained right to control work performed by delivery drivers under California law); Bowerman v. Field Asset Services, Inc., 242 F. Supp. 3d 910, 941 (N.D. Cal. 2017) (finding that delivery drivers were employees under California's right-to-control test); Collinge v. IntelliQuick Delivery, Inc., 2015 WL 1299369 (D. Ariz. Mar. 23, 2015) (holding that defendant retained right to control work performed by delivery drivers); Villalpando v. Exel Direct Inc., 2015 WL 5179486, at *51 (N.D. Cal. Sept. 3, 2015) (finding delivery drivers were employees as a matter of law under right-to-control test); Taylor v. Shippers Transp. Express, Inc., 2014 WL 7499046  (C.D. Cal. Sep. 30, 2014) (finding delivery drivers were employees as a matter of law); Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1 (2007) (same).

requiring drivers to wear a uniform, perform deliveries in a certain kind of trucks, by requiring

drivers to obtain certain types of insurance, and where the company had the right to approve

helpers); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec.

30, 2013) (Sears delivery drivers "worked as individual truck drivers performing full-time

personal services exclusively for HDA. They did not manage any delivery operations beyond

their personal (individual) work for HDA. HDA also dictated that the drivers were required to

hire a helper, who had to wear the Sears and HDA uniform, and undergo drug and background

testing performed by HDA.").  As the Eighth Circuit and Kansas Supreme Court have held,

"[t]he right to determine and enforce driver and vehicle appearance and vehicle suitability

standards" demonstrates control and "favors employee status."  Craig v. FedEx Ground Package

Sys., Inc., 335 P.3d 66, 82 (Kan. 2014); Huggins v. FedEx Ground Package Sys., Inc., 592 F.3d

853, 859 (8th Cir.2010) (holding, under Missouri law, that FedEx's appearance requirements

"show the extent of FedEx's control" over drivers' work).  See also Slayman v. FedEx Ground

Package Sys., Inc., 765 F.3d 1033, 1042–43 (9th Cir. 2014) (FedEx's detailed appearance

requirements clearly constitute control over its drivers).  Under the Illinois ABC test, the United

States District Court held that a putative employer exercised control over a janitor by setting his

"work schedule, monitoring the quality of his work, and disciplining him when his work did not

meet [the employer's] expectations."  Bulaj v. Wilmette Real Estate and Management, 2010 WL

4237851, at *6 (N.D. Ill. Oct.21, 2010).  All of those facts are present here.

  In Border Transfer, the court held that the defendant exercised control over its delivery

drivers, finding that it:

> dictates what drivers must wear and what types of trucks they can use. By requiring
> certain types of insurance and giving Border Transfer the ability to bar secondary drivers
> and helpers, it gives Border Transfer control over how drivers run their motor carriers.
> Most importantly, it specifies in extensive detail how drivers are to perform their

deliveries: they must attend daily meetings, follow a preordained manifest route, call the customer to announce their arrival, install each product in a specific manner, and secure the customer's signature on the manifest.

DaSilva v. Border Transfer of MA, Inc., 377 F. Supp. 3d 74, 94 (D. Mass. 2019).  As

demonstrated above, all of those facts are present here.  Indeed, HDL's contract with Sears states

that HDL must "provide and direct, supervise and otherwise control all drivers and helpers" who

perform deliveries for Sears.  SOF, ¶ 84.

Furthermore, New York courts have found that employers exercised control of delivery

drivers where the employer assigned the drivers routes, required drivers to work an agreed

schedule, where the employer supervised pickups made by the driver, where drivers "were

provided a daily manifest bearing SDS's name that identifies the stops for their routes," where

the drivers were required to obtain signatures for proof of delivery, and where drivers were

required to wear uniforms.  In re Gill, 134 A.D.3d 1362, 1363, 22 N.Y.S.3d 621, 622 (2015) ("In

our view, there is substantial evidence in the record to support the Board's finding that SDS

exercised sufficient control over claimants' work to be deemed their employer").  See also

Matter of Doster, 187 A.D.3d 1255, 132 N.Y.S.3d 176, 179–80 (2020), leave to appeal

dismissed, 37 N.Y.3d 936, 170 N.E.3d 452 (2021) (Prong A not met where the company

"required claimant to complete an application, participate in a telephone interview and undergo a

background check prior to entering into an agreement with FLS" where "FLS also was

responsible for ensuring that claimant was in compliance with all applicable regulations and had

the authority to conduct drug testing" and where "FLS established a flat rate of pay for

claimant").  These facts were also present here.

Additionally, courts have held that a company exerts control if, as happened here, it

furnishes putative employees with a uniform operating agreement.  Bennett v. Department of

Employment Security, 175 Ill. App. 3d 793, 797 (1988) (in a regular independent contractor-employer relationship, the independent contractor furnishes the contract); Craig, 335 P.3d at 81 (right to control shown where FedEx required drivers to enter into identical working agreements without the power to negotiate terms). Indeed, that is precisely what happened here.  SOF, ¶ 26.

Furthermore, courts have routinely held that the mere fact that contractors exercised some control over the work of their helpers, does not preclude a ruling against an entity such as Border Transfer under Prong A.  Echavarria, 2016 WL 1047225, at *7.  Indeed, when applying the Washington unemployment law's ABC test, one court held that sufficient control was present under Prong A even where the driver "owned his own truck, paid for his own truck repairs, fuel and insurance, chose his own routes and could have hired another driver to operate his equipment."  W. Ports Transp., Inc., 41 P.3d at 517.

HDL will likely argue that the Court should excuse its substantial quality control and supervision because it merely arose from its obligation to Sears.  The court in Border Transfer expressly rejected this argument, holding that "[w]hy Border Transfer controls its drivers, however, is irrelevant to the inquiry under Prong A. Border Transfer of MA, Inc., 377 F. Supp. 3d at 94.  Accordingly, when faced with a similar argument in a worker misclassification case, the Eleventh Circuit responded that the right to control "inquiry requires us to examine the nature and degree of the alleged employer's control, not why the alleged employer exercised such control. Business needs cannot immunize employers from [statutory] requirements. If the nature of a business requires a company to exert control over workers to the extent that [Defendants have] allegedly done, then that company must hire employees, not independent contractors." Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1316 (11th Cir. 2013) (emphasis added).  For the

same reasons, HDL cannot evade compliance with the NYLL simply because it believes it is required to control the work performed by Plaintiffs.

### C.    HDL Cannot Satisfy the Separate Business Entity Test

Even if an employer cannot satisfy the ABC test, under the Fair Play Act, an employer may establish that a worker is an independent contractor using the "separate business entity" test. N.Y.L.L § 862-b(2)(a-k).  The Fair Play Act's "separate business entity" test is an eleven (11) factor conjunctive test in which HDL will have to establish all eleven factors to avoid a determination of an employment relationship with the putative class members.[8] Kloppel, 2018 WL 1089682, at *2 (W.D.N.Y. Feb. 28, 2018) (citing N.Y. Lab. Law § 862-b(2)(a-k)).  HDL cannot satisfy many of the 11 factors.

### 1.    Plaintiffs Are Not Free From the Direction or Control.

To satisfy the first factor, HDL must demonstrate that Plaintiffs are "performing the service free from the direction or control over the means and manner of providing the service, subject only to the right of the commercial goods transportation contractor for whom the service is provided to specify the desired result or federal rule or regulation."  N.Y.L.L. § 862-b(2)(a). As demonstrated above, however, HDL exercises overwhelming control over the means of delivery.  HDL requires Plaintiffs and their helpers to pass background check, to wear a uniform, to introduce themselves to customers as being from Sears, and to perform deliveries on time and pursuant to Sears' requirements.  SOF, ¶ 85-88.  Moreover, HDL requires Plaintiffs to perform deliveries in the order they are assigned and within the time windows required by HDL.  SOF, ¶

---

[8]    "A business entity, including any sole proprietor, partnership, firm, corporation, limited liability company, association or other legal entity that may also be a commercial goods transportation contractor under this section shall be considered a separate business entity from the commercial goods transportation contractor where all the following criteria are met …" N.Y. Lab. Law § 862-b(2) (emphasis added).

52.  Furthermore, HDL prohibits Plaintiffs from doing any work outside of their work for HDL, even on off days.  SOF, ¶ 73-74.  Thus, HDL cannot meet this factor and, therefore, cannot meet the "separate business entity" test.

Plaintiffs need not address any other factor, but do so below to show that HDL fails to meet the "separate business entity" test on several factors.

### 2. Plaintiffs Cannot Hire Helpers or Drivers Without HDL's Approval

Another factor of the "separate entity test" that HDL must meet is to show that "the business entity hires its own employees without the commercial goods transportation contractor's approval, subject to applicable qualification requirements or federal or state laws, rules or regulations."  N.Y.L.L. § 862-b(2)(i).  HDL requires that any helpers or drivers that contractors want to use be approved by HDL first.  SOF, ¶ 84-87.  Moreover, HDL routinely prohibits contractors from using even approved helpers.  SOF, ¶ 88.  Thus, HDL cannot meet this factor.

### 3. Plaintiffs Cannot Make Their Services Available to the General Public While Working for HDL.

To satisfy the "separate business entity" test, HDL must further demonstrate that "the business entity may make its services available to the general public or others not a party to the business entity's written contract . . . in the business community on a continuing basis." N.Y.L.L. § 862-b(2)(e).  As discussed above, Plaintiffs did not advertise their services to the general public and they earned all of their income solely from HDL. SOL, ¶ 78-80.  HDL also required Plaintiffs to wear a Sears uniform, to introduce themselves to customers as being "from Sears," and prohibited them from wearing shirts with their own logos on them.  SOF, ¶ 60-61. Moreover, HDL did not permit Plaintiffs to co-load their trucks with outside merchandise or work for other businesses on their days off.  SOL, ¶ 72-74.  In addition, HDL prohibited

Plaintiffs from soliciting customers or competing with HDL for a year after their termination. SOF, ¶ 76. Thus, HDL cannot show that its contractors could make their services available to the general public.

### 4. Plaintiffs Cannot Perform Deliveries For Others.

Along the same lines, HDL must further show that "the business entity has the right to perform similar services for others on whatever basis and whenever it chooses." N.Y.L.L. § 862-b(2)(k). This is plainly not the case here. As explained above, Plaintiffs are required to work full-time for HDL. Further, Plaintiffs are required to perform deliveries in uniforms that designate them as Sears deliverers. SOF, ¶ 19, 32-34. Moreover, HDL prohibits Plaintiffs from co-loading their trucks with any other merchandise. SOF, ¶¶ 72-74. Moreover, contractors working out of the Rochester facility were not permitted to unload their trucks at the end of the day, which were full of returns and haul-aways, and had to wait until morning to unload, making it impossible to use the trucks for any other purpose on days when they performed deliveries for HDL. SOF, ¶ 84. In fact, the contractors overwhelmingly testified that they worked solely for HDL and relied on HDL for their incomes. SOL, ¶ 75. Thus, Plaintiffs were not able to perform deliveries for others whenever those chose to do so.

### 5. Plaintiffs Do Not Own or Lease the Capital Goods and Gain Profits From Deliveries.

The "separate business entity test" further requires HDL to demonstrate that Plaintiffs "owns or leases the capital goods and gains the profits and bears the losses of the business entity." N.Y.L.L. § 862-b(2)(d). HDL cannot meet this factor as Plaintiffs do not own or lease the goods they are delivering. Moreover, Plaintiffs are paid a flat rate per delivery and have no meaningful opportunity for profit. Courts have generally held that workers who are paid on a piece-rate basis and who are able to affect their earnings only through working more hours or

more efficiently, completely lack a meaningful opportunity for profit or loss.  See, e.g., Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1385 (3d Cir. 1985) (homeworkers who were paid on a piece-rate basis to perform the simple service of researching telephone numbers were employees who lacked meaningful opportunity for profit or loss); Hodgson v. Cactus Craft of Arizona, 481 F.2d 464, 467 (9th Cir. 1973) (persons who manufacture novelty and souvenir gift items at homes and were compensated at a piece rate were employees under the FLSA).

      **D.**    **Plaintiffs' Incorporation Does Not Defeat The Claims Under the NYLL.**

      Plaintiffs anticipate that HDL will argue that, even though this argument has been rejected by this Court and nearly every other court to address the issue, that Plaintiffs cannot be HDL employees because HDL contracted with Plaintiffs' corporate entities and paid Plaintiffs through those entities.  Indeed, this Court has already held in this case that incorporation is no defense to a claim for unpaid wages or wage deductions under the NYLL.  Kloppel, 2019 WL 6111523, at *4 (HDL's "sole argument is that Plaintiffs' incorporation is dispositive. The Court disagrees.").  Moreover, in Padovano, this Court further held that "[i]f any business could avoid [wage and hour law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, [wage and hour law] would be rendered useless."  Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016).

      Indeed, courts across the country in jurisdictions with similar wage laws that, like this Court, "employers cannot avoid the legal responsibilities of the employee relationship by forcing their employees to incorporate." [9]  Carrow v. FedEx Ground Package Sys., Inc., 2019 WL

---

[9]  See also Razak v. Uber Techs., Inc., 951 F.3d 137, 139 n. 2, 148 (3d Cir. 2020) (holding "self-incorporated drivers" could qualify as "employees" under the FLSA); Carrow, 2019 WL 7184548, at *5 ("In an earlier Opinion …, the Court noted that the [New Jersey Wage Payment

7184548, at *5 (D.N.J. Dec. 26, 2019) (citing <u>Hargrove v. Sleepy's, LLC</u>, 2016 WL 8258865

(D.N.J. Oct. 25, 2016) (granting partial summary judgment and finding that plaintiff delivery

drivers who entered into contracts with defendant on behalf of businesses they owned or

controlled were defendant's employees under New Jersey ABC test); <u>DaSilva v. Border Transfer</u>

<u>of MA, Inc.</u>, 377 F. Supp. 3d 74, 86 (D. Mass. 2019) (holding that under Massachusetts's ABC

test "the mere fact of incorporation does not defeat a [wage] claim"); <u>Martins v. 3PD Inc.</u>, 2013

WL 1320454, at *17 (D. Mass. Mar. 28, 2013) (same); <u>Padovano</u>, 2016 WL 7056574, at *4).

   In fact, New York courts have routinely reached the same conclusion.  In addition to the

holding in <u>Padovano</u>, 2016 WL 7056574, at *3 and this case, in <u>Gustafson v. Bell Atlantic Corp.</u>,

171 F. Supp. 2d 311 (S.D.N.Y. 2001), for example, the plaintiff was a chauffeur that

incorporated J.A.G. Services, Inc.  171 F. Supp. 2d at 316-17. Even though the defendant "paid

JAG, and JAG paid plaintiff his wages," the court held that the plaintiff was entitled to overtime

pay under Article 6 of the NYLL.  <u>Id</u>. at 326. (citing N.Y. Lab. Law § 198(3)).  Further, in <u>Lee v.</u>

<u>ABC Carpet & Home</u>, a carpet installation mechanic filed a motion to proceed as a collective

action under the FLSA and for class certification of NYLL claims. 236 F.R.D. 193, 196

(S.D.N.Y. 2006).  The court rejected defendants contended "that the FLSA definition of

---

Law] 'does not require an entity to render payment directly to a person to qualify as an
employer.' … To be clear, under New Jersey's ABC test employers cannot avoid the legal
responsibilities of the employee relationship by forcing their employees to incorporate.")
(internal citations omitted); <u>In re FedEx Ground Package Sys., Inc., Employment Practices Litig.</u>,
712 F. Supp. 2d 776, 793 (N.D. Ind. 2010) ("if FedEx retains the right to control unincorporated
SWA drivers, it retains the right to control incorporated SWA drivers and MWA drivers.");
<u>Phelps v. 3PD, Inc.</u>, 261 F.R.D. 548, 554, 562 (D. Or. 2009) (certifying a class of Oregon
delivery drivers "who entered into a contract with 3PD either on his or her own behalf or on
behalf of an entity" for purposes of their Oregon state wage claims); <u>Ruiz v. Affinity Logistics,</u>
<u>Corp.</u>, No. 05CV2125 JLS (CAB), 2009 WL 648973, *2 (S.D. Cal. Jan. 29, 2009) (class
certification granted where the plaintiff "had to start his own business").

'employee' is limited to individuals, and therefore precludes from this putative collective action any plaintiffs who have formed their own corporation." Id. at 197-98.

Moreover, the Fair Play Act itself calls for liability for corporate entities.  The Fair Play Act allows any "business entity, including any sole proprietor, partnership, firm, corporation, limited liability company, association or other legal entity" to be deemed an "employee" for purposes of NYLL protections unless all of eleven criteria are met. N.Y. Lab. Law § 862-b(2) (emphasis added).  HDL required Plaintiffs and the class members to form corporate entities to work for HDL, and even filled out their paperwork for them it they did not come to HDL with a ready corporate entity.  SOF, 24-25.  For the reason stated by this Court in this case and Padovano, HDL should not be permitted to avoid liability under the NYLL simply by forcing its contractors to incorporate.

**IV.     CONCLUSION**

For all the reasons stated above, this Court should enter summary judgment as to Plaintiffs' and the class's status as employees of HDL pursuant to the Fair Play Act.

Respectfully submitted,

On behalf of Plaintiffs Mike Kloppel and Adam Wilson and on behalf of themselves and all other similarly situated persons,

By: /s/ Benjamin J. Weber
Benjamin J. Weber, Esq.
Harold L. Lichten, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

Samuel Alba, Esq.
FRIEDMAN & RANZENHOFER, P.C.
74 Main Street
P.O. Box 31

Akron, New York 14001
(716) 542-5444

Ravi Sattiraju, Esq.
THE SATTIRAJU LAW FIRM, P.C.
116 Village Boulevard, Suite 200
Princeton, New Jersey 08540
(609) 799-1266

Dated: September 7, 2021


## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2021, I electronically filed the foregoing

with the Clerk of the District Court using the CM/ECF system, which sent notification of such

filing to all counsel of record.

/s/ Benjamin J. Weber
Benjamin J. Weber