# Exhibit A

1          UNITED STATES DISTRICT COURT
           DISTRICT OF NEW JERSEY
2


3
_____
4   SAM HARGROVE, et al,
                 PLAINTIFFS
5
       Vs.                              CIVIL NO.
6                                       10-1138 (PGS)
    SLEEPY'S, LLC,
7                DEFENDANT
_____
8


9

10                        **OCTOBER 25, 2016**
                          CLARKSON S. FISHER COURTHOUSE
11                        402 EAST STATE STREET
                          TRENTON, NEW JERSEY  08608
12


13


14
    B E F O R E:       THE HONORABLE PETER G. SHERIDAN
15                     U.S. DISTRICT COURT JUDGE
                       DISTRICT OF NEW JERSEY
16


17


18

19  **COURT'S OPINION OF CROSS-MOTIONS FOR SUMMARY
    JUDGMENT/DEFENDANT'S MOTION TO STRIKE VITERI DECLARATION**
20


21


22

23                        Certified as true and correct as required
                          by Title 28, U.S.C. Section 753
24                        /S/ Francis J. Gable
                          FRANCIS J. GABLE, C.S.R., R.M.R.
25                        OFFICIAL U.S. REPORTER
                          (856) 889-4761

1            THE COURT:  This matter comes before the Court on

2    three motions; two motions for summary judgment, and a motion

3    to strike the declaration of Tito Viteri filed by the

4    plaintiffs.  The Court has reviewed the facts of this case

00:00    5    several times, but specifically, plaintiffs allege that they

6    were not paid for overtime work under the New Jersey Wage and

7    Hour Law, and that the plaintiffs were employees rather than

8    independent contractors.  The resolution of the cross-motions

9    for summary judgment is a determination of whether the

00:01    10    plaintiffs are independent contractors or employees.

11            In a prior motion several years ago, this Court

12    erroneously applied the right-to-control test as set forth by

13    the Supreme Court in *Nationwide v. Darden*, and determined that

14    the plaintiffs were independent contractors and not employees.

00:01    15    The matter went to the Third Circuit; the Third Circuit

16    indicated that the Supreme Court of New Jersey should resolve

17    the standard for determining whether a person is an

18    independent contractor or an employee.  As a result, the Third

19    Circuit petitioned the Supreme Court of New Jersey for

00:02    20    certification on that question.  The Supreme Court and the

21    Third Circuit indicated that this Court should utilize the

22    "ABC test" to determine if the plaintiffs are independent

23    contractors or employees.

24            Factually, Sleepy's is a New York based mattress and

00:04    25    bedding company, has six distribution centers, including one

*United States District Court*
*Trenton, New Jersey*

1    in Robbinsville, New Jersey.  Sleepy's frequently contracts

2    with individuals and delivery companies (hereinafter referred

3    to as deliverers or delivery drivers) to deliver mattresses,

4    beds, and other products to customers.  Consequently, such

00:04    5    deliverers enter into an Independent Driver Agreement (IDA)

6    with Sleepy's, and these driver agreements state that the

7    deliverers are independent contractors and "not employees of

8    Sleepy's."  According to plaintiffs, Sleepy's classified all

9    of its delivery drivers as independent contractors to "save

00:05    10    money."  Plaintiffs entered into driver agreements with

11    Sleepy's on behalf of businesses they owned or controlled,

12    and/or on behalf of themselves.  Hargrove formed I Stealth and

13    entered into an IDA with Sleepy's in 2008; Hall entered into

14    an IDA with Sleepy's in 2005; Eusebio created Eusebio Trucking

00:06    15    in September 2003, and Eusebio entered into two separate IDAs

16    with Sleepy's, one in 2003, one in 2005.  Mr. Eusebio also

17    partially owned Curva Trucking, which entered into an IDA with

18    Sleepy's in 2008.

19         Plaintiffs allege that they work full-time making

00:07    20    deliveries for Sleepy's.  Plaintiffs could not perform

21    deliveries for other companies while performing deliveries for

22    Sleepy's.  Plaintiffs never received any income from any other

23    source.  Plaintiffs were free to use their vehicles and

24    personnel to perform deliveries for other companies who are

00:07    25    not performing deliveries for Sleepy's.  According to the

1  IDAs, plaintiffs agree that "while performing deliveries for

2  Sleepy's, they would not carry merchandise or any other

3  business until they furnished the delivery manifest given to

4  them by Sleepy's at the end of the day."  The delivery

00:08  5  invoices indicated that plaintiffs were "independent

6  truckers", and one of the terms and conditions of the customer

7  invoices stated that the "deliverers and deliverers' personnel

8  agree that they were not employees of Sleepy's and are not

9  entitled to and hereby waive any claim to any benefit provided

00:09  10  by Sleepy's."

11          Delivery services appear to be an integral part of

12  Sleepy's business.  One of Sleepy's goals is to ensure that

13  Sleepy's customers receive the same type of delivery services.

14  The delivery function of Sleepy's starts with a sale, at which

00:09  15  time the Sleepy's customer selects a delivery time and is

16  charged for the delivery.  Sleepy's then decides what truck

17  will deliver the mattress.  Thereafter, the Sleepy's employee

18  devises a route with delivery time windows and assigns those

19  routes to delivery drivers through the use of a software

00:10  20  program.  About 90 percent of Sleepy's sales are deliveries.

21  After each delivery, plaintiffs are required to enter the

22  delivery into a Sleepy's system called an Agentek scanner,

23  which in turn enters a delivery into Sleepy's database.  In

24  addition to the Agentek scanner, Sleepy's provides plaintiffs

00:11  25  with packing tape, mattress bags, credit card swiper and other

1 paperwork required by Sleepy's.  Plaintiffs are also required
2 by Sleepy's to maintain hand tools to accommodate proper
3 delivery.  All of the plaintiffs report to Sleepy's warehouse
4 in Robbinsville, New Jersey.  At that location they're
00:12   5 provided with daily delivery manifests, their trucks are
6 loaded with Sleepy's merchandise, and they also make returns
7 to the Robbinsville facility after completing their
8 deliveries.  The plaintiffs spend about two to three hours at
9 the beginning of each day at the Robbinsville warehouse, and
00:12  10 they're required to return to the warehouse at the end of the
11 day to make returns of merchandise and pick up delivery and to
12 deposit money orders.
13         Sleepy's requires all deliverers, that one driver
14 and one helper work on each truck, and both persons must spend
00:13  15 their workday together on the road.  Plaintiffs are not
16 required to punch a time clock.  Plaintiffs are required to
17 obtain worker comp insurance and motor vehicle insurance.
18 Plaintiffs require Sleepy's to be an additional insured on the
19 motor vehicle and on their worker compensation insurance.
00:14  20 Sleepy's requires the employees to maintain a $5,000 employee
21 dishonesty bond.  Sleepy's requires plaintiffs to display the
22 Sleepy's logo on their trucks.  And Sleepy's prohibits the
23 deliverers to display any other advertising on their trucks
24 without Sleepy's consent.  Sleepy's does not schedule meal
00:15  25 periods or break times, nor does Sleepy's monitor the hours

1    worked by the delivery trucks.  Sleepy's also does not

2    schedule vacation time.  Sleepy's does not advise plaintiffs

3    of directions or traffic patterns to use during their workday.

4    Sleepy's requires the deliverers to wear a Sleepy's uniform,

00:15    5    which says Delivery Professional on it, and they have Sleepy's

6    ID badges.  Sleepy's trains the delivery drivers on how they

7    should act with customers.  Sleepy's provides a training

8    manual.  Sleepy's performs field audits and inspects the

9    trucks for compliance with Sleepy's policies.  If one of the

00:16    10    deliverers fails to follow Sleepy's rules, they're subject to

11    discipline, including a loss of pay.  Sleepy's advises the

12    deliverers the time at which they should appear at work, and

13    if a driver is late Sleepy's could reassign the work to

14    another driver.  In the IDA between Sleepy's and the

00:17    15    deliverer, they may be terminated without cause and without

16    notice.  Sleepy's requires deliverers and their helpers to

17    undergo background checks prior to working for Sleepy's.

18         Summary judgment is appropriate under Rule 56(c)

19    when a moving party demonstrates there is no genuine issue of

00:-36    20    material fact, and that the evidence establishes the moving

21    party's entitlement to judgment as a matter of law.  *Celotex*

22    *v. Catrett*, 477 U.S. 317 at 322 (1986).  A factual dispute is

23    genuine if a reasonable jury can return a verdict for the

24    non-movant, and it is material if, under the substantive law,

00:-36    25    it would affect the outcome of the suit.  That's *Anderson v.*

1  *Liberty Lobby*, 477 U.S. 242 at 248.  Generally, on a motion

2  for summary judgment the district court does not make

3  credibility determinations or engage in any weighing of the

4  evidence, instead the non-moving party's evidence is to be

00:-35    5  believed and all justifiable inferences are to be drawn in the

6  non-moving party's favor.  That's *Marino v. Industrial*

7  *Crating*, 358 F.3rd 241, at 246-47.

8        Moreover, the only disputes of fact that might

9  affect the outcome of the lawsuit under governing law will

00:-34   10  preclude entry of summary judgment.  That's *Anderson*, 477 U.S.

11  247, 248.  If the court determines, after drawing all

12  inferences in favor of the non-moving party and making all

13  credibility determinations in his favor, that no reasonable

14  jury could find for him, summary judgment is appropriate.

00:-34   15  That's *Alevras v. Tacopina*, 226 Fed. App'x 222, at 227 (3d.

16  Cir. 2007).

17        The ABC test.  This Court must apply the decision

18  of the New Jersey Supreme Court in *Hargrove v. Sleepy's*.  The

19  appropriate test is the ABC test.  The ABC test is derived

00:19   20  from the New Jersey Unemployment Compensation Act, and governs

21  whether a plaintiff is an employee or independent contractor

22  for purposes of resolving wage payments or wage and hour

23  claims.  The test is as follows.  The ABC test presumes an

24  individual is an employee, unless the employer can make

00:20   25  certain showings regarding the individual employed, including:

1   (A) such individual has been and will continue to be free from

2   control or direction over the performance of such service,

3   both under his contract of service and in fact; (B) such

4   service is either outside the usual course of business for

00:20   5   which such service is performed, or that such service is

6   performed outside of all the places of business of the

7   enterprise for which such service is performed; (C) such

8   individual is customarily engaged in an independently

9   established trade, occupation, profession or business.

00:21   10   N.J.S.A. 43:21-19(i)(6).  See, *Hargrove v. Sleepy's*, 612 Fed.

11   App'x at 118.  Moreover, the inability to meet any one of

12   these three criteria results in a finding that the individual

13   is an employee.  *Hargrove v. Sleepy's*, 612 Fed. App'x at 117.

14          Now, looking at prong (A), in order to satisfy prong

00:21   15   (A) the employer must show that it neither exercised control

16   over the worker, nor had the ability to exercise control in

17   terms of completion of work.  That's *Hargrove v. Sleepy's*, 220

18   N.J. 289, 305 (2005).  The Court finds that Sleepy's exercised

19   control over the deliverers' work.  Sleepy's required the

00:22   20   deliverers to sign IDAs.  The IDA required that the deliverers

21   could not perform any other business while on duty with

22   Sleepy's.  The IDA required plaintiffs to purchase insurance

23   and list Sleepy's as an additional insured.  The IDA required

24   the deliverers to wear Sleepy's uniforms and to display

00:23   25   Sleepy's logos on their truck.  Moreover, Sleepy's supervised

1  and monitored plaintiffs' work through the Agentek system, and

2  Sleepy's also directed the time each plaintiff was to start

3  work.  Sleepy's also controlled the delivery process in that

4  Sleepy's trained the deliverers on how to interact with

00:24    5  customers, how the trucks needed to be loaded, and how to fill

6  out Sleepy's paperwork.  In addition, the deliverers were

7  given specific routes to follow in making their deliveries,

8  and Sleepy's could monitor the deliverers' movements through

9  the Agentek system.  And lastly, Sleepy's performed surprise

00:25   10  audits to determine whether the deliverers were appropriately

11  delivering bedding products.  As such, the plaintiffs have

12  shown that they have not been free from control or direction

13  over the performance of their services.  See, generally,

14  Restatement of Agency, Supra, Section 220; and *Carpet Remnant*

00:26   15  *v. N.J. Department of Labor,* 125 N.J. 567, 582 (1991).

16        Now, looking at prong (B), although the Court did

17  not have to reach any other prong after finding that the

18  deliverers were not free from control of Sleepy's, it will

19  review prong (B) anyway.  Part (B) of the ABC test requires

00:27   20  that the employer show that the services provided were either

21  outside the usual course of business, or that the service is

22  performed outside of all places of business of the enterprise.

23  See, *Hargrove*, 220, at 459.

24        Here, in this case, Sleepy's is not a trucking

00:27   25  company, but part of its marketing scheme is quick delivery of

1   mattresses and other mattress accessories.  Although Sleepy's

2   advertises white glove delivery services, and employs

3   approximately 100 individuals at its Robbinsville warehouse,

4   the Court is unpersuaded that Sleepy's is not engaged in the

00:28     5   delivery business.  It is clear Sleepy's is engaged in the

6   mattress business, and an integral part of its business is the

7   delivery.  See, *Carpetland v. Illinois Department of*

8   *Employment*, 211 Ill. 2d. 351, 386 (2002).

9           The last portion is prong (C).  Prong (C) calls for

00:29    10   an enterprise that exists and can continue to exist

11   independently of and apart of the particular service

12   relationship.  This enterprise must be one that is stable and

13   lasting, one that will survive the termination of the

14   relationship.  *Hargrove*, 220 N.J. at 306.  Generally, the ABC

00:30    15   test is satisfied when an individual has a profession that

16   will plainly persist despite termination of the challenged

17   relationship.  As one court noted, when the relationship ends

18   and the individual joins the ranks of the unemployed, this

19   element of the test is not satisfied.  See, *Chmizlak v.*

00:30    20   *Levine*, 20 N.J. Misc. 339 (1942).  Sleepy's cannot meet prong

21   (C) because plaintiffs were customarily engaged in the

22   delivery service.  The plaintiffs contend they did not work

23   for any other company; plaintiffs will rely on Sleepy's for

24   their income.  Some of the plaintiffs earned 100 percent of

00:31    25   their income from Sleepy's.  The plaintiffs also note that

1   they could not deliver other equipment or merchandise while

2   they're working for Sleepy's.  In light of these facts, the

3   Court finds that at the time of the end of the relationship

4   between plaintiffs and Sleepy's, the plaintiffs would join the

00:32      5   ranks of the unemployed, and therefore, prong (C) is not met.

6          Lastly, Sleepy's contends that the FAAAA preempts

7   plaintiffs' case.  The FAAAA provides that a state may not

8   enact or endorse a law or regulation or other provision having

9   the force and effect of law related to a price, route or

00:32     10   service of a motor carrier with respect to transportation of

11   property.  49 U.S.C. Section 14501(c)(1).  The Third Circuit

12   has indicated that:  It's a well-established principle that

13   the court should not lightly infer preemption.  *Gary v. The*

14   *Air Group*, 397 F.3d 183, 190 (3d. Cir. 2005).  Moreover, this

00:33     15   principle is "particularly apt in the employment law context,

16   which falls squarely within the traditional police powers of

17   the states, and, as such, should not be disturbed lightly."

18   See, *International Paper v. Ouellette*, 479 U.S. 481, 491

19   (1987).  The Third Circuit has noted that "garden variety

00:34     20   employment claims" in particular, are not preempted by the

21   FAAAA.  See, *Id*. at 189.  Here, the Court finds that the

22   plaintiffs' claims are in the employment law context, which

23   fall "squarely within the traditional power of the states,

24   and, as such, should not be disturbed lightly."  While

00:35     25   requiring that Sleepy's classify plaintiffs as employees may

1   have some impact on Sleepy's hiring practices and costs, there

2   is no evidence before the Court that classifying the drivers

3   as employees would fundamentally impact the business of

4   Sleepy's.  The application of the ABC test to Sleepy's only

00:35   5   has a tenuous effect on the carriers' prices and services.

6   See, *Rowe*, 552 U.S. at 371.  Moreover, because the Court found

7   under prong (B) that Sleepy's is not primarily a motor

8   carrier, the FAAAA preemption does not seem to apply to

9   Sleepy's.  See, *Schwaunn v. FedEx*, 813 F.3d 429; *Porillo v.*

00:36   10   *National Freight*, U.S. District Court, District of New Jersey,

11   docket number 15-07908.  For these reasons, the defendant's

12   motions for summary judgment are denied.

13          For the foregoing reasons, the plaintiffs' motion

14   for summary judgment as to their employment status as

00:36   15   employees is granted, and defendant's motion for summary

16   judgment is denied.

17

18

19

20

21

22

23

24

25