# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

MIKE KLOPPEL and ADAM WILSON on behalf of themselves and all other similarly situated persons,

    Plaintiffs,

v.

HOMEDELIVERYLINK, INC.

    Defendant.

Case No. 6:17–cv–06296–FPG

**ORAL ARGUMENT REQUESTED
[L.R.Civ.P. 7(c)]**

---

## DEFENDANT HOMEDELIVERYLINK, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Emily A. Quillen
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
777 Main Street, Suite 3400
Fort Worth, TX 76102
(817) 869–1700

Andrew J. Butcher (*Pro Hac Vice*)
Jared S. Kramer (*Pro Hac Vice*)
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
30 W. Monroe Street, Suite 1600
Chicago, IL 60603
(312) 255–7200

Andrew R. Brehm
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
330 E. Kilbourn Avenue, Suite 827
Milwaukee, WI 53202
(414) 219–8500

Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
2100 Main Place Tower
Buffalo, NY 14202
(716) 855–1050 x101

*Attorneys for Defendant, HomeDeliveryLink, Inc.*

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II. STATEMENT OF FACTS ............................................................................................3

III. ARGUMENT ...............................................................................................................3

    A.    Plaintiffs' Motion makes no showing regarding class members' employment status under the common law test, nor the liability elements of their NYLL claims. ......................................................................................................................3

    B.    Plaintiffs' evidentiary proffer is insufficient to meet their burden at summary judgment..............................................................................................4

    C.    Plaintiffs ignore material facts supporting the separate business entity test under the Fair Play Act..............................................................................8

        1.    Class members enjoyed freedom from direction or control by HDL (NYLL § 862-b(2)(a))............................................................................ 9

        2.    Class members owned or leased capital goods, subject to profit and loss (NYLL § 862-b(2)(d))........................................................................... 15

        3.    Delivery services were provided by class member businesses to other entities while contracted with HDL (NYLL § 862-b(2)(e))............................................. 18

        4.    Class members' businesses hired employees subject only to qualification requirements or federal law (NYLL § 862-b(2)(i)). ............................................. 19

        5.    Class members had the right to perform services for others (NYLL § 862-b(2)(k)).......................................................................... 20

    D.    Questions of fact exist on the Fair Play Act's alternative option for demonstrating independent-contractor status under the ABC Test. ....................22

    E.    The Court should ignore Plaintiffs' strawman argument about the corporate form of class member businesses.........................................................24

IV.        CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Home Delivery America.com*,
  2013 WL 6860745 (D. Mass. Dec. 30, 2013) ........................................................................ 14

*Browning v. Ceva Freight, LLC*,
  885 F. Supp. 2d 590 (E.D.N.Y. 2012) ........................................................................... passim

*Bynog v. Cipriani Group, Inc.*,
  1 N.Y.3d 193 (2003) ............................................................................................... 4, 14

*Chebotnikov v. LimoLink, Inc.*,
  2017 WL 2888719 (D. Mass. July 6, 2017) ......................................................................... 24

*DeSouza v. EGL Eagle Global Logistics*,
  596 F. Supp. 2d 456 (D. Conn. 2009) ............................................................................... 10

*E.B. v. New York City Bd. of Educ.*,
  2005 WL 8156773 (E.D.N.Y. June 30, 2005) ...................................................................... 21

*Echavarria v. Williams Sonoma, Inc.*,
  2016 WL 1047225 (D.N.J. Mar. 16, 2016) .................................................................... 14, 24

*Eckel Indus., Inc. v. Perma Tech, Inc.*,
  1997 WL 128373 ............................................................................................................. 5

*Edwards v. Publishers Circulation Fulfillment, Inc.*,
  268 F.R.D. 181 (S.D.N.Y. 2010) ......................................................................................... 5

*FedEx Home Delivery v. NLRB*,
  563 F.3d 492 (D.C. Cir. 2009) .......................................................................................... 10

*Franze v. Bimbo Food Bakeries Distribution, LLC*,
  2019 WL 2866168 (S.D.N.Y. July 2, 2019) ....................................................................... 6, 9

*Garcia v. Chirping Chicken NYC, Inc.*,
  2016 U.S. Dist. LEXIS 32750, at 44 (E.D.N.Y. Mar. 11, 2016) ............................................ 4

*Hart v. Rick's Cabaret Int'l, Inc.*,
  967 F.Supp.2d 901 (S.D.N.Y.2013) ................................................................................... 15

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ................................................................................................ 7

*In re Gill*,
  22 N.Y.S.3d 621 (N.Y. App. Div. 3d Dept. 2015) .............................................................. 15

*Indus. Claim Appeals Office v. Softrock Geological Svcs., Inc.*,
  325 P.3d 560 (Colo. 2014) ............................................................................ 21, 22

*Kinney v. Artist & Brand Agency LLC*,
  2015 WL 10714080 (S.D.N.Y. Nov. 25, 2015) ................................................... 17

*Kinney v. Artist & Brand Agency LLC*,
  2016 WL 1643876 (S.D.N.Y Apr. 22, 2016)..................................... 17, 18, 19, 20

*Lubermens Mutual Casualty Co. v. RGIS Inventory Specialists, LLC*,
  628 F.3d 46 (2d Cir. 2010)................................................................................ 15

*Luxama v. Ironbound Express Inc.*,
  2012 WL 5973277 (D.N.J. June 28, 2012) ........................................................ 13

*Marlo v. UPS*,
  639 F.3d 942 (9th Cir. 2011) .............................................................................. 7

*Martin v. Sprint United Mgt. Co.*,
  273 F. Supp. 3d 404 (S.D.N.Y. 2017)................................................................. 11

*Matter of Doster*,
  132 N.Y.S.3d 176 (N.Y. App. Div. 3d Dept. 2020) ............................................ 15

*Matter of John Lack Assoc., LLC (Commissioner of Labor)*,
  112 A.D.3d 1042, (3d Dep't 2013] ..................................................................... 15

*Matter of Turek (Adelchi Inc.—Commissioner of Labor)*,
  184 A.D.3d 295 (2020) ............................................................................... 4, 8, 9

*Overton v. Uber Technologies, Inc.*,
  333 F. Supp. 3d 927 (N.D. Cal. 2018) ............................................................... 23

*Padovano v. FedEx Ground Package Sys., Inc.*,
  2016 WL 7056574 (W.DN.Y. Dec. 5, 2016)....................................................... 24

*Reiter v. Cooper*,
  507 U.S. 258 (1993)........................................................................................... 23

*Saleem v. Corporate Transp. Group, Ltd.*,
  52 F. Supp. 3d 526 (S.D.N.Y. 2014)..................................................... 6, 9, 14, 15

*Scantland v. Jeffry Knight, Inc.*
  721 F.3d 1308 (11th Cir. 2013) .......................................................................... 14

*Short v. Churchill Benefit Corp.*,
  2016 WL 8711349 (E.D.N.Y. Apr. 8, 2016) .......................................................... 3

*Sosa v. Medstaff, Inc.*,
  2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ....................................................... 6

*Thomas v. TXX Svs., Inc.*,
  663 Fed. Appx. 86 (2d Cir. 2016) ............................................................................. 9

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) ................................................................................................. 8

*Utne v. Home Depot U.S.A., Inc*.,
  2019 WL 3037514 (N.D. Cal. July 11, 2019) ....................................................... 10

*Velu v. Velocity Exp., Inc.*,
  666 F. Supp. 2d 300 (E.D.N.Y. 2009) ............................................................... 9, 16

**Statutes**

49 U.S.C. § 13102 ........................................................................................................ 23
N.Y. Transp. Law § 137 ............................................................................................... 20
N.Y. Lab. Law §198-b ................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................... 21

**Regulations**

17 N.Y.C.R.R. § 855.1 ................................................................................................. 13
49 C.F.R. § 371.7 ........................................................................................................ 23
49 C.F.R. § 387.1 ........................................................................................................ 13

## I.  INTRODUCTION

Like the Wizard of Oz coaxing Dorothy to pay no attention to the man behind the curtain, Plaintiffs ask the Court to ignore variances in Plaintiffs' and class members' deposition testimony that reveal fact issues on the employment relationship element of two remaining claims. Among the disregarded facts of consequence is evidence in the record about class members who:

• Had responsibility for hiring workers to operate trucks and managing those workers as part of the class member's business. *See HDL's Opp. SOF* ¶¶ I.85, I.86, I.88.[1] Plaintiff Kloppel's resume, for example, listed himself as "Kloppel Deliveries – Owner" during the time his company contracted with HDL, and identified his responsibilities as "management of multiple teams, financially responsible for quality of work performed and safety of product delivered. Direct management of employees, determined workdays, assigned duties, negotiated employee compensation rates and ensured compliance with related company policies, dealt with all relevant state, truck leasing companies and all other day to day operations of my company. Basic and advanced maintenance of all equipment owned by the company was done personally." *App. Ex. 18*.

• Contracted with multiple businesses to provide delivery services and chose when to work. *See HDL's Opp. SOF* ¶¶ I.74, I.75, I.77, II.21-II.28. Class member Samora Minors, for example, (i) operated his company on "the back end running the paperwork and stuff like that"

---

[1] In accordance Local Rule 56(a)(2), HDL's Opposing Statement of Material Facts (*HDL's Opp. SOF*) filed contemporaneously with this Memorandum includes a response to Plaintiffs' statement in correspondingly number paragraphs in Part I, Paragraphs 1 – 93, referenced as "*HDL's Opp. SOF* ¶ I.[paragraph number]", as well as additional material facts that indicate genuine issues to be tried in Part II, referenced as "*HDL's Opp. SOF* ¶ II.[paragraph number]". Citations to deposition transcripts included in the Appendix of Exhibits to Local Rule 56 Statement of Material Facts (Appendix) are shown as "[*Last name of deponent*] *Dep*. [page number:line]." All other exhibits attached to the Appendix are cited as "*App. Ex. __*."

from Florida for a period while others he hired operated his company's trucks in New York for HDL, (ii) at other times serviced business accounts in Connecticut and New Jersey that his company contracted with while others he hired operated his company's trucks in New York, and (iii) still other times decided to deliver product personally under the contract with HDL. *See Minors Dep*. 83:17-84:9, 88:7-16, 95:18-96:18, 107:4-13, 112:6-17.

• Negotiated higher rates for deliveries, set pay rates for their workers, and determined which deliveries those workers would make. *See HDL's Opp. SOF* ¶¶ I.48, I.49, II.16-II.20. Class member Mike Collins, for example, (i) negotiated "compensation higher than other contractors" in the form of an additional flat rate of $160 per week, (ii) paid his employees a set rate with raises based on "[p]erformance [and] the length of time they" worked for his company, and (iii) would choose the deliveries he would take on days he worked along with distributing other deliveries to his employees. *Collins Dep*. 43:14-44:9; 48:9-16; 87:7-23; 88:21-89:15.

• Owned or leased the capital goods necessary for their businesses' operations while gaining the profits and bearing the losses of the business entities. *See HDL's Opp. SOF* ¶¶ I.75, II.2-II.15. As one example, Plaintiff Wilson's company (i) operated 5-7 leased trucks per day while contracting with HDL, and at the time of his deposition owned 8 trucks; (ii) took advantage of over a million dollars in business tax deductions; and (iii) obtained profits from the operation, which were shared along with three other owners of the company. *HDL's Opp. SOF* ¶ II.6; *Wilson Dep*. 73:2-14, 76:18-24; ECF No. 109-4 at 62-120.

Citing sparingly to the purported written policies and contracts promised as common proof at class certification, Plaintiffs tacitly acknowledge those documents cannot deliver a uniform employment outcome in light of such evidence. Plaintiffs, in turn, rely heavily on class member

testimony along with HDL depositions to advance their narrative. But neither Plaintiffs' sweeping generalizations drawn from this evidence or their characterization of disputed facts pave over the reality that questions of fact tethered to the personal experience of each class member exist. A jury—not Rule 56—must resolve these disputed facts and assess the conflicting evidence.

## II. STATEMENT OF FACTS

Consistent with Local Rule 56(a)(2), along with this Memorandum, HDL submitted its Opposing Statement of Material Facts, which includes a response to Plaintiffs' statement as well as additional material facts that indicate genuine issues to be tried. HDL incorporates its Opposing Statement of Material Facts by reference here.

## III.   ARGUMENT

### A.  Plaintiffs' Motion makes no showing regarding class members' employment status under the common law test, nor the liability elements of their NYLL claims.

Following the Court's dismissal of Plaintiffs' claims of unjust enrichment and illegal kickback of wages under New York Labor Law (NYLL) Section 198-b [ECF Nos. 31, 87], two remaining causes of action against HDL exist for alleged (1) illegal deductions under NYLL Section 193 and (2) record-keeping violations under NYLL Section 195. [ECF No. 121 at 1]. The Court's Rule 23 certification order in this case set a class period for these claims of "May 8, 2011, through the date of final judgment in this action." [ECF No. 121 at 19-20]. The elements of a Section 193 claim are (1) "an employer–employee relationship; (2) the employer makes a deduction from the employee's wages; and (3) the deduction is not otherwise permitted by law or authorized for the employee's benefit." *Short v. Churchill Benefit Corp.*, 2016 WL 8711349, at *8 (E.D.N.Y. Apr. 8, 2016). Elements of a Section 195 claim are (1) an employer–employee relationship; (2) showing payments received were wages as defined by the NYLL; and (3) proof that the statements lack the

statutorily required information. *See Garcia v. Chirping Chicken NYC, Inc.*, 2016 U.S. Dist. LEXIS 32750, at \*44 (E.D.N.Y. Mar. 11, 2016).

Plaintiffs' Memorandum addresses one element of their claims—the independent contractor versus employee determination—under the Commercial Goods Transportation Industry Fair Play Act, NYLL § 862-b that took effect April 10, 2014. No evidence or argument for adjudicating any of the remaining elements necessary to establish liability for Section 193 or Section 195 claims are offered.

Nor do Plaintiffs address the analysis used prior to the Fair Play Act's enactment to determine employment status under the New York Labor Law, an inquiry that assesses "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog v. Cipriani Group, Inc.,* 1 N.Y.3d 193, 198 (2003). Each of these factors are relevant to assessing "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.* The record contains evidence favoring a finding of independent-contractor status on all five factors, which are also relevant to the Fair Play Act's employment determination. *See HDL Opp. SOF* ¶¶ I.74, I.75, I.77, I.91, II.21-II.28.[2]

**B.  Plaintiffs' evidentiary proffer is insufficient to meet their burden at summary judgment.**

At class certification, Plaintiffs promised the following evidence would resolve the employment determination: (1) the Home Delivery & Shuttle Carrier Agreements between HDL and Innovel

---

[2] *See Matter of Turek (Adelchi Inc.—Commissioner of Labor)*, 184 A.D.3d 295, 298-99 (2020) (finding the first criterion in the separate business entity test of the Construction Industry Fair Play Act (CIFPA), NYLL § 861-c(2)—which mirrors the first criterion in the Commercial Goods Transportation Industry Fair Play Act—should be interpreted consistent with "the traditional rule that a worker is an independent contractor where the purported employer lacks control over the results produced or the means used to achieve the results")(cleaned up).

Solutions, Inc. (fka Sears Logistics Services, Inc.); (2) the Independent Contractor Agreement (ICA); (3) a document Plaintiffs refer to generically as "HDL's Written Policies", and (4) testimony of HDL employees Ricardo Sierra, Michael R. Rex, Alex Dunlop and Sergio Coreas. [ECF Nos. 98-1 ¶ 6; 108 at 6-7].

Now requesting resolution of class member claims, Plaintiffs have deemphasized their reliance on the documentary evidence, which are cited in only 23 of 93 paragraphs of their Statement of Facts.[3] When "HDL's Written Policies" are relied upon, no evidentiary foundation exists establishing (i) that HDL's managers received or used the documents in training, hiring, or otherwise, (iii) the frequency with which the document was relied upon (if at all), or (iv) how use of the document (if it was used at all) impacted HDL managers' interactions with class members. [ECF No. 151-7. 151-9]; *e.g., Eckel Indus., Inc. v. Perma Tech, Inc.,* 1997 WL 128373, at *1 n. 1 (W.D.N.Y. Mar. 14, 1997) (on summary judgment ruling, disregarding evidence that "grossly lacks foundation and otherwise constitutes inadmissible hearsay and, in the form submitted, would not be admissible at trial"); *see also Edwards v. Publishers Circulation Fulfillment, Inc.,* 268 F.R.D. 181, 187-88 (S.D.N.Y. 2010) (rejecting use of training materials as common proof of control over delivery drivers, given absence of evidence that managers had "seen the training materials" or that training materials "used in a consistent and common fashion").

The ICA does not supply common evidence either, given that HDL phased that document out in mid-2017 with the introduction of a Freight Forwarder / Carrier Agreement . [ECF No. 109-5 at ¶ 10]. Terms of the ICA and Freight Forwarder / Carrier Agreement favor independent contractor status in any event, given class members maintain responsibility for operating

---

[3] [ECF No. 150, ¶¶ 2, 8, 9, 16, 26, 27, 28, 34, 39, 45, 48, 53, 62, 63, 67, 69, 71, 72, 73, 76, 80, 85, 87]

equipment, managing their employees, determining rates of pay, choosing routes, and other manner and means of performance. *See* [ECF Nos. 151-16 at ¶ 11; 151-17 at ¶ 10; 151-18 at ¶ 25]; *e.g.*, *Franze v. Bimbo Food Bakeries Distribution, LLC,* 2019 WL 2866168, at *6 (S.D.N.Y. July 2, 2019) (finding support for independent contractor status in agreements that "require specific results, but do not provide that [the defendant] will control the manner and means for Plaintiffs to accomplish those results"), *aff'd* 826 Fed. Appx 74 (2d Cir. Sept. 15, 2020); *see also Saleem v. Corporate Transp. Group, Ltd.,* 52 F. Supp. 3d 526, 538 (S.D.N.Y. 2014) (reasoning "fact that the franchise agreements contain a noncompete clause" is of limited relevance because "the inquiry concerns degree of control exercised," not the right to control, "and the clause was only sometimes enforced."); *Browning v. Ceva Freight, LLC,* 885 F. Supp. 2d 590, 599-600 (E.D.N.Y. 2012) (specifying that "it is crucial to note that the" written agreement "itself is not dispositive," but rather, it is the actual working relationship between the parties that is determinative of employment status).

So it goes with the contracts between HDL and Innovel Solutions, Inc. (fka Sears Logistics Services, Inc.). Plaintiffs provide no legal support or rationale for how those contracts, which Plaintiffs are not signatories to or beneficiaries of, could have relevance to a given class member's employment determination. [*See* ECF No. 31 at 13 (dismissing Innovel from case, and citing to *Sosa v. Medstaff, Inc.,* 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013) for proposition that "the conduct of one [joint] employer cannot necessarily be imputed to the other")]; *see also Franze,* 2019 WL2866168, at *7 (finding argument that plaintiffs "had to comply with product ordering and delivery requirements" of the defendant's customer- as "nothing more than 'the [m]inimal or incidental control that is 'insufficient to establish a traditional employment relationship.'")(quoting *Browning*, 885 F.Supp.2d at 598). The evidence before the Court also

reflects that, in practice, a host of specifications in Innovel's contracts—such as those for attire guidelines, truck length, merchandise assembly, delivery of merchandise and training—are not enforced. *HDL's Opp. SOF* ¶¶ I.8, I.28, I.32, I-53, I.70, I.71.

Shifting away from the evidence Plaintiffs proffered at class certification as the common proof capable of proving employment status, Plaintiffs now rely heavily on anecdotal testimony of six class members. [ECF Nos. 151-08, 151-11, 151-12, 151-13, 151-14, 151-15, 151-19, 151-20]. Highlighting the divergent experiences of those class members are myriad variations in testimony relevant to the employment determination about (1) contracting with other companies; (2) hiring workers; (3) choosing when to work; (4) profit and loss; (5) investment in capital goods; (6) advertising services, (7) placement of logos on trucks; (8) uniform requirements, (9) communication with HDL about deliveries, and (10) selection of routes. *See HDL's Opp. SOF* ¶¶ I.15, I.16, I.19, I.29, I.32-I.35, I.49, I.58, I.74-I.82, I.86, I.88, I.90, II.2-20.

Plaintiffs bypass the evidence supporting HDL's Opposing Statement of Facts, ostensibly believing that class certification provides an evidentiary elixir to each class member's claims. It does not. *E.g., In re Asacol Antitrust Litig.,* 907 F.3d 42, 53 (1st Cir. 2018) (recognizing that certification of a class "provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act"). While HDL has the burden to prove the independent contractor status of an individual under the Fair Play Act, it is Plaintiffs' burden to show misclassification occurred on a class-wide basis. *Marlo v. UPS*, 639 F.3d 942 (9th Cir. 2011).[4] That the Court appointed Plaintiffs as representatives of the certified class does not render their testimony, or that of class members, representative of anyone else in an evidentiary

---

[4]Plaintiffs have the burden to demonstrate employment status under the factors identified in *Bynog* during the period of time prior to the Fair Play Act's enactment.

sense. As the Court in *Tyson Foods, Inc. v. Bouaphakeo* confirmed, the Rules Enabling Act precludes use of so called 'representative evidence' unless that evidence "could have been used to establish liability in an individual action"). 577 U.S. 442, 458 (2016). This court can safely conclude no class member could prevail "in an individual suit by relying on depositions detailing the ways in which other" class members operated given the divergent experiences testified to here. *Id*.

### C. Plaintiffs ignore material facts supporting the separate business entity test under the Fair Play Act.

For claims arising after April 10, 2014, the Fair Play Act creates a rebuttable presumption of employment where HDL, as the putative employer, has the burden of proof to establish independent contractor status under either a three-factor "ABC" test or the eleven–factor separate business entity test. NYLL § 862-b. Like the common-law control test used prior to the Fair Play Act's enactment, the determination of an individual's employment status remains a fact-specific inquiry. *See, e.g., Matter of Turek*, 184 A.D.3d at 298-99.

Plaintiffs target the following five Fair Play Act factors alone in their Motion [ECF No. 149-01 at 20-23]:

- the business entity is performing the service free from the direction or control over the means and manner of providing the service, subject only to the right of the commercial goods transportation contractor for whom the service is provided to specify the desired result or federal rule or regulation (NYLL § 862-b(2)(a));

- the business entity owns or leases the capital goods and gains the profits and bears the losses of the business entity (NYLL § 862-b(2)(d));

- the business entity may make its services available to the general public or others not a party to the business entity's written contract referenced in paragraph (g) of this subdivision in the business community on a continuing basis (NYLL § 862-b(2)(e));

- if necessary, the business entity hires its own employees without the commercial goods transportation contractor's approval, subject to applicable qualification requirements or federal or state laws, rules or regulations, and pays the employees without reimbursement from the commercial goods transportation contractor (NYLL § 862-b(2)(i));

- the business entity has the right to perform similar services for others on whatever basis and whenever it chooses (NYLL § 862-b(2)(k)).

Juxtaposing Plaintiffs' contentions with respect to those five factors against the evidence in the record demonstrates the inappropriateness of summary judgment. While not addressed by Plaintiffs, evidence demonstrates that HDL satisfied all six of the remaining separate business entity test factors. *See HDL's Opp. SOF* ¶¶ II.1 – II.32.

**1. Class members enjoyed freedom from direction or control by HDL (NYLL § 862-b(2)(a)).**

Freedom from "control over the results produced or the means used to achieve the results" is the critical inquiry under the first criterion of separate business entity test. *See Matter of Turek*, 184 A.D.3d at 298-99. As addressed in Section III(A), the record contains numerous examples of individuals working at their own convenience, exercising their option to provide services to other companies, and the absence of a fixed schedule. *See HDL Opp. SOF* ¶¶ I.74, I.75, I.77, I.91, II.21-II.27. Decisions under the New York Labor Law involving the transportation industry find such facts indicative of an independent contractor relationship. *E.g., Franze,* 2019 WL 2866168, at *11; *Saleem,* 52 F. Supp. 3d at 544-45; *Browning,* 885 F. Supp. 2d at 601-607; *Velu v. Velocity Exp., Inc.,* 666 F. Supp. 2d 300, 307-308 (E.D.N.Y. 2009). Competing evidence creating further questions of fact exist as to the uniform requirements, interactions with retail customers, background checks, and product delivery demands that Plaintiffs point to as indicative of control. *See* ECF No. 149-1 at 20; *Thomas v. TXX Svs., Inc.*, 663 Fed. Appx. 86 (2d Cir. 2016) (overturning district court summary judgment in favor of independent-contractor status because "district court resolved the issues of fact" that should have been reserved for a jury and the "record demonstrates that there are issues of material fact").

In contrast to Plaintiffs' counsel's version of the facts, there is substantial evidence that uniforms identifying class members as "Sears" representatives were not required. Witnesses confirmed that class members could and did wear shirts with their own business name and logo on them. *HDL's Opp. SOF* ¶¶ I.32, I.33, I.34; *Rex Dep.* 33:3–6; 47:16-20; *Minors Dep.* 101:18-24 (describing dress code as "blue shirt, blue pants, black boots"); *Collins Dep.* 17:11-18:4 (had shirts emblazoned with "Collins Home Delivery" for his company's employees). In any event, Plaintiffs do not even allege HDL's name appeared on the shirts, and numerous decisions have held such attire requirements are not indicative of control.[5]

Class members also were not subject to standardized training by HDL. *HDL's Opp. SOF* ¶¶ I.60, I.61, I.70. In fact, class member Minors denied receiving any training from HDL. *Minors Dep.* 48:23-25. There was no set "script" on what to tell retail customers. *Rex Dep.* 91:10-92:16. And Blattenberger implemented his own system of training workers. *Blattenberger Dep.* 44:10-45:5.

Evidence in the record that class members made the ultimate decision on whether their companies hired employees contradicts the anecdotal testimony from two individuals that Plaintiffs' proffer. *HDL's Opp. SOF* ¶ I.86, I.88; *see also Utne v. Home Depot U.S.A., Inc.*, 2019 WL 3037514, at *6 (N.D. Cal. July 11, 2019) ("In light of these divergent experiences, one cannot safely extrapolate the testimony of some class members to the class as a whole at the summary

---

[5] *FedEx Home Delivery v. NLRB*, 563 F.3d 492, 501 (D.C. Cir. 2009) (requirement to wear uniform intended to ensure customer safety and was not indicative of putative employer's control); *Browning*, 885 F. Supp. 2d at 607 ("[T]hat the Plaintiffs were required to wear uniforms; put logos on their vehicles; remain in frequent contact with the Defendants; and attend monthly meetings-- these are not dispositive and do not weigh against a finding of independent contractor status as a matter of law."); *DeSouza v. EGL Eagle Global Logistics*, 596 F. Supp. 2d 456, 464-65 (D. Conn. 2009) (wearing a uniform, having a logo on the truck, and providing paperwork to the defendant is "ancillary to [a contractor's] independent driving" and not inconsistent with independent-contractor status).

judgment stage.")(cleaned up). Though Sears requires a criminal background check for "individuals who enter the Customers' residence or premises" [ECF No. 151-2 at 3], this does not demonstrate HDL's control over class members' ability to hire their own drivers and helpers. *See Martin v. Sprint United Mgt. Co.*, 273 F. Supp. 3d 404, 423 (S.D.N.Y. 2017).

The same is true regarding Innovel—not HDL—arranging orders for delivery according to retail customers' delivery location and preferred time window. *See HDL's Opp. SOF* ¶ I.48. Moreover, these time windows were not cast in stone. Kloppel testified that he could change the order and timing of deliveries. *Kloppel Dep.* 123:22-124:19. Regardless, a window of time for delivery to the customer also is not indicative of control. *See Browning,* 885 F. Supp. 2d at 602. Suggesting that to provide services as an independent contractor, the contract carrier must be free to perform deliveries when it chooses—whether that be at midnight, 3 a.m., or the next week— demonstrates the inanity of concluding otherwise.

Plaintiffs point to other alleged facts that are disputed by class member testimony:

▪ *Truck appearance* [ECF No. 149-1 at 15]. HDL did not control the appearance of class members' trucks. *HDL's Opp. SOF* ¶¶ I.28, I.80, I.81. Some class members placed decals on them to advertise their businesses. *Kloppel Dep*. 106:15–22; *Minors Dep.* 145:17-146:12; *Traina Dep.* 42:17-43:7. Other trucks bore the logo of the rental company, such as Ryder, Penske or Enterprise. *See Bharath Dep*. 99:2-6.

▪ *Daily stand-up meetings* [ECF No. 149-1 at 6]. HDL Account Executives in Rochester and Syosset testified they have no "daily" meetings. *HDL's Opp. SOF* ¶ I.39. Class members also testified that they could choose to not attend meetings. *Id*. Class member Minors was in Florida for an extended period and did not attend any meetings during that time, though his company

continued to make deliveries for HDL in New York for approximately 22 months. *Minors Dep*. 104:14-106:12, 113:4-9.

- *Regular schedules* [ECF No. 149-1 at 6]. The contrasting testimony regarding scheduling indicates the class members were not subject to report at a specific time each morning. *HDL's Opp. SOF* ¶ I.91. Also, since they had no obligation to personally perform services at all, some class members' companies hired additional drivers so that the class member could take time off. *Id.* Minors testified to a very liberal schedule, describing that he took time off "however I felt like it." *Minors Dep*. 72:21-73:7.

- *Distribution of manifests* [ECF No. 149-1 at 6, 15]. Not all class testimony matches with Plaintiffs' claim that "HDL assigns routes directly to each driver." *HDL's Opp. SOF* ¶¶ I.29, I.47, I.49, I.50, I.52, I.90. Collins testified that for a period of time, he assigned the manifests to his company's employee drivers. *Collins Dep*. 32:8-16, 43:6-44:9. Plaintiff Kloppel similarly testified that he had the final say in assigning work to Kloppel Deliveries' employees. *Kloppel Dep*. 100:25-101:9. Wilson and Blattenberger admitted that delivery teams or contractors picked their own routes at times. *Blattenberger Dep*. 48:8-49:15; *Wilson Dep*. 33:17-24.

- *Changing routing and refusing manifests* [ECF No. 149-1 at 6, 15]. Some class members indicated that they could refuse a route and change the order of deliveries, contrary to Plaintiffs' assertion to the contrary. *HDL's Opp. SOF* ¶¶ I.50, I.53. Blattenberger described a process for changing the order of deliveries on manifests – delivery teams changed the order of deliveries after they made "pre-calls" and "people didn't answer or said they needed to reschedule." *Blattenberger Dep*. 51:22-53:4. Other class members described that they could and did turn down offered work. *Collins Dep*. 53:7-16, 82:25-83:17 (turned down 15-20% of work opportunities in Buffalo because

could not find workers willing to travel out-of-town); *Minors Dep.* 55:7-56:2 (stopped accepting work in Rochester because "weren't making a profit" but continued deliveries in Syosset).

- *Customer ratings used to discipline drivers* [ECF No. 149-1 at 7]. Plaintiffs' gratuitous characterization of evidence does not support the assertion that any class member was "disciplined" by HDL. *HDL's Opp. SOF* ¶¶ I.41, I.42. To the contrary, Collins testified that he personally punished his own employees for poor performance. *Collins Dep.*90:16-91:10.

- *Calls from HDL during day* [ECF No. 149-1 at 6-7]. Plaintiffs' counsel makes sweeping generalizations about HDL's communication with class members' company-drivers based on statements from two HDL employees, which do not hold up under further scrutiny. *HDL's Opp. SOF* ¶ I.58. Bharath testified that he had no reason to contact HDL unless his teams encountered problems while making a delivery. *Bharath Dep.* 101:4-102:22. And Wilson testified that his drivers would call Innovel customer service if there was an issue with a delivery. *Wilson Tr.* 164:9-22.

- *Insurance* [ECF No. 149-1 at 6, 15]. Assertions about insurance purchases made by class members who responded to discovery gloss over their testimony regarding selection of their own insurance based on varying considerations of price, coverage, convenience and/or familiarity with the insurance carrier. *Traina Dep.* 102:25-103:22.; *Collins Dep.* 22:8-21; 70:6-71:8; *Bharath Dep.* 50:19-51:21; *Samuels Dep.* 49:10-24, 51:8-12.[6] It also ignores that both federal and New York law require motor carriers, like the Plaintiffs' businesses, to obtain insurance coverage.[7]

---

[6] *See also, Luxama v. Ironbound Express Inc.*, 2012 WL 5973277, at *4 (D.N.J. June 28, 2012) (finding that courts using the economic reality test under the FLSA focus on whether the independent contractor selects "the insurance company that will provide coverage").

[7] 49 C.F.R. § 387.1 (describing "minimum levels of financial responsibility required to be maintained by motor carriers of property operating motor vehicles in interstate, foreign, or intrastate commerce"); 17 N.Y.C.R.R. § 855.1 (requiring "[e]very common and contract motor

Plaintiffs cannot spackle over these issues of material fact with platitudes that "nearly every other court has found that delivery drivers were employees under the right to control test." [ECF No. 149-1 at 16]. Looking past Plaintiff's "right to control" mantra to decisions interpreting New York law, it is beyond dispute that the <u>actual</u> control exercised by the alleged employer informs the employment determination. *Bynog*, 1 N.Y.3d at 198, *Saleem*, 52 F. Supp. 3d at 544. That other courts rendered decisions based on different facts and law, primarily under California and Ninth Circuit authority [ECF No. 149-01 at 16 n.7], does nothing to alter the record in this case.

A cursory read of Plaintiffs' cases demonstrates their inapplicability. Defendant in *Anderson v. Home Delivery America.com* "[did] not contest the relevant facts" and accordingly no relevant analysis exists in the opinion. 2013 WL 6860745, at *1 (D. Mass. Dec. 30, 2013). Numerous facts established in *Hargrove v. Sleepy's, LLC* are nonexistent here, including (1) the requirement to maintain Sleepy's logo on the truck; (2) extensive training, (3) field audits and truck inspections; and (4) being given a "specific route to follow." [ECF No. 149-02]. The *Echavarria v. Williams Sonoma, Inc*. case supports denying Plaintiffs' Motion. 2016 WL 1047225, at *7 (D.N.J. Mar. 16, 2016) (concluding material facts existed on employment status with respect to both independent contractors and second drivers/helpers of a motor carrier under New Jersey law). Distinct facts were presented in *Scantland v. Jeffry Knight, Inc*. that do not exist here, including training, site checks of plaintiffs' work, plaintiffs being required to request time off, the ability to "hire and manage others" being "illusory", and the inability to "negotiate the prices for jobs." 721 F.3d 1308, 1314-17 (11th Cir. 2013).

---

carrier of property under the jurisdiction of the commissioner transporting property for compensation" to obtain insurance for various potential losses).

And both of the New York unemployment insurance opinions, *In re Gill*, 22 N.Y.S.3d 621 (N.Y. App. Div. 3d Dept. 2015), and *Matter of Doster*, 132 N.Y.S.3d 176 (N.Y. App. Div. 3d Dept. 2020), *leave to appeal dismissed*, 170 N.E.3d 452 (N.Y. 2021), involved reviews of agency employment status determination. Those "decision[s] will be upheld if supported by substantial evidence." *Matter of John Lack Assoc., LLC (Commissioner of Labor)*, 112 A.D.3d 1042, 1043, (3d Dep't 2013). That the *In re Gill* and *Matter of Doster* courts sustained agencies' employment determinations under this considerably less stringent standard than summary judgment does little to inform the analysis required here. Any conclusion to the contrary would abrogate HDL's right to have the Court draw all inferences in its favor and make its ruling as a matter of law on a record of undisputed material facts specific to this case. *See Lubermens Mutual Casuality Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010).

### 2. Class members owned or leased capital goods, subject to profit and loss (NYLL § 862-b(2)(d)).

Because class members provided all necessary equipment for their transportation operations, their capital investments in their businesses are undisputed. *See HDL Opp. SOF* ¶¶ II.2-II.15. The trucks owned or leased by class members, along with dollies, padding, straps, and other supplies necessary to make deliveries into customers' homes, make up the capital goods that are relevant for consideration. *See, e.g., Browning*, 885 F. Supp. 2d at 608 (finding utilization of "own vehicles" and "all of their own tools and supplies" favored independent contractor status under analogous "investment" factor of FLSA "economic reality" test); *see also Saleem*, 52 F. Supp. 3d at 536 (recognizing similarity of FLSA and NYLL analysis of independent-contractor determination, and that "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa).") (citing *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 912 (S.D.N.Y.2013)).

Plaintiffs' argument that class members must own or lease the goods they are delivering [ECF No. 149-01 at 22] is misplaced. The Fair Play Act's separate business entity test, like other misclassification tests, aims to suss out whether a putative employee is economically dependent on and within direct control of the alleged employer. *See, e.g., Velu*, 666 F. Supp. 2d at 306. That Innovel or its retail customers own merchandise being transported in class members' trucks has no bearing on class members' investment in their businesses.

Some class members' companies rented trucks on a week-by-week basis, others entered into long term leases. *HDL's Opp. SOF* ¶¶ II.2-II.10. During ECC Movers' contract with HDL, it operated 5 to 7 leased trucks per day. *HDL's Opp. SOF* ¶ II.6. ECC Movers reported more than $584,889 in expenses on its 2014 tax return alone, including $160,000 in expenses for "Vehicles, machinery, and equipment". *HDL's Opp. SOF* ¶ II.7. Blattenberger's company operated one leased truck but "quickly moved to two trucks" and "flexed up to four trucks" *HDL's Opp. SOF* ¶ II.8. Collins' company initially had "three to four" rented trucks available for servicing the HDL account, but added more to "increase [its] revenue". *HDL's Opp. SOF* ¶ II.10. The increased number of trucks resulted in Collins' company employing more people, including HDL manager Michael Rex for "three, four years roughly." *Collins Dep.* 20:25-21:6; *see also* 22:22-23-22, 93:11-24. And still others decided to rent trucks to save costs or simply as a matter of preference. *HDL's Opp. SOF* ¶ II.9.

Class members who opted for their companies to purchase trucks did so with cash or financing. *HDL's Opp. SOF* ¶¶ II.2-II.4. Bonilla Ramos Delivery Inc.—owned by class member Eladio Bonilla Ramos—owned a truck prior to contracting with HDL and purchased a second truck to service the HDL account. *Ramos Dep.* 31:12-32:5, 46:22-47:17. Minors Contracting LLC—owned by class member Samora Minors—purchased four trucks, after leasing two others, which

facilitated ongoing profit as it "would buy and sell trucks or if [he] bought a truck broke down [he] would part it out and sell it and buy another truck." *HDL's Opp. SOF* ¶ II.4.

The profits and losses of class members' ventures, including whether they owned or leased their trucks and other equipment necessary for the transportation services they agreed to provide, are apparent from examining tax documents and deposing class members. *See HDL's Opp. SOF* ¶ I.75. In contrast with the home workers and novelty gift makers in the two cases Plaintiffs cite [ECF No. 149-1 at 23], Plaintiffs' tax returns reveal that they each had meaningful opportunities to make or lose money— *HDL's Opp. SOF* ¶ I.75. Like the *Kinney v. Artist & Brand Agency LLC* decision, an individual "declar[ing] himself to be an independent contractor on his Schedule C Forms should carry some weight in Defendant's favor. The record shows that under the penalty of perjury, Plaintiff not only informed the IRS that he was a self-employed, independent contractor, but also claimed substantial tax benefits, in the form of business-expense deductions, on that basis. 2015 WL 10714080, at *18 (S.D.N.Y. Nov. 25, 2015), *adopted by* 2016 WL 1643876 (S.D.N.Y Apr. 22, 2016). Examples of those tax deductions included over $4,000 in entertainment that Collins' company deducted for the cost of bringing ten of his employees to a Buffalo Bills game. *Collins Dep*. 65:16-66:10.

Class members' testimony and tax returns destroy Plaintiffs' narrative that Contract Carriers "have no meaningful opportunity for profit" or that profit increased "only through working more hours or more efficiently." [ECF No. 149-1 at 22-23]. Blattenberger described that his operation would "flex up" when needed by renting another truck to meet demand and increase profits. *HDL's Opp. SOF* ¶ I.75. And Minors used his investments in four trucks to create revenue, selling parts from broken-down trucks, which provided funds to purchase his next trucks. *HDL's Opp. SOF* ¶

II.4. Collins decided to rent trucks to save expenses, which in turn increased his profitability. *HDL's Opp. SOF* ¶ II.10.

### 3. Delivery services were provided by class member businesses to other entities while contracted with HDL (NYLL § 862-b(2)(e)).

Class members performed transportation services for others whenever they chose and on their own terms. Plaintiff Wilson's company serviced two appliance retailers—Appliance Associates and Orville Home Appliances—along with HDL, with costs shared among the three business accounts. *HDL's Opp. SOF* ¶ I.75. Beginning in 2015, Wilson decided to reduce the number of trucks and days ECC Movers operated for HDL due to lower profit compared to its other accounts. *Id*. ECC Movers' work for Appliance Associates and Orville Home Appliances grew to the point that those accounts assumed the majority of ECC Movers' revenue in 2016. *Id*. In ECC Movers' final year contracting with HDL, approximately $600,000 of $823,792 in reported revenue came from companies other than HDL. *Id*.

Minors Contracting LLC provided delivery work for two other companies in Connecticut and New Jersey, respectively, directly refuting Plaintiffs' claim that class members could not "work for other businesses on their days off." *HDL's Opp. SOF* ¶ I.75; *Minors Dep.* 95:18-96:18; [ECF No. 149-01 at 7, 21].

Traina Services also contracted with Spirit Delivery and MFM while providing services to HDL. *HDL's Opp. SOF* ¶ I.75. In 2016 alone, Traina Services reported more than $400,000 in gross receipts from contracts with companies other than HDL, proving false Plaintiffs' assertion that class members were solely dependent on HDL for income. *Compare HDL's Opp. SOF* ¶ I.75 *with* [ECF No. 149-01 at 7, 21, 22].

Others advertised their businesses to the general public. *HDL's Opp. SOF* ¶ I.78. Class members placed their business names on their trucks and Collins had his own shirts made with his

company name and logo, proving incorrect Plaintiffs' contention that class members were "prohibited" from doing precisely that. *Compare HDL's Opp. SOF* ¶¶ I.35, I.79, I.80, I.81, *with* [ECF No. 149-01 at 21].

### 4. Class members' businesses hired employees subject only to qualification requirements or federal law (NYLL § 862-b(2)(i)).

Plaintiffs operated multiple trucks, retaining drivers and helpers—who Kloppel Deliveries and ECC Movers hired, trained, supervised and paid—to provide delivery services to Innovel's retail customers. *HDL's Opp. SOF* ¶ I.86. Kloppel's resume touts his "[d]irect management of employees" while operating Kloppel Deliveries for HDL. *Id.* Class member Collins testified it was his responsibility as President of Collins Home Delivery to "arrange for the trucks, hire the people, [and] do the payroll". *Collins Dep.* 15:15-21.

Class members testified that they advertised open positions on Craigslist and recruited employees by word of mouth for their businesses. *HDL's Opp. SOF* ¶ I.86. Wilson accepted HDL's referrals of potential employees because he wanted his company, ECC Movers, to run more trucks for higher revenue. *Id.* At times, class members hired workers to allow for greater work flexibility for themselves. *Id.*

Class members hire or contract with drivers and helpers to provide delivery services to Innovel. Bharath testified that he interviewed and made the ultimate decision on whether his company, Lighthouse Trucking Inc., hired drivers or helpers. *Bharath Dep.* 31:7-17. Blattenberger testified he hired one friend and another long-time acquaintance, confirming it was his decision to hire these workers. *HDL's Opp. SOF* ¶ I.86. Samuels testified that whether his company hired someone without HDL's involvement depended on the worker—it was his decision to hire his ex-wife's nephew, but a helper who had worked for another Contract Carrier "had to be cleared by HDL." *Id.* And Collins testified that as President of Collins Home Delivery, he had responsibility to "hire

the people" subject only to Innovel's required criminal background check and drug testing provided by federal law. *Id. see also* 49 C.F.R. Pt. 41 (Federal Motor Carrier Safety Regulation ("FMCSR") drug and alcohol testing requirements), 49 C.F.R. Pt. 391 (FMCSR background investigation requirements for drivers); N.Y. Transp. Law § 137 (declaring "policy of this state to regulate transportation by motor carrier in such manner as to…promote safe…service to motor carriers."). Based on this testimony, a jury could find that class members' businesses hire employees subject only "to applicable qualification requirements or federal or state laws, rules or regulations." NYLL § 862-b(2)(i).

### 5. Class members had the right to perform services for others (NYLL § 862-b(2)(k)).

Plaintiffs double down on the false premise that class members "are required to work full-time for HDL" despite multiple witnesses providing testimony to the contrary. [ECF No. 149-1 at 22]; *HDL's Opp. SOF* ¶¶ I.74, I.75, I.77. Wilson's testimony confirmed that ECC Movers made deliveries for two appliance retailers along with HDL. *HDL's Opp. SOF* ¶I.77. Those other accounts became the majority of ECC Movers' work beginning in 2016. *Id.* Accordingly, Wilson had periods of time when HDL Delivery Settlement Statements show he drove less than 3 days a week. *Id.* Others, like Minors, decided to operate his business from Florida for approximately 22 months, to work "back and forth" between states, and took time off "[h]owever [he] felt like it." *Minors Dep.* 73:5-7, 104:14-106:12, 107:17-22, 113:4-9.

Plaintiffs may counter that they have proposed a new class definition to HDL that would limit the class to those who worked "full-time". [ECF 149-1 at 1 n. 1; ECF No. 147-4 at 20 (describing that a class member "qualifies under the class definition for some periods" but may not "qualify at other times because they are not driving full time" when applying arbitrary "3 days a week as the minimum number of days to qualify as having driven full time in a given week")]. Three principal problems exist with this strawman argument. First, modifying a class definition requires a Court

order, and cannot be done unilaterally by Plaintiffs' counsel who are supposed to be representing

the interests of all class members. Fed. R. Civ. P. 23(c)(1)(C); *E.B. v. New York City Bd. of Educ.*,

2005 WL 8156773, at *3 (E.D.N.Y. June 30, 2005). Second, many class members who elected to

provide services for companies other than HDL or otherwise not service the contract with HDL

"full-time" still signed the ICA that Plaintiffs proffer as the lynchpin of their evidence that can

purportedly prove employment classification. This reality undercuts the mirage of uniform control

Plaintiffs pin to the ICA.[8] Third, by artificially excluding such class members or periods of non-

full-time work on the HDL account, Plaintiffs are attempting to manufacture the appearance that

it was HDL, not their own personal choices, that caused them to perform delivery services on a

full-time basis. In other words, what makes them different in this respect is the <u>choices they made</u>

with the opportunity afforded them under the ICA (or Freight Forwarder / Carrier Agreement). *See*

*Indus. Claim Appeals Office v. Softrock Geological Svcs., Inc.*, 325 P.3d 560, 565 (Colo. 2014)

(rejecting test for employment status that turned on "whether the individual actually provided

services for someone other than" the alleged employer because such a test "subject[ed] an

employer unfairly to the decisions of the putative employee and an unpredictable hindsight

review").

    Likewise, HDL's agreement with Innovel on "co-loading" does not affect any class member's

right to perform services for other companies. *HDL's Opp. SOF* ¶ I.77. Specifically, Plaintiffs do

not allege that HDL had any tangible uniform policy on loading vehicles that diminished class

members' opportunities to work for other companies. In fact, class members operated multiple

trucks for other companies without issue. *HDL's Opp. SOF* ¶¶ I.74, I.75, I.77. And anecdotal

---

[8] In mid-2017, HDL stopped utilizing the ICA, and began contracting with class member's
businesses under a Freight Forwarder / Carrier Agreement. [ECF No. 109-5 at ¶ 10].

stories from one class member about the operational hours of Innovel's warehouse in Rochester adds nothing to the analysis. [ECF No. 151-15 at 5]; *HDL's Opp. SOF* ¶ I.84.[9]

**D. Questions of fact exist on the Fair Play Act's alternative option for demonstrating independent-contractor status under the ABC Test.**

An individual's independent contractor status under the Fair Play Act may be established through either the three-factor "ABC" test (NYLL § 862-b(1)(a)-(c)) or the eleven-factor separate business entity test. NYLL § 862-b(2)(a)-(k)). [*See* ECF No. 31 at 4 (citing NYLL § 862-b(2)(a-k)) ("If the employer can establish that the worker meets all eleven factors of the separate business entity test, . . . the employer may deem the business entity an independent contractor.")]. The Court need not address the ABC test at all, given the existence of a question of fact on the eleven-factor separate entity test addressed above. But, if the Court nonetheless chooses to analyze the ABC test, denial of Plaintiffs' Motion is appropriate on this independent and alternative basis for the following reasons.

The "A" prong of the ABC test asks if "the individual is free from control and direction in performing the job, both under his or her contract and in fact." NYLL § 862-b(1)(a). As discussed in the context of the control prong of the Fair Play Act separate business entity test above [Section II(C)(1)], significant evidence of the absence of control exists here. A question of fact—at a minimum—must be found to exist, given that competing evidence.

The second prong of the test requires that "the service must be performed outside the usual course of business for which the service is performed." HDL satisfies this prong because the brokerage

---

[9] Collins' declaration regarding the warehouse hours shows no widespread or common practice that is relevant on summary judgment. There were only three other class members who Plaintiffs claim personally provided services in Rochester during the two-year period implicated by Collins' declaration – Michael Kloppel, Orlando Mack, and David Botsford. *HDL's Opp. SOF* ¶ I.84. Plaintiff Kloppel has not corroborated Collins' declaration and the latter two witnesses declined to cooperate in class discovery. *Id.*

services it provides as a third-party logistics company are distinct from the motor carrier services class member's offer. A "motor carrier" "provid[es] motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "broker" is someone "other than a motor carrier…arranging for transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). "The difference is, essentially, between those who provide the transportation service (motor carriers) and those who arrange it (brokers)." *Overton v. Uber Technologies, Inc.*, 333 F. Supp. 3d 927, 934-35 (N.D. Cal. 2018). Indeed, federal regulations, under the heading of "[m]isrepresentation," command that "[a] broker shall not, directly or indirectly, represent its operations to be that of a carrier." 49 C.F.R. § 371.7 (2005). Accordingly, a broker has been appropriately characterized by the United States Supreme Court as simply a middleman in the transportation transaction. *Reiter v. Cooper*, 507 U.S. 258, 261 (1993) (describing "the business of brokering motor carrier transportation" as "essentially involv[ing] serving as a middleman between motor carriers and the shipping public.").

Finally, as a third-party logistics provider, HDL specializes in integrated operations, warehousing and transportation services that are scaled and customized to customers' needs based on market conditions, such as demand and delivery service requirements for products and materials. By leveraging HDL's logistics expertise, businesses can reduce transportation costs, increase efficiency in product movement, and focus on their core business. No evidence proffered in the case suggests these are services that Plaintiffs or class members provided.

The "C" prong assesses whether "the individual is customarily engaged in an independently established trade, occupation, profession, or business that is similar to the service at issue." NYLL § 862-b(1)(c). Plaintiffs do not address this issue or otherwise proffer an evidentiary basis to find for the entire class on this factor. This presumably is because there are

numerous examples of class member businesses existing prior to engaging with HDL and continuing on after termination of their contract with HDL. *HDL's Opp. SOF* ¶¶ II.1, 3; *Wilson Dep.* 13:12-19; *see also Chebotnikov v. LimoLink, Inc.,* 2017 WL 2888719, at *8 (D. Mass. July 6, 2017) (finding question of fact existed specific to the C-prong based on evidence "that the drivers had been in the business for some time, that they formed separate corporations, that they performed other chauffeur services, and that the drivers owned, maintained, and insured their own vehicles."); *see also Echavarria,* 2016 WL 1047225 at *13 (denying summary judgment on C-prong based on defendant's arguments that plaintiff performed furniture deliveries with his trucks before and after his time with defendant).

### E. The Court should ignore Plaintiffs' strawman argument about the corporate form of class member businesses.

The reasons for denying Plaintiffs' summary judgment motion have nothing to do with the corporate form of class members' businesses, and the Court can, in turn, ignore the three pages Plaintiffs, in "anticipat[ion] that HDL" would advance that argument, devote to this issue. [ECF No. 149-1 at 23-26]. This Memorandum references class member business names at various points where the record reflects those class member businesses (i) contracted with HDL, (ii) filed tax returns, (iii) issued payments to class members and the company's workers, and (iv) placed their respective company names on trucks and shirts. *HDL's Opp. SOF* ¶¶ I. 79, II.18-20, 28-29, 33. HDL's understanding from the Court's *Padovano v. FedEx Ground Package Sys., Inc.,* 2016 WL 7056574, at *4 (W.DN.Y. Dec. 5, 2016) decision is that the corporate form has little or no impact on the Fair Play Act analysis, and in turn HDL does not argue otherwise here. By referring to the names of businesses the class members owned, HDL intends nothing more than to accurately cite the record in this case. Accordingly, the Court can safely discard the litany of cases and arguments that Plaintiffs advance on this point.

## IV.   CONCLUSION

Questions of facts on the threshold independent contractor versus employee issue preclude partial summary judgment in this case, given the conflicting evidence that exists on issues relevant to that determination. HDL is not aware of any court that has ever found otherwise where the record reflects (1) individuals with companies—some of which have co-owners that share in the company profits—that operate multiple trucks for multiple businesses; (2) tax filings for allegedly misclassified individuals that have millions of dollars in gross revenue and business tax deductions reported (some from work with the alleged employer, and some from other business accounts); (3) individuals so free from control that they could leave the state for 22 months while their operation continued to run, generating millions of dollars in revenue; and (4) an individual whose own resume identifies him as owner of a business, never references HDL, and summarizes the work for his business, in part, as "[d]irect management of employees, determined workdays, assigned duties, negotiated employee compensation rates." Because there is evidence from which a jury could reasonably reach an interpretation that Plaintiffs and class members were not employees, the Court should deny Plaintiffs' motion for partial summary judgment on employment status pursuant to the Fair Play Act.

Dated: October 15, 2021                    Respectfully submitted,

                                         **_/s/ Andrew J. Butcher_**
Andrew J. Butcher (*Pro Hac Vice*)
Jared S. Kramer (*Pro Hac Vice*)
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY
30 W. Monroe Street, Suite 1600
Chicago, IL 60603
312–255–7200

Emily A. Quillen
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY
777 Main Street, Suite 3400
Fort Worth, TX 76102
(817) 869–1700

Andrew R. Brehm
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY
330 E. Kilbourn Avenue, Suite 827
Milwaukee, WI 53202
(414) 219–8500

Rodney O. Personius
PERSONIUS MELBER LLP
2100 Main Place Tower
Buffalo, NY 14202
(716) 855–1050 x101

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2021, I served a copy of HomeDeliveryLink, Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment by electronic filing on all counsel of record in this case.

*<u>/s/ Andrew J. Butcher</u>*
Andrew J. Butcher, Esq.

4852-1956-7867, v. 18