UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MIKE KLOPPEL and
ADAM WILSON,
                          Plaintiffs,

                                                            Case # 17-CV-6296-FPG
v.

                                                            DECISION AND ORDER

HOMEDELIVERYLINK, INC.,
                          Defendant.
_____

## INTRODUCTION

Plaintiffs Mike Kloppel and Adam Wilson ("Plaintiffs") filed this class action on May 9, 2017, alleging that Sears Holding Corporation and Sears, Roebuck & Company (collectively, "Sears") and Defendant HomeDeliveryLink ("HDL" or "Defendant") misclassified them as independent contractors and took deductions from their wages in violation of New York Labor Law ("NYLL"). *See* ECF No. 1. On July 7, 2017, Plaintiffs filed an amended complaint. ECF Nos. 9, 10.

On February 28, 2018, the Court issued a Decision and Order granting Sears's motion to dismiss in full and granting in part and denying in part HDL's motion to dismiss the amended complaint. *See* ECF Nos. 12, 20, 31. HDL filed a motion for judgment on the pleadings, and, on November 18, 2019, the Court granted HDL's motion in part, dismissing Plaintiffs' claim for illegal kickback of wages under NYLL § 198-b. ECF No. 87. The only surviving claims are against HDL for (1) illegal deductions pursuant to NYLL § 193 and (2) record-keeping violations pursuant to NYLL § 195. *Id.*

Plaintiffs moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, ECF No. 98, and HDL moved for summary judgment pursuant to Rule 56, ECF No. 109. On June 3, 2020, the Court granted Plaintiffs' motion to certify a class and denied HDL's motion

1

for summary judgment. ECF No. 121. The Court approved a class notice, ECF No. 125, the notices were distributed to class members, and the case proceeded to class discovery. Class discovery has now concluded.

On September 7, 2021, HDL filed a motion to decertify the class action, ECF No. 147, and a motion to seal a document in support of that motion, ECF No. 148. The following day, Plaintiffs filed a motion for partial summary judgment, seeking a finding that they are "employees" of HDL for purposes of the NYLL. ECF No. 149. On September 14, 2021, Plaintiffs filed a motion to strike HDL's motion to decertify. ECF No. 153. The parties have fully briefed all four motions.

For the reasons set forth below, HDL's motion to seal[1] and motion to decertify the class are GRANTED. Plaintiffs' motion for summary judgment and motion to strike are DENIED AS MOOT.

## BACKGROUND

Plaintiffs established the following facts at the class certification stage, suggesting that all drivers were treated similarly by HDL. However, as the Court explains in more detail below, class discovery has revealed many differences in drivers' experiences that make proceeding as a class action untenable.

Plaintiffs delivered merchandise to customers' homes throughout New York State. Innovel Solutions, Inc. ("Innovel") warehouses merchandise for retailers. HDL is a third-party logistics provider that operates as a "freight-forward broker" for Innovel. ECF No. 121 at 2.[2] Plaintiffs and class members are contract carrier drivers (collectively, "class members" or "drivers") who, through

---

[1] HDL's unopposed motion to seal is granted because the documents it seeks to file under seal are tax returns. *Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 285 (E.D.N.Y. 2014) ("Tax returns are generally afforded special protection from public disclosure.").

[2] For ease of reference, all cites are to the document number assigned to the exhibits by the Court's electronic case filing system. The Court also uses the pagination automatically generated by that system.

business entities, contracted with HDL to deliver goods from Innovel. HDL's New York-based drivers—the class members—exclusively made deliveries of Innovel's merchandise. *Id.* In New York, HDL operates out of two facilities: one in Rochester and one in Syosset. *Id.* HDL also operated out of a facility in Buffalo until several years ago. *Id.*

According to Plaintiffs, Innovel's operating procedures were virtually identical in each location and HDL was required to follow Innovel's procedures and rules. *Id.* Similarly, according to Plaintiffs, HDL was responsible for "hiring," training, and onboarding drivers. *Id.* In addition, HDL required drivers to form, and operate under, a business entity. *Id.* at 3. Drivers were supervised by HDL account executives, who, according to Plaintiffs, applied HDL guidelines consistently across the facilities. *Id.* These account executives observed drivers loading trucks, held morning meetings with drivers, set drivers' schedules, and evaluated drivers' performance. *Id.* at 3-4. Plaintiffs insist that all drivers were required to wear the same uniform. *Id.* HDL used "Delivery Settlement Statements" to keep track of drivers' deliveries, pay them for their work, and make deductions. *Id.* at 4. According to Plaintiffs, these Delivery Settlement Statements accurately reflected a driver's hours worked, rates paid, gross wages, allowances, deductions taken, and net wages paid. *Id.* at 5.

## DISCUSSION

### I. HDL's Motion for Class Decertification (ECF No. 147)

#### A. Legal Standards

##### i. Standard for Class Certification and Decertification

Rule 23(a) sets out four threshold requirements for certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, Plaintiffs may only maintain a class action by demonstrating, pursuant to Rule 23(b), that: (1) bringing the claims as separate actions would create a risk of inconsistent or adverse adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply to the class in general, making injunctive or declaratory relief appropriate for the class as a whole; or (3) common questions of fact or law predominate over any individual questions and a class action is a superior method of efficiently and fairly adjudicating the matter. Fed. R. Civ. P. 23(b)(1)-(3). Plaintiffs proceed under subsection (3).

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Under that rule, "courts are required to reassess their rulings as the case develops." *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (quoting another source). "A court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (quoting another source), *aff'd*, 829 F.3d 260 (2d Cir. 2016). But a court "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012) (internal quotation marks omitted). Compelling reasons "include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* "The moving party in a decertification motion bears a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class." *Mazzei*, 308 F.R.D. at 106 (quoting another source). "Courts faced with a motion to decertify must also take account of the progression of the litigation." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (citation omitted).

        **ii.**       **Standard for Establishing the Merits of Article 6 Liability**

"Article 6 of the [NYLL] regulates the payment of wages by employers." *Pachter v. Bernard*

*Hodes Grp., Inc.*, 10 N.Y.3d 609, 614 (2008).  To prevail on a claim under Article 6 of the NYLL, "a plaintiff must first demonstrate that he or she is an employee entitled to its protections." *Lauria v. Heffernan*, 607 F Supp. 2d 403, 407 (E.D.N.Y. 2009) (quoting another source).  Second, a plaintiff must demonstrate "that their wages were withheld in violation of one of the substantive provisions of the Labor Law." *Contrera v. Langer*, 314 F. Supp. 3d 562, 568 (S.D.N.Y. 2018) (quoting *Michalek v. Amplify Sports & Entm't LLC*, No. 11 Civ. 508(PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012)).  Article 6 defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."  N.Y. Lab. Law § 190.  In other words, to ultimately prevail, Plaintiffs will need to prove, by class-wide evidence, that they were *employees* of HDL.

Prior to 2014, a worker who alleged misclassification as an independent contractor was an employee covered by Article 6 if he or she: "(1) worked at his/her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013).  After April 10, 2014, New York's Fair Play Act, requires an employer to classify "[a]ny person 'performing commercial goods transportation services for a commercial goods transportation contractor' . . . as an employee," and not as an independent contractor.  N.Y. Lab. Law § 862-b(1); *Padovano v. FedEx Ground Package Sys., Inc.*, No. 16-CV-17-FPG, 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) (quoting N.Y. Lab. Law § 862-b).  In other words, under the Fair Play Act, a delivery driver is presumed to be an employee.

However, a putative employer may rebut the employee presumption by satisfying either the "ABC Test" or the "Separate Business Entity Test."  Under the ABC Test, an employer must show that the worker: (1) is free from control and direction over the performance of his work; (2) performs work that is outside the usual course of business or is outside all of the employer's places of business,

5

unless the employer contracts with third parties to place employees; and (3) is in an independently established trade, occupation, profession, or business. N.Y. Lab. Law § 862-b(1)(a)-(c). If the employer can demonstrate that a worker satisfies all three conditions, it may treat him or her as an independent contractor instead of as an employee.

A putative employer who cannot satisfy the ABC Test can avoid liability if it can satisfy all 11 factors of the Separate Business Entity Test. Under that test, a business entity may be considered an independent contractor where all of the following criteria are met:

> (a) the business entity is performing the service free from the direction or control over the means and manner of providing the service, subject only to the right of the commercial goods transportation contractor for whom the service is provided to specify the desired result or federal rule or regulation;
>
> (b) the business entity is not subject to cancellation or destruction upon severance of the relationship with the commercial goods transportation contractor;
>
> (c) the business entity has a substantial investment of capital in the business entity, including but not limited to ordinary tools and equipment;
>
> (d) the business entity owns or leases the capital goods and gains the profits and bears the losses of the business entity;
>
> (e) the business entity may make its services available to the general public or others not a party to the business entity's written contract referenced in paragraph (g) of this subdivision in the business community on a continuing basis;
>
> (f) the business entity provides services reported on a Federal Income Tax form 1099, if required by law;
>
> (g) the business entity performs services for the commercial goods transportation contractor pursuant to a written contract, under the business entity's name, specifying their relationship to be as independent contractors or separate business entities;
>
> (h) when the services being provided require a license or permit, the business entity pays for the license or permit in the business entity's name or, where permitted by law, pays for reasonable use of the commercial goods transportation contractor's license or permit;
>
> (i) if necessary, the business entity hires its own employees without the commercial goods transportation contractor's approval, subject to applicable qualification requirements or federal or state laws, rules or regulations, and pays the employees without reimbursement from the commercial goods transportation contractor;

> (j) the commercial goods transportation contractor does not require that the business entity be represented as an employee of the commercial goods transportation contractor to its customers; and
>
> (k) the business entity has the right to perform similar services for others on whatever basis and whenever it chooses.

N.Y. Lab. Law § 862-b(2)(a)-(k).

### B. Analysis

HDL argues that the class action must be decertified because discovery has revealed that there are no longer questions of law or fact common to the class and that those questions of fact or law no longer predominate over individual questions. In other words, HDL argues that class discovery shows that there are differences in drivers' experiences with HDL such that Plaintiffs cannot establish on a class-wide basis that *all* drivers were "employees" of HDL using the tests described above. The Court agrees.

The Supreme Court has observed that the concept of commonality is easy to misunderstand since

> [a]ny competently crafted class complaint literally raises common "questions." . . . What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (emphasis in original). Thus, where liability must be established through individualized proof, courts have declined to find commonality. *See, e.g.*, *Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37-38 (2d Cir. 2015) (summary order) (plaintiffs failed to establish commonality in case brought by unpaid interns alleging that they were "employees" under FLSA and NYLL, where question of each intern's employment status involved "highly individualized inquiry").

"In the context of wage-and-hour disputes, courts have found commonality satisfied where the

claim is grounded in an employer's allegedly unlawful policy or practice." *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 99 (W.D.N.Y. 2019). "This is because, as *Dukes* instructs, the 'common contention' that an employer's unlawful policy or practice has caused the class's injuries is 'of such a nature that it is capable of classwide resolution.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).

"[T]he predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting another source). The requirement's purpose is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (internal citations omitted).

At the class certification stage, the Court acknowledged that "HDL's liability hinges on whether it misclassified the putative class member as independent contractors. That question can be answered by using [tests from the NYLL] to, essentially, determine whether HDL had control over the putative class members such that they should be considered employees rather than independent contractors." ECF No. 121 at 18. Citing uncontroverted evidence of HDL's across-the-board policies described above that purport to retain the right to control multiple aspects of the drivers' work, the Court concluded that "the evidence before the Court strongly suggests that, regardless of whether contract carrier drivers are employees, they were all treated similarly by HDL," such that common

issues of law and fact predominate. *Id.*

But the evidence now before the Court paints a different picture.[3] Tax returns disclosed during discovery and class member testimony demonstrate that common evidence cannot answer many of the questions relevant to whether HDL had control over the drivers. For example, HDL claimed that it "hired" drivers. But there is conflicting testimony about HDL's role in hiring. Driver Michael Rex testified that *he* hired helpers to work for him and that those helpers simply had to undergo a background check with HDL. ECF No. 151-4 at 17. Similarly, driver Moses Bharath testified that *he* was "always the person who decided whether [he] . . . would hire any other driver's [sic] or helpers" and that no one else had "input into that decision." ECF No. 151-8 at 95. Plaintiffs try to downplay these discrepancies, arguing that HDL still retained the ultimate authority to approve hiring decisions. But the testimony seriously calls into question that blanket assumption.

HDL asserted at the class certification stage that HDL required that drivers wear HDL-approved uniforms. But at least one driver "put his company name on his shirts." ECF No. 147-1 at 9. Driver Alex Dunlop testified that drivers had to wear blue but "were allowed to put their own logo on their shirts if they chose to." ECF No. 151-5 at 18. Rex also testified that he was not told to hold himself out as an Innovel or HDL employee; rather, he simply introduced himself to customers using his own name. ECF No. 151-4 at 24. Despite Plaintiffs' claims that HDL strictly controlled training, routes, and deliveries through daily meetings, Dunlop testified that although there were daily meetings, HDL did not require drivers to interact with customers in a certain way. ECF No. 151-5 at 18. And, although some drivers testified that HDL strictly controlled their work schedule, ECF No. 151-11 at 13 (driver Eladio Ramos testified that he "couldn't say no" to work offered by HDL), others testified

---

[3] Here, where possible, the Court cites the deposition exhibits Plaintiffs filed in support of their motion for partial summary judgment rather than the deposition exhibits HDL filed in support of its motion for class certification. Both parties filed many of the same exhibits, but Plaintiffs filed each deposition transcript separately, making them more straight-forward for the Court to cite.

that they could decline work, ECF No. 147-5 at 273 (driver Samora Minors testified that he could decline work and take time off "[h]owever I felt like").

Similarly, HDL claimed that drivers were prohibited from making deliveries for other companies, but tax returns show that drivers worked for companies other than HDL, earning hundreds of thousands of dollars in outside income. *See, e.g.*, ECF No. 147-5 (driver David Trania testified that he made $400,000 from a company outside HDL while under contract for HDL). And drivers testified that they or their businesses delivered for other companies while under contract with HDL. ECF No. 147-5 at 285 (Minors testified that while he contracted with HDL he contracted with another company); ECF No. 147-5 at 658-61 (Traina testified that he contracted with at least one other delivery company while under contract with HDL); ECF No. 151-11 (Ramos testified that he was a "contractor" for HDL and believed that he worked for another delivery company). HDL claimed that drivers were prohibited from soliciting customers, but tax returns show that some drivers spent money on advertising aimed at growing their businesses outside of HDL work. ECF No. 147-5 at 369-70 (Minors testified that he advertised); ECF No. 147-5 at 682 (Trania advertised for employees). HDL insisted that drivers' expenses were dictated by HDL's uniform independent contractor agreements with those drivers, but tax returns demonstrate that some drivers made unique capital contributions and investments to the company operations. ECF No. 147-5 at 754-55 (Trania testified that he rented equipment on a weekly basis). Finally, HDL claimed that it prohibited drivers from soliciting HDL's customers for a year after termination, but many class members delivered for HDL customers within the non-compete time. ECF No. 147-5 at 657-59 (Trania testified that he continued work in the same business entity after terminating contract with HDL); ECF No. 147-5 at 239 (Minors testified to the same).

Critically, it appears from drivers' testimony that there is no common proof of wages. At the class certification stage, Plaintiffs argued persuasively that Delivery Settlement Statements showed

10

the work each driver personally performed. Those Delivery Settlement Statements could then be used to calculate the "wages" each driver earned for the labor they provided. However, at his deposition, driver Anthony Blattenberger testified that "for the most part [HDL] did not get [Delivery Settlement Statements] right" so it is impossible to know exactly how many days per week he actually drove a truck for HDL. ECF No. 151-13 at 17 ("Q. Looking at [the Delivery Settlement Statement] is there any way of determining how many days of this week you actually drove? A. No. Not to my knowledge."). Moreover, drivers did not compensate themselves based on the services *they* actually rendered; rather they often paid themselves whatever was left over after their expenses were paid. *See, e.g.*, ECF No. 15-20 at 13 (driver Michael Collins testified that he paid himself $400 per week regardless of the work he performed). In other words, it would be nearly impossible to determine how much a driver earned for the deliveries he or she made, which is required to determine "wages" under the NYLL. *See* N.Y. Lab. Law § 190 (defining wages as "the earnings of an employee for labor or services rendered").

This case is strikingly similar to *Holick v. Cellular Sales of New York, LLC*, No. 12-CV-584, 2019 WL 187716 (N.D.N.Y. Apr. 26, 2019). There, the court declined to certify an NYLL class and FLSA collective of salespeople. In *Holick*, as here, the "record shows significant diversity among the [p]laintiffs with regard to a number of important factors concerning the nature of their relationship with [d]efendants," *i.e.*, the "the determination as to [d]efendants' degree of control over each [p]laintiff is highly personalized . . . and therefore is not amenable to common proof." *Id.* at *5.

Plaintiffs in both cases testified that some of their practices were different from company policy. For example, like here, plaintiffs in *Holick* classified and treated their companies differently for tax purposes. Some plaintiffs in *Holick*, like some Plaintiffs here, testified that they retained the ability to make hiring decisions. *Id.* at *6. Similarly, like here, plaintiffs there had divergent practices when it came to investments in equipment, supplies, and advertising. *Id.* at *5. Importantly, in both

11

cases, plaintiffs testified that despite policies to the contrary, they obtained outside employment. *Id.* at *6. The *Holick* court ultimately declined to certify a class because determining whether plaintiffs were employees would require a "highly individualized, plaintiff-specific analysis . . . to evaluate the 'economic realities' of each Plaintiff's experience." *Id.* at *7.

This case is also similar to *Saleem v. Corp. Tranps., Ltd.*, No. 12 Civ. 8450, 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013). There, the court refused to certify a NYLL class of drivers when, like here, some of the drivers had private customers and drove for competitor companies, while others did not. The court found that "[t]hese differences among drivers are likely to be significant—and could even be outcome determinative—given the nature of the inquiry of New York law." *Id.* at *5. The court concluded that the common question of whether the drivers "were misclassified as independent contractors . . . will not yield a common answer. Instead, answering that question as to each driver will require a fact-specific and driver-specific examination of the degree of control that [defendant] exercised in fact." *Id.* at *6. Accordingly, the court found that plaintiffs had failed to carry their burden to prove the commonality element had been met.

So too here. The discrepancies among at least some Plaintiffs' testimony shows that the central question in this case—whether Plaintiffs were employees or independent contractors—would require an intensive review of each Plaintiff's relationship with HDL. While some Plaintiffs may have been under close HDL control, others seem to have enjoyed a significant degree of autonomy. Such a review is not possible on a class-wide basis. In other words, there are "significant material differences among the Plaintiffs that would unreasonably impede Plaintiffs' ability to present common proof that is representative of all of the Plaintiffs' experiences." *Id.* at *8; *Griffith v. Fordham Fin. Mgmt.*, No. 12-CV-1117, 2016 WL 354895, at *2-4 (S.D.N.Y. Jan. 28, 2016) ("Determining whether Plaintiffs were employees or independent contractors is not capable of resolution by classwide proof, and will instead require highly individualized inquiries.").

Plaintiffs argue that, despite these differences, *all* Plaintiffs were subject to HDL's classification of them as independent contractors and that this is sufficient to establish commonality and predominance. But courts have found that such a uniform, common scheme is *not* sufficient to establish a class, where, as here, Plaintiffs' relationships with the alleged employer varied greatly. "Although it can be evidence of similarity, it is well established that blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties. Neither is it dispositive that plaintiffs were subject to uniform corporate polices and received uniform training." *Stevens v. HMSHost Corp.*, No. 10-CV-3571, 2014 WL 4261410, at *5 (E.D.N.Y. Aug. 27, 2017) (quoting another source).

Plaintiffs also argue, in the alternative, that the class definition can be modified to include only drivers who made deliveries on a "full-time basis." ECF No. 161 at 1. First, it is unclear what "full-time" means and which drivers it would include and exclude. Second, this modification does not address drivers' divergent experiences with respect to HDL's day-to-day control of them. Therefore, HDL has established that the only viable path forward is the drastic step of decertification. *See Mazzei*, 308 F.R.D. at 106.

In short, HDL has met its burden to decertify the class. The Court concludes that the common question of whether HDL misclassified drivers as independent contractors will not yield a common answer. Instead, answering that question will require fact- and driver-specific analysis to determine the degree of control HDL exerted over each individual driver. The differences in drivers' experiences also demonstrate that common facts do not predominate. The Court finds that these facts, elicited during class discovery, are a compelling reason to decertify the class. Although, as explained above, HDL has met its burden to decertify the class, based on this new information, Plaintiffs could not carry their ultimate burden to prove that the commonality or predominance elements are met—a failure is

fatal to the class.

## II.     Plaintiffs' Motion to Strike the Motion to Decertify (ECF No. 153)

Plaintiffs argue that the Court should strike HDL's motion to decertify the class because HDL included an appendix to its motion that circumvents the page requirement and impermissibly adds 29 pages of argument to HDL's motion. ECF No. 153-1. This appendix, in the form of a chart, purports to identify examples of class members' differing testimony. ECF No. 147-2. The Court finds, however, that the motion to decertify can be decided without reference to the appendix. Accordingly, the Court did not consult the appendix in determining the merits of HDL's motion, and, as a result, the motion to strike is DENIED AS MOOT.

## III.    Plaintiffs' Motion for Partial Summary Judgment (ECF No. 149)

Finally, Plaintiffs move for partial summary judgment on the question of whether, under the NYLL, all class members are employees of HDL. ECF No. 149-1. However, because the Court is decertifying the class, Plaintiffs' motion for partial summary judgment on this issue is DENIED AS MOOT.

## CONCLUSION

For the reasons explained above, HDL's motion to seal, ECF No. 148, is GRANTED. HDL's motion to decertify the class, ECF No. 147, is GRANTED. Plaintiffs' motions for partial summary judgment, ECF No. 149, and to strike, ECF No. 153, are DENIED AS MOOT.

Named Plaintiffs may continue this action on behalf of themselves, only, and they may refile a motion for summary judgment as to them. By May 25, 2022, the parties shall submit a joint proposed notice notifying the former class members that the class has been decertified and explaining their rights to pursue their individual claims and the fact that the statute of limitations is no longer tolled. *Jianmin Jin v. Shanghai Original, Inc.*, No. 16CV5633ARRJO, 2019 WL 11816612, at *4 (E.D.N.Y. July 10, 2019), *aff'd sub nom. Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021).

IT IS SO ORDERED.

Dated: April 25, 2022
      Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      United States District Judge
                                      Western District of New York